**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

---------------------------------------------------------X

**SHAHRZAD SALARTASH, D.D.S**.

*Plaintiff*

Case No.  __3:25cv04_____

**VERIFIED COMPLAINT FOR**
**PRELIMINARY AND PERMANENT**
**INJUNCTIVE RELIEF PURSUANT**
**TO FED. R. CIV. PROC 65 AND**
**42 U.S.C. § 1984 AND FOR**
**DECLARATORY JUDGMENT**
**PURSUANT TO 28 U.S.C.**
**§ 2201 ET SEQ.**

-against-

Sultan E. Chaudhry, D.D.S., in his official
capacity as President - Virginia Board
of Dentistry; Sidra Butt, D.D.S., in his/her
official capacity as Secretary-Treasurer
Virginia Board of Dentistry; Jamiah
Dawson, D.D.S. in his/her official capacity
as member Virginia Board of Dentistry;
Margaret F. Lemaster, RDH, in her
official capacity as member Virginia Board
of Dentistry; Emelia H. McLennan, RDH,
in in her official capacity as member
Virginia Board of Dentistry; Alf Hendricksen,
D.D.S., in his official capacity as Vice-President
Virginia Board of dentistry; William C. Bigelow,
D.D.S., in his official as member Virginia Board
of Dentistry; Surya Dhakar, D.D.S,. in
his/her official capacity as member Virginia
Board of Dentistry; J.Michael Martinez de Andino, J.D.,
in his official capacity as member of Virginia
Board of Dentistry; Jennifer Szakaly, D.D.S.,
in her official capacity as member of Virginia
Board of Dentistry

Defendants.

---------------------------------------------------------X

      **COMES NOW** the Plaintiff Shahzad Salartash, D.D.S., by her undersigned

attorneys and complaining against the Defendants, sets forth as follows:

## I.  <u>IDENTITY OF THE PARTIES</u>

1.    Plaintiff Shehzad Salartash, D.D.S., is a dentist fully licensed to practice dentistry in the Commonwealth of Virginia. Her license number is 0401412490 and the date of issuance is June 3, 2009. Dr. Salartash's principal business address is c/o Dynamic Dental Wellness, 20755 Williamsport Place, #300, Ashburn VA 20147.

2.    At all of the relevant times hereinabove and hereinafter mentioned the defendants Sultan E., Chaudhry, D.D.S.; Sidra Butt, D.D.S.; Jamiah Dawson, D.D.S.; Margaret F. Lemaster, R.D.H.; Emelia H. McLennan, RDH; Alf Hendricksen, D.D.S.; William C. Bigelow, D.D.S.; Surya Dhakar, Surya, D.D.S.; J.Michael Martinez de Andino, J.D., and Jennifer Szakaly, D.D.S., were and still are officers and/or members of the Virginia Board of Dentistry. Each and every one of the individual Defendants are sued herein in their official capacity. The Defendants have a principal address c/o Virginia Board of Dentistry, 9960 Mayland Dr., Suite 300, Henrico VA 23233-1463.

3.    The Defendants are sued herein in their official capacity because the Plaintiff is seeking prospective preliminary and permanent injunctive relief against them respectively pursuant to Fed. R. Civ. Proc. 65 and 42 U.S.C. § 1983 as set forth in this Verified Complaint. The Defendants are sued herein in their official capacity

because the Plaintiff is further seeking against them prospective declaratory relief pursuant to 28 U.S.C. § 2201 et seq., as set forth in this Verified Complaint.

## II.  <u>JURISDICTIONAL STATEMENT</u>

4.    This Court has subject matter jurisdiction to adjudicate the claims brought before it pursuant to 28 U.S.C. § 1331, because this case arose under the Constitution and statutes of the United States.

5.    The causes of action set forth in this Verified Complaint arise under the provisions of the due process clause of the Fourteenth Amendment of the United States Constitution guaranteeing Plaintiff's right to be free from bad faith prosecutions. Specifically, the Plaintiff states that she has a constitutionally protected due process right under the Fourteenth Amendment of the United States Constitution to be free from bad faith prosecutions.

6.    This Court is empowered to issue injunctive relief pursuant to Fed. R. Civ. Proc. 65 temporarily enjoining bad faith prosecutions from taking place. This Court is empowered to issue permanent injunctive relief pursuant to 42 U.S.C. § 1983 to enjoin violations of constitutionally protected rights, namely Plaintiff's due process right to be free from bad faith prosecutions.

7.    This Court has subject matter jurisdiction to issue declaratory relief pursuant to 28 U.S.C. § 2201 et seq., declaring the proposed and threatened bad faith prosecution articulated below as an act which is unconstitutional, illegal, in excess

of Defendants' powers and subject matter jurisdiction and in violation of Plaintiff's constitutionally protected Fourteenth Amendment rights under the United States Constitution.

### III.    <u>VENUE</u>

8.    Pursuant to 28 U.S.C. § 1391(b)(1), venue is properly based in the United States District Court, Eastern District of Virginia at Richmond, Virginia, because all of the Defendants are members of the Virginia Board of Dentistry, a state agency and entity having its principal place of business c/o Virginia Board of Dentistry, c/o VA Dept of Health Professions, 9960 Mayland Dr., Suite 300, Henrico VA 23233-1463.

9.    Venue is also properly predicated pursuant to 28 U.S.C. § 1391(b)(2) in the Eastern District of Virginia because a substantial part of the events or omissions giving rise to the claim occurred in Henrico, Virginia, and it is based upon official communications generated by and received from the Defendants which originated in Henrico County which is within the territorial venue of United States District Court for the Eastern District of Virginia at Richmond, Virginia.

### IV.    <u>NATURE OF THE RELIEF SOUGHT</u>

**(a)    <u>Relief sought under Fed. R. Civ. Proc. 65</u>**.

10.    The Plaintiff is seeking a mandatory temporary injunction under Fed. Rule Civ. Proc. 65, pending the hearing and determination of the underlying claims

set forth in this pleading, directing the Defendants, their agents, and assigns to reinstate Plaintiff's license to practice dentistry free and clear of any restrictions.

11.    The Plaintiff requests the foregoing prospective mandatory preliminary injunctive relief based upon the fact that the summary suspension of the license (<u>EX A</u> hereto) effectuated by administrative Order dated October 4, 2024, coupled with the Notice of Hearing and the Summary of Allegations annexed thereto (<u>EX B</u> to this Verified Complaint) (hereinafter "*Statement of Allegations*"), both amount to a continuous bad faith prosecution and to a violation of Plaintiff's due process rights under the Fourteenth Amendment of the United States Constitutionue to be free of bad faith prosecutions as set forth below in this Verified Complaint.

12.    The Plaintiff requests that the Court issue a prohibitive preliminary injunction pursuant to Fed. R. Civ. Proc. 65 preliminarily enjoining the Defendants, their agents, servants, and assigns from proceeding or causing anyone to proceed with the threatened bad faith license disciplinary prosecution based upon the grounds set forth in the Notice of Formal Administrative Hearing and the attached Statement of Allegations (<u>EX B</u>) because the same amounts to a bad faith harassment prosecution and to a violation of Fourteenth Amendment due process clause under the United States Constitution as set forth in this Verified Complaint.

13.    The factual grounds for the preliminary injunctive relief related to the bad faith harassment prosecution are set forth below.

**(b)** __Permanent injunctive relief under 42 U.S.C. § 1983__.

14.    Plaintiff seeks permanent injunctive relief under 42 U.S.C. § 1983 enjoining the individual Defendants, their agents, servants, and assigns from acting of causing anyone to act against Plaintiff and maintaining a bad faith prosecution under the color of the law of the Commonwealth of Virginia.

15.    The Plaintiff states that she has a constitutional due process right under the Fourteenth Amendment of the United States Constitution to be free from bad faith prosecutions.

16.    Plaintiff alleges that any action taken by Defendants against the Plaintiff with respect to the allegations set forth in the Statement of Allegations (EX B) amounts to bad faith prosecution for all of the reasons articulated below. In turn, bad faith license disciplinary prosecution amounts to a violation of Plaintiff's due process Constitutional right safeguarded by the Fourteenth Amendment of the United States Constitution to be free from bad faith prosecution.

17.    In addition, the Plaintiff alleges that the conduct of a bad faith harassment prosecution under the color of the laws of the Commonwealth of Virginia, which is conducted in excess of the powers and subject matter jurisdiction of Defendants prospectively violates Plaintiff's constitutionally protected due process rights by subjecting her to acts and actions of Defendants which are in excess of their powers and subject matter jurisdiction.

18.    Allegations of bad faith prosecution as a matter of law are sufficient to state a claim for injunctive relief under 42 U.S.C. § 1983.

**(c)    Declaratory relief pursuant to 28 U.S.C. § 2201 et seq.**

19.    Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. Rule Civ. Proc. 57 as follows: (a) declaring the acts and actions of Defendants as set forth in this Verified Complaint as illegal, unconstitutional, and in excess of the powers and subject matter jurisdiction conferred upon Defendants by the legislature under the applicable Virginia statutes and the Defendants' prosecution of the Plaintiff as a bad faith prosecution; and (b) further declaring the proposed license disciplinary proceedings sought to be maintained against the plaintiff as void, unconstitutional, and illegal acts and as a bad faith prosecution subject to injunctive relief.

## V.    INTRODUCTORY STATEMENT REGARDING *YOUNGER* ABSTENTION AND THE BAD FAITH PROSECUTION

20.    The case of *Younger v. Harris*, 401 U.S. 37 (1971) ("*Younger*"), should not  apply in this case. The *Younger* abstention doctrine in general bars federal courts from asserting jurisdiction to enjoin ongoing state proceedings in progress. That includes disciplinary proceedings in progress.

21.    Because currently there is a disciplinary action in progress as set forth below, the *Younger* abstention would normally apply had it not been for Defendants' bad faith prosecution of the Plaintiff as set forth below.

22.    Bad Faith Prosecution is an exception to the *Younger* Doctrine.

23.    Federal Courts intervene to enjoin bad faith prosecutions.

24.    The paradigms of "bad faith prosecutions" include state license disciplinary prosecutions brought for the purposes of harassment.

25.    Federal Courts identified two types of bad faith prosecutions: (a) bad faith prosecution which is maintained with no expectations of winning, and (b) bad faith prosecution brought for the purposes of harassment and for the purposes of stifling one's exercise of constitutional rights.

26.    Plaintiff practices holistic/biological dentistry in accordance with the definition of the scope of practice of dentistry set forth in VA Code §54.1-2700 and 18 VA Admin. Code § 60-21-50. Such practice blends in the practice of conventional dentistry which is regulated by the Defendants and the legislature along with the practice of Naturopathic Medicine which is not regulated by the Defendants or by the Virginia legislature.

27.    The Virginia legislature enacted VA Code § 54.1-100, which recognizes that the right to practice a profession is a constitutional right only subject to regulation when "it is clearly found that such abridgment is necessary for the protection or preservation of the health, safety, and welfare of the public and (ii) any such abridgment is no greater than necessary to protect or preserve the public health,

8

safety, and welfare." The Virginia legislature never enacted a law which regulates the practice of Naturopathic Medicine.

28.    The Virginia legislature left the field of Naturopathic Medicine unregulated. Therefore no regulation of this branch of the heling arts exists in the Commonwealth of Virginia.

29.    The Board of Dentistry and the Defendants are not permitted to regulate the practice of Naturopathic Medicine. Their powers and subject matter jurisdiction is limited to the practice of Dentistry.

30.    By way of example, while states such as California, Arizona, and others have extensive statutory provisions regulating the practice of Naturopathic Medicine and they have their own state statutorily appointed Naturopathic Medical Boards (see, for example, California Naturopathic Doctors Act codified in Bus & Prof Code §§ 3610-3686, and in Arizona the Naturopathic Physicians Act, A.R.S. §§ 32-1501 through § 32-1581), the Commonwealth of Virginia simply does not regulate the practice of Naturopathic Medicine at all. The Commonwealth of Virginia does not prohibit the practice of Naturopathic Medicine nor does it vest any Board, let alone the Virginia Board of Dentistry, with any authority to regulate the same.

31.    Because the Defendants do not regulate the practice of Naturopathic Medicine and because the Virginia State legislature does not regulate the practice of Naturopathic Medicine, the Defendants have no subject matter jurisdiction or

authority to discipline the Plaintiff for practicing Naturopathic Medicine under the guise that such prosecution is beyond the scope of her Dental License.

32.  Even more egregious is the fact that in the Statement of Allegations (<u>EX B</u> hereto) at ¶¶ 1(a) - 1(c), 6(a), and 6(d), the Defendants purport to prosecute the Plaintiff not only for the practice of Naturopathic Medicine but also for assessing the impact of the dental conditions of the patients on the human body in order to optimize dental diagnosis and treatment while considering the body's ability to recover, as discussed below.

33.  The latter is not only the practice of Naturopathic Medicine but the allegations in ¶¶ 1(a) - 1(c), 6(a), and 6(d) of the Statement of Allegations encompass activities which are included in the statutory and regulatory provisions which define the practice of Dentistry in Virginia, namely VA Code §54.1-2700 and the Virginia Board of Dentistry's regulation 18 VA Admin. Code § 60-21-50.

34.  Specifically, VA Code §54.1-2700 defines the practice of dentistry as follows:

> "Dentistry" means ***the evaluation, diagnosis, prevention, and treatment***, *through* **surgical, nonsurgical**, or ***related procedures***, of diseases, disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures **and their impact on the human body**.

VA Code §54.1-2700 (emphasis supplied).

35.  Defendants' own regulation, 18 VA Admin. Code § 60-21-50(a), provides that:

> A dentist shall only treat based on a bona fide dentist-patient relationship for medicinal or therapeutic purposes within the course of the dentist's professional practice consistent **with the definition of dentistry in § 54.1-2700 of the Code of Virginia**, the provisions for controlled substances in the Drug Control Act (Chapter 34 (§ 54.1-3400 et seq.) of Title 54.1 of the Code of Virginia), and the general provisions for health practitioners in the Code of Virginia. A bona fide dentist-patient relationship is established when examination and diagnosis of a patient is initiated.

18 VA Admin. Code § 60-21-50(a) (emphasis added).

36.    In short, neither the definitions of the practice of dentistry encompassed in Va. Code § 54.1-2700 nor the definitions of any regulated professions encompassed in VA Code § 54.1-100 - § 54.1- 4425, list Naturopathic Medicine as a regulated profession within the Commonwealth of Virginia.

37.    Moreover the definition of the practice of dentistry, itself in VA Code § 54.1-2700, which the Defendants by regulation mandate that every dentist in this state must follow in the scope of the practice of this profession (18 VA Admin. Code § 60-21-50), states clearly that the "***evaluate, diagnose, prevent, and treat***, *through* **surgical, nonsurgical**, or ***related procedures***" diseases, disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures on the human body is part of the practice of dentistry. VA Code § 54.1-2700 (emphasis added).

38.    Nonetheless notwithstanding all of the above, the Statement of Allegations (EX B) at ¶¶ 1(a), 1(b), 1(c), 6(b), and 6(d) support a finding of the existence of a bad faith harassment prosecution coupled with immediate punishment

11

of summary suspension (EX C hereto) - while stating that the Plaintiff did exactly that which the practice of dentistry definition of VA Code § 54.1-2700 tells her to do, namely to "*evaluate, diagnose, prevent, and treat*" dentistry diseases orders and condition within the context of their overall impact on the human body.

39.    Clearly, when (i) the defendants are prosecuting the Plaintiff for complying with the statute and regulation which define the practice of dentistry and are targeting her for practicing Naturopathic Medicine, a healing arts discipline that neither the Defendants not the legislature are regulating, and (ii) they go so far as to summarily suspend her license and deem her a threat to the public (EX C hereto), such prosecution is the text book definition of bad harassment prosecution.

40.    A bad faith harassment prosecution *inter alia* is defined as one which is brought to intimidate and stifle the Plaintiff from exercising her constitutional right, in this case her under the Fifth Amendment of the United States Constitution, to practice her profession without unreasonable government interference. See VA Code § 54.1-100.

41.    While couching in bad faith Dr. Salartash's care of her patients and Dr. Salartash's practice of Naturopathic Medicine and her practice of dentistry in accordance with the definition of VA Code § 54.1-2700 as "practicing beyond the scope of her license" and the actual assessment of the physical condition of the body of her patients for the purposes of understanding which treatment to recommend and

what type of a healing time she need to care for the patent, as mandated by VA Code § 54.1-2700, the Defendants are doing nothing more or less than to unreasonable interfere both with Dr. Salartash's practice of dentistry within the meaning of VA Code § 54.1-2700 and the practice of the unregulated Healing Arts discipline of Naturopathic Medicine.

42.    In fact the Defendants were so motivated to stamp out Plaintiff's practice of Naturopathic Medicine and of biological/holistic dentistry that they clearly did not check their own statute defining the practice of dentistry.

43.    Below are the facts relevant to the relief set forth herein.

44.    The Plaintiff contends that the instant summary suspension and the continued prosecution of the Plaintiff based upon the grounds specified in the Statement of Allegations (EX B) is a bad faith harassment prosecution maintained for the purposes of facilitating the agenda of private dental association including the American Dental Association ("ADA") and the American Association of Oral and Maxillofacial Surgeons ("AAOMS") by simply putting holistic and biological dentists out of business. As set forth below the Plaintiff is practices biological and holistic dentistry.

# VI. <u>RELEVANT FACTUAL BACKGROUND</u>

**(i)    An introduction to the Plaintiff and her practice**
**of dentistry within the scope defined by**
**<u>18 VA Admin. Code § 60-21-50 and VA Code § 51.4-2700</u>**

45.    Dr. Salartash explains her practice of dentistry as well as her credentials

within the scope defined by Va. Code Ann. § 54.1-2700 as follows:

> Dr. Sheri [Salartash] is a full spectrum dentist who fuses together all
> aspects of modern dentistry and traditional health practices in order to
> optimize her patient's oral health. She incorporates features of the
> holistic and naturopathic community  and utilizes the most advanced
> technology in her practice so that she provides the absolute best
> treatment options available anywhere. **She focuses on "integrative**
> **medicine" to understand and fix parts of the mouth and jaw that**
> **are malfunctioning, misaligned or diseased due to factors elsewhere**
> **in the body. Her results are what some call "functional dentistry"**
> **or enhanced performance techniques that improve the whole body**
> **as a system**.

https://askthedentist.com/directory/dynamic-dental-wellness          (emphasis

added).

**(a)    <u>In general - credentials.</u>**

46.    Dr. Salartash's curriculum vitae ("CV") is annexed hereto as <u>EX D</u>.

47.    A summary of the same reveals that she obtained a degree of Doctor of

Dental Surgery; Magna Cum Laude, Virginia Commonwealth University, in 2009.

48.    Her many education accomplishments include:

- 2023: Certified Clinician in Whole Food Nutrition, International Foundation of
  Nutrition & Health

- 2023: Mastership, International Academy of Biological Dentistry and Medicine

- 2023: Fellowship, International Academy of Oral Medicine and Toxicology

- 2022: Fellowship, International Association of Orthodontics

- 2022: Fellowship, American Academy of Ozonotherapy

- 2021: Diplomate American Board of Dental Sleep Medicine

- 2021: Board Certification in Integrative Biological Dental Medicine and Naturopathic Medicine,

- American College of Integrative Medicine & Dentistry, American Board of Integrative Medicine and Dentistry American, Naturopathic Medicine Association

- 2020: Master of Academy of General Dentistry

- 2016: Fellowship, Academy of General Dentistry.  The Mastership Award is the highest honor available in the AGD and one of the most respected designations in the profession. This accomplishment meets the highest criteria for professional excellence which is only designated to the top 2% of dentist in the country.

- 2015: Fellowship, International Congress of Oral Implantologists

- 2015: Fellowship, American Academy of Implant Prosthodontics

- 2009: Doctor of Dental Surgery; Magna Cum Laude, Virginia Commonwealth University

- 2005: Bachelor of Science in Biology; Magna Cum Laude, Virginia Commonwealth University

EX D.

49.    Dr. Salartash's relevant certifications listed are as follows:

- Integrative Biological Dental Medicine, American College of Integrative Medicine & Dentistry, NJ 2019-2020;

- **Sleep Group Solutions, Dental Sleep Medicine Diagnosis & Oral Appliance Therapy,** Washington, DC 2013;

- **International Academy of Biological Dentistry & Medicine, Oral Appliance Therapy, Falls Church, VA 2013**;

- **Advanced Light Wire Functional (ALF orthodontic) Certification 2017-2021; LVI Sleep Apnea and TMJ Therapy, Vienna, VA 2016**;

- Six Month Smiles Braces, Clear Braces I & II, Washington, DC 2013; and

- Straight Wire Orthodontics, Mixed Dentition and Master Mechanic Orthodontics, WV 2012.

EX D.

50.    Dr. Salartash's teaching and lecturing experiences have a focus on the relationship between sleep and oral health as well as on biological dentistry as follows:

- 2023-2024: Educational Product Development Committee, **American Academy of Dental Sleep Medicine**

- **2023:** Speaker at International Academy of Oral Medicine and Toxicology Annual Meeting: Minerals and Toxicity Lecture;

- 2023-2024: Case of Quarter, American Academy of Dental Sleep Medicine

- 2023: Mastership Position Scientific Review Article with International Academy of Biological Dentistry and Medicine: **Effectiveness of palatal expansion in improving sleep breathing disorder and upper airway resistance syndrome**;

- 2022: Fellowship Position Scientific Review Article with International Academy of Oral Medicine and Toxicology: Effectiveness of palatal expansion in improving sleep breathing disorder and upper airway resistance syndrome.

- 2020: ALF and Sleep Presentation at American College of Integrative Medicine & Dentistry, American Board of Integrative Medicine and Dentistry American, Naturopathic Medicine Association

- 2016-2020: Speaker at Alexandria Wellness Group: Whole body health and oral health

- 2009: Natalia Akentieva, Shahrzad Salartash, Cecilia Anaya-Bergman, Vladimir Lee, Janina Lewis.

EX D.

    (b)    **Dr. Salartash Practices biological/holistic dentistry**.

51.    As it can be seen from Plaintiff's Declaration in Support of Motion for Preliminary Injunction ("Declaration"), she practices holistic/biological dentistry. This fact is significant for two reasons.

52.    One reason is the fact that the Board of Dentistry never gave fair warning to the Plaintiff that biological and holistic dentistry is outlawed in the Commonwealth of Virginia. In fact, the very same conduct described at ¶¶ 1(a), 1(b), 1(c), 6(b), and 6(d) of the Statement of Allegations is at the core of the definition of the scope of the practice of dentistry as defined in VA Code § 54.1-2700.

53.    The other reason is the fact because Dr. Salartash practices holistic and biological dentistry the Defendants are targeting the Plaintiff with this bad faith prosecution for the benefit of the ADA, the AAOMS, and other private associations in order to put her out of business due to professional disagreements over this type dentistry practice.

54.    The Defendants adopted and incorporated by reference the guidelines of the ADA and those of the AAOMS into their regulations. They use the same regulations based upon private guidelines of private associations to discipline dentists and to revoke their licenses. See e.g., 18 VA Admin. Code § 60-21-200. Education; 18 VA Admin. Code § 60-21-220. Inactive license; 8 VA Code § 60-21-230(5) Qualifications for a restricted license; temporary permit or license; 18 VA

Admin. Code § 60-21-240(F)(2)(d) - License renewal and reinstatement; 18 VA Admin. Code § 60-21-260. General provisions - controlled substances; 18 VA Admin. Code § 60-21-320 - Profile of information for oral and maxillofacial surgeons 18 VA Admin. Code § 60-21-370(4)(a)(3) - Credentials required for certification; 18 VA Admin. Code § 60-21-30 - Posting requirements; 18 VA Admin. Code § 60-21-303. Permit exception for certain oral and maxillofacial surgeons - AAOMS private certification in lieu of state dental Board Certification; Incorporated by Reference: 2016 ADA Guidelines for Teaching Pain Control and Sedation to Dentists                    and                    Dental                    Students https://www.dhp.virginia.gov/Boards/Dentistry/PractitionerResources/LawsRegulations/.

56.    The American Dental Association rejects anything that is not complementary, holistic, or biological dentistry as unproven and needing more study. See ADA statement of complementary and alternative medicine in dentistry.

57.    The Plaintiff contends that the Defendants have become a tool in the hands of the ADA used to target the competition of the dentists who are the members of the ADA, the AAOMS, and other private organizations. That competition includes biological and holistic dentists.

58.    Dr. Salartash holds a Board Certification in Integrative Biological Dental Medicine and Naturopathic Medicine, American College of Integrative

Medicine & Dentistry, American Board of Integrative Medicine and Dentistry American Naturopathic Medicine Association.

59.    First an explanation of what biological dentistry is and its national recognition by dental professionals all over the country is in order.

60.    There are many private dentist associations similar on equal footing and stature as the ADA and AAOMS which do not follow conventional dentistry paradigms of the ADA and AAOMS.

61.    Some of the many equal footing and statute dentist associations based on private memberships, charters and diagnostic and treatment philosophies are: International Academy of Oral Medicine and Toxicology ("IAOMT"); International Academy of Biological Dentistry and Medicine ("IABDM"). A separate educational school, specializing in the teachings of integrative and biological medicine is American College of Integrative Medicine & Dentistry ("ACIMD").

62.    The reason why other private dentistry membership associations are on equal footing as the ADA and AAOMS is because they are not governmental institutions or agencies charged with the regulation of the practice dentistry, but they all are private membership associations.

63.    A private association's private positions, guidelines and mottos cannot be used to formulate a regulatory agency's policies and regulations without violating

the improper delegation doctrine, due process and antitrust. <u>See</u> Memorandum of Law to be filed shortly.

64.    The International Academy of Biological Dentistry and Medicine ("IABDM") explains biological and integrative dentistry as follows at:

> Biological dentistry is modeled after the concept of Biological Regulatory Medicine and the body's potential for autoregulatory capacity. **A Certified Biological dentist is a professional who focuses on the root causes of oral disease while considering the effects of dental materials, techniques, and procedures on the complex relationship between the oral and systemic link within the context of the whole person.** Certified Biological Dentists have taken additional course work in understanding Traditional Chinese Medicine and electrodermal assessments, homeopathy, energy medicine, biological terrain assessment, **sleep and airway medicine**, nutrition, allergies, and food sensitivities, toxicology and detoxification support, understanding basic lab work (LDL, C-reactive protein, HgA1C, D3 levels), use of genetic and salivary testing for periodontal therapies, muscle and joint physiology related to myofascial release and myofunctional therapy, and surgical and non-surgical treatment of bone infections.

https://iabdm.org/education/articles/why-is-it-called-biological-dentistry-anyway/.

**(c)    Consideration of the statutory and regulatory provisions cited by the Defendants in the Statement of Allegations to support the accusations of "practicing dentistry beyond <u>the scope of the Dr. Salartash's license</u>."**

65.    No statutory provision in the Virginia pertaining to the practice of dentistry (VA Code §§ 51.1-2700 through 54.1-2708.4) prohibits a dentist from making proper referrals to licensed healthcare practitioners for diagnosis and treatment of a specific body illness or condition.

66.    No statutory provision related to the practice of dentistry prohibits a dentist from providing assessment of a patient's entire body condition in order to

integrate a treatment plan while being cognizant of each patient's ability to heal and tolerate the treatment.

67.    To the contrary, the relationship between dental conditions and their impact on the human body necessitating the assessment of underlying conditions caused by dental illness, as explained by the IABDM above, are codified in the scope of the practice of dentistry in VA Code § 54.1-2700 and adopted by the Board in 18 VA Admin. Code 60-21-50.

68.    In fact, in light of the provisions of VA Code § 54.1-2700 and 18 VA Admin. Code § 60-21-50 and in the absence of any regulatory provision outlawing the practice of biological and holistic dentistry it is impossible to even begin to understand why, other than to harass the Plaintiff though a bad faith prosecution, the Defendants used the recitations in the Statement of Allegations at ¶¶ 1(a), 1(b), 1(c), 6(b), and 6(d) to accuse the Plaintiff of practicing dentistry beyond the scope of dental practice as defined by VA Code § 54.1-2700.

69.    Similarly there is no plausible explanation other than bad faith prosecution about how the assessment of the whole body and the treatment of sleep disorders caused by dental illness within the confines of Naturopathic Medicine which the Defendants do not regulate nor enforce as recited in ¶¶ 1(a), 1(b), 1(c), 6(b), and 6(d) of the Statement of Allegations can form the basis for the application of the drastic remedy of summary license suspension (EX C hereto), followed by a

formal disciplinary hearing alleging that the Plaintiff practiced dentistry beyond its

scope.

70.    Moreover, 18 VA Admin. Code § 60-21-70 currently defines professional misconduct as follows:

> No dentist shall commit any act that violates provisions of the Code that reasonably relate to the practice of dentistry including but not limited to:
>
> 1.  Delegating any dental service or operation that requires the professional competence or judgment of a dentist to any person who is not a licensed dentist or dental hygienist or a registered dental assistant II.
>
> 2.  Violating any applicable statute or regulation governing ionizing radiation in the Commonwealth of Virginia, including current regulations promulgated by the Virginia Department of Health.
>
> 3.  Failing to maintain and dispense scheduled drugs as authorized by the Virginia Drug Control Act (Chapter 34 (§ 54.1-3400 et seq.) of Title 54.1 of the Code of Virginia) and the regulations of the Board of Pharmacy.
>
> 4.  Failing to cooperate with an employee of the Department of Health Professions in the conduct of an investigation or inspection.
>
> B.  Sexual conduct with a patient, employee, or student.
>
> 1.  Sexual contact with a patient, employee, or student shall constitute unprofessional conduct if:
>
> a. The sexual contact is unwanted or nonconsensual; or
>
> b. The sexual contact is a result of the exploitation of trust, knowledge, or influence derived from the professional relationship or if the contact has had or is likely to have an adverse effect on patient care.

18 VA Admin. Code § 60-21-70.

71.    None of the provisions of 18 VA Admin. Code § 60-21-70 are relevant

to the allegations of ¶¶ 1(a) through 1(c) and 6(b) and 6(d) of the Statement of

Allegations contending that Dr. Salartash practices medicine beyond the scope of her license.

72.    Similarly, none of the dentistry disciplinary statute cited by the Defendants in support of the charge of practicing dentistry beyond the scope of Plaintiff's license are applicable to the recitations of ¶¶ 1(a) through 1(c) and 6(b) and 6(d) of the Statement of Allegations.

73.    Specifically, the statutory provisions cited in the Statement of Allegations as the basis for defendant's drastic summary suspension and of the subsequent formal hearing, based upon the allegations set forth in ¶¶ 1(a) through 1(c) and 6(b) and 6(d) of the Statement of Allegations (EX B and EX C hereto) are as follows:

> The Board may refuse to admit a candidate to any examination, refuse to issue a license to any applicant, suspend for a stated period or indefinitely, or revoke any license or censure or reprimand any licensee or place him on probation for such time as it may designate for any of the following causes:
>
> *          *          *          *
>
> 5.    Intentional or negligent conduct in the practice of dentistry or dental hygiene which causes or is likely to cause injury to a patient or patients;
>
> *          *          *          *
>
> 9.    Violating, assisting, or inducing others to violate any provision of this chapter or any Board regulation;
>
> *          *          *          *
>
> 11.    Practicing or causing others to practice in a manner as to be a danger to    the health and welfare of his patients or to the public;
>
> 12.    Practicing outside the scope of the dentist's or dental hygienist's education, training, and experience….

VA Code §54.1-2706.

74.    In addition, the Defendants cited 18 VA Admin. Code § 60-21-50, defining the scope of the practice of dentistry in the same manner as defined by VA Code § 54.1-2700 as discussed above and 18 VA Admin. Code § 60-21-60(A)(2) - failure to consult and refer patients to other practitioners with specialized knowledge, skills, and experience when needed to safeguard and advance the health of the patient.

**(d)    The allegations of ¶¶ 1(a) through 1(c) and the allegations in ¶¶ 6(a) through 6(d) of the Statement of Allegations exemplify the motive and the nature of the bad faith prosecution which falsely accuses the Plaintiff of <u>practicing specified modalities outside the scope of her license</u>.**

75.    While considering Defendants' bad faith prosecution claims and Defendants' false accusations of practicing specific modalities outside the scope of Plaintiff's dental license, in support of the claim of bad faith prosecution Dr. Salartash submits that several separate issues have to be considered: (a) the scope and practice of dentistry as defined by VA Code § 54.1-2700 and 18 VA Admin. Code § 60-21-50 as discussed above; (b) whether the particular modality or assessment falls within the definition of the scope of practice of dentistry; (c) the fact that Dr. Salartash is trained and certified in the practice of Naturopathic Medicine (<u>EX A</u> hereto); (d) the fact that neither the Virginia Board of Dentistry nor the Virginia legislature regulate the practice of Naturopathic Medicine; (e) the fact that Dr. Salartash does not practice medicine and specifically neurology; (f) the fact

that the standard of care applicable to Dr. Salartash's conduct within the parameters of dentistry is that of a reasonable prudent dentist and not that of a medical doctor or a neurologist; (g) the fact that Dr. Salartash's conduct in her practice of Naturopathic Medicine is subject to the standard of a reasonable prudent Doctor of Naturopathic Medicine which neither the Board nor the legislature regulate, and (g) the fact that Dr. Salartash has extensive credentials and training in dental sleep medicine, a subspecialty of the practice of dentistry also governed by the provisions of VA Code § 54.1-2700.

76.    With the foregoing paradigms in mind, the Plaintiff now turns to the examination of the allegations of ¶¶ 1(a) through 1(c) and the allegations contained in ¶¶ 6(b) and 6(d) of the Statement of Allegations within the context of the statutory and regulatory provisions which the Defendants contend that were violated by Dr. Salartash's conduct provided in the foregoing Paragraphs.

77.    Paragraph 1(a) of the Statement of Allegations provides verbatim as follows:

1.    Dr. Salartash violated Virginia Code§ 54.1-2706(5), (9), (11), and (12) and 18 VAC 60-21-50 and 18 VAC 60-2 l-60(A)(2) of the Regulations Governing the Practice of Dentistry ("Regulations") **in that, she practiced outside the scope of her license**. Specifically:

a.    On May 5, 2022, Dr. Salartash performed a new patient comprehensive exam on Patient A, a 70-year-old female complaining of frequent cough, restless legs, diastolic dysfunction, anoxia, excessive thirst, shortness of breath, and sinus problems. As part of this comprehensive evaluation, Dr. Salartash tested Patient A's blood glucose, calcium, Vitamin D, and heavy metal levels. Dr. Salartash performed an assessment of Patient A's posture and physical fitness,

performed an assessment of her autonomic nervous system function via heartrate variability testing, and performed adrenal testing, all of which are beyond the scope of Dr. Salartash's license.

*Statement of Allegations* ¶ 1(a).

78.     The allegations of this Paragraph in no way state anything based upon which an accusation of practicing dentistry beyond the scope of Dr. Salartash's license can be made.

79.     Once again, the recitation of VA Code § 54.1-2700 defining the term dentistry states as follows:

> "Dentistry" means ***the evaluation, diagnosis, prevention, and treatment***, *through* **surgical, nonsurgical**, or ***related procedures***, of diseases, disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures **and their impact on the human body.**

(emphasis supplied).

80.     Clearly in order to know what impact Patient A's dental conditions sought to be treated by Dr. Salartash, have on the human body an evaluation of the entire human body as part of the defined practice of medicine, as part of Dr. Salartash's practice of holistic/biologic dentistry as set above an as part of Dr. Salartash' approach to the evaluation of the body conditions, as explained by her in response to the complaint that prompted these allegations and discussed below, is necessary.

81.     Everything described in Paragraph 1(a) of the Statement of Allegations amounts to the "***the evaluation, diagnosis, prevention of the impact of*** diseases,

26

disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures on the human body" within the definition of the scope of the practice of dentistry defined by VA Code § 54.1-2700 (emphasis added).

82.    In addition, as discussed below and in Plaintiff's Declaration, due to bad faith prosecution, all of the modalities specified in Paragraph 1(a) of the Statement of Allegations and the biomarkers sought to be elicited from the evaluation have specific application to the treatment and recovery time or ability to recover for dental procedures considered by the doctor for this particular patient.

83.    The assessments specified in Paragraph 1(a) of the Statement of Allegations, are both within the scope of the general practice of dentistry definition as well within the scope of the practice of Naturopathic Medicine which the Defendants do not regulate.

84.    For all of the foregoing reasons, the allegations of Paragraph 1(a) of the Statement of Allegations does not and cannot satisfy the grounds for discipline under any of the statutory or regulatory provisions specified at the beginning of Paragraph 1 of the Statement of Allegations.

85.    Paragraph 1(b) of the of the Statement of Allegations sets forth as follows:

> b.    On May 18, 2020, Dr. Salartash ordered a home sleep study for Patient A, and further provided Patient A with the equipment necessary to conduct the home sleep study with SleepMed Rx, a vendor that contracts with healthcare professionals to provide telemedicine evaluations and home sleep studies. Such an

order and dispensing of equipment to perform the home sleep study is, once again, beyond the scope of Dr. Salartash's license.

*Statement of Allegations* ¶ 1(b).

86.     As it can be seen from Plaintiff's Declaration, sleep studies have been performed on this patient since 2020 within the context of dental conditions. Medical record for this patient on May 18, 2020 and the follow up medical report indicates that the sleep study was performed on May 18, 2020 and was actually interpreted and reported by Chadra Matadeen Ali, M.D. a Diplomate ABOM in Sleep Medicine. See EX E hereto - relevant medical record for the sleep study and interpretation at Bates Stamp 000414. The sleep study was performed with home sleep testing. There is no indication in the medical record at all that it was Dr. Salartash who provided the home sleep testing. The reports states "Medical necessity for Custom Fabricated Medical Appliance code 0486 for the diagnosis of Obstructive Sleep Apnea is demonstrated by study results. Once oral appliance settings have been determined the patient will require a repeat Home Sleep Study while using the oral appliance to determine therapeutic efficacy." See EX E hereto at Bates Stamp 000414.

87.     In short, the contention that Dr. Salartash violated regulation 18 VA Admin. Code § 60-32-1060(A)(2) is nothing more than an unsubstantiated allegation belied by the medical record which demonstrates proper referral of Patient A to a sleep specialist, Dr. Chandra Matadeen Ali, MD.

88.    The fact that the sleep study was conducted within the definition of the practice of dentistry is demonstrated by the recommendations made by the sleep study physician that Dr. Salartash provide a Custom Fabricated Oral Appliance to treat the apnea. EX E at Bates Stamp 000414

89.    As it can be seen from Dr. Salartash's Declaration, Patient A's sleep apnea condition has been unresolved for a decade and the study interpretation by the sleep expert indicates that it could be resolved with a dental plate treatment and followed up by Dr. Salartash in the manner described by the sleep expert in her report. Moreover, the medical records reflect that Dr. Salartash had a standing Order from Patient A's PCP to order sleep studies and distribute sleep devices to the patient every time the specified oral conditions related to dentistry are present in the patient. See Plaintiff's Declaration.

90.    The Defendants appear to state that providing home sleep testing to the patient is inappropriate for the practice of dentistry. However, clearly this sleep study was performed and reviewed under the auspices of a sleep study physician in the practice of sleep medicine and not by Dr. Salartash - EX E at Bates Stamp 000414. Therefore, the allegations of Paragraph 1(b) purposefully misrepresent what the record establishes, for the apparent staging for the bad faith prosecution and the justification of the summary suspension of Plaintiff's license on the concocted charge that Dr. Salartash is practicing modalities beyond the scope of her dental license.

29

91.    Clearly, that is not the case where, as here, the dentistry condition as described in VA Code § 54.1-2700 which can be corrected with a custom fabricated oral appliance causes the sleep apnea. The device is called Mandibular Advancement Device ("MAD") which, as it can be seen from Plaintiff's Declaration, was provided to Patient A first after the completion of the sleep study on May 18-19, 2020, and she could not tolerate it.

92.    In addition, as it can be seen from Plaintiff's CV (EX C hereto), she has training and credentials to treat sleep apnea if determined to be caused by "diseases, disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures" as set forth in VA Code § 54.1-2700.

93.    As it can be seen from Plaintiff's Declaration, the determination of the cause of sleep disturbances as related to "diseases, disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures" has long been recognized by dental associations as conditions which are being addressed by dentists in consultation with sleep study expert physicians as it has been done here. EX E.

94.    In short, the allegations of Paragraph 1(b) of the Statement of Allegations cannot and does not provide any bona fide basis for Plaintiff's prosecution for the violation of the statutory and regulatory provisions set forth in

Paragraph 1. Such prosecution is a bad faith harassment prosecution and not a bona fide exercise of defendant's powers to protect Patient A and the public.

95.    Paragraph 1(c) of the Statement of Allegations sets forth as follows:

On June 16, 2020, Dr. Salartash performed a laser surgical procedure on Patient A to treat her diagnosis of "severe obstructive sleep apnea" despite the study not recommending surgical intervention. Regardless, surgical intervention to treat or correct obstructive sleep apnea is beyond the scope of Dr. Salartash's license.

96.    In order to demonstrate the fallacy of this statement and the staging of the bad faith prosecution, the Court is directed to both VA Code § 54.1-2700, and EX F hereto which is the dental record for Patient A for the date specified in this accusation.

97.    The practice of dentistry entails "*the evaluation, diagnosis, prevention, and treatment*, *through* **surgical,** nonsurgical, or *related procedures*, of diseases, disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures **and their impact on the human body**." VA Code § 54.1-2700 (emphasis added).

98.    In short, the practice of dentistry as defined by the foregoing statute, does involve surgical and non-surgical procedures to treat conditions of the oral cavity and the maxillofacial, **adjacent, and associated structures**.

99.    With that in mind, the next question is whether the Nightlase procedure referenced by the Defendants in fact constitutes surgery at all. The informed consent for the procedure, annexed hereto as EX F describes the procedure as "Yag laser,

31

nonabrasive (non-cutting) of the soft palate and surrounding area. The Defendants' contention that Dr. Salartash performed surgery is particularly indicative of bad faith prosecution because by their own regulation, the Defendants define the term "non-surgical laser" to mean "a laser that is not capable of cutting or removing hard tissue, soft tissue, or tooth structure." See 18 VA Admin. Code § 60-21-10.

100.   Therefore the Defendants cannot possibly contend that a non-surgical laser as defined by their own regulation was used by Dr. Salartash to performed surgery for sleep apnea when neither the device nor the procedure used can be used to perform surgery or is used for the treatment of sleep apnea. See EX F hereto.

101.   Assuming arguendo for one minute that the procedure described in the informed consent is surgery of the soft palate, which as set forth below it is not, VA Code 54.1-2700 does allow for such procedure within the practice of dentistry. Moreover, unlike the allegations in Paragraph 1(c) of the Statement of Allegations, the informed consent specifically states that this alternative treatment is not meant to treat sleep apnea. EX F hereto. It is meant to improve air passages within the oral cavity, a procedure specifically within the scope of the practice of dentistry as set forth in VA Code § 54.1-2700.

102.   Short of the plausible explanation of staging of a bad faith prosecution, the Defendants are hard pressed to explain to this how a non-surgical laser as the one specifically appearing in Patient A's informed consent can be used to perform

surgery. Just like dental surgery cannot be performed with a butter knife, the procedure described in the Informed consent to be performed with a non-surgical laser cannot be surgery at all since no cutting treatment is involved.

103.   Next are the allegations in Paragraph 6(a) through 6(d) of the Statement of Allegations which state as follows:

> 6.      Dr. Salartash violated Virginia Code § 54.1-2706( 4), (5), and (11) and 18 VA Admin. Code § 60-21- 60(8)(3) of the Board's Regulations. Specifically:
>
> a.      On April 30, 2019, Dr. Salartash delivered sleep appliances to Patients C and D.
>
> b.      On August 7, 2019, Dr. Salartash prepared and signed health insurance      claim forms using medical billing code E0486. These claim forms were given      to the parent of Patients C and D, together with a "Medical Claim Waiver" regarding the patient's responsibility to self-file these claim forms with their medical insurance carrier to obtain reimbursement.
>
> c.      At the time Dr. Salartash prepared and signed these claim forms, neither Patient C nor Patient D had undergone a sleep study, nor had they been diagnosed with sleep apnea by a qualified physician.
>
> d. Providing medical sleep appliances, absent a sleep apnea diagnosis, and without the direction of a medical doctor is beyond the scope of Dr. Salartash's license.

*Statement of Allegations* ¶ 6(a).

104.   Assuming arguendo that the allegations of ¶¶ 6(a) through 6(d) were facially correct (which, as it can be seen from Plaintiff's Declaration and medical records they are not), it is beyond comprehension how the Defendants contend that these allegations state violations of either VA Code § 54.1-2706(4), (5), and (11) and 18 VA Admin. Code § 60-21- 60(8)(3).

105.    VA Code § 54.1-2706(4) allows the Defendants to take disciplinary action against a licensee where the Plaintiff engaged in "[a]ny unprofessional conduct likely to defraud or to deceive the public or patients …."

106.    Assisting patients with the preparation of insurance claims in contemplation of a treatment or in contemplation for ordering a certain treatment is not fraudulent conduct contemplated by VA Code § 54.1-2706(4). The Defendants provided not exhibits and documentary materials indicating that any claim regarding the alleged insurance forms was either submitted to the insurance companies or paid by Patient As' insurance at any time before the services set forth in the allegations in ¶¶ 6(a) though 6(d) took place.

107.    Similarly, it is beyond comprehension how, short of a bad faith prosecution, the Defendants can think that filling out insurance forms and giving out sleep appliances to patients in contemplation of future treatments amounts to any violation of either VA Code § 54.1-2706(4); VA Code § 54.1-2706(11) or VA Code § 54.1-2706(4), short of staging a bad faith prosecution.

108.    Significantly, as discussed below, none of the allegations in ¶¶ 1(a) through 1(c) or ¶¶ 6(a) through 6(d) of the Statement of Allegations are supported by any expert opinions or expert reports, as they are not supported by any documentation provided by the Defendants in the six volumes of evidence, they contend that support their case against the Plaintiff.

109.    The remaining accusations of the Statement of Allegations are aimed specifically at dental care given to specific patients and are ostensively predicated upon the opinions and report of the dental expert.

**(e)    The Order of Summary Suspension.**

110.    On or about October 4, 2024, the Plaintiff received an Order of Summary Suspension of her license purportedly issued pursuant to VA Code § 54.1-2408.1(A), stating that she violated "certain laws and regulations relating to the practice of dentistry as more fully set forth in the Notice of Formal Administrative Hearing and Statement of Allegations." EX C hereto.

111.    The Defendants deemed Dr. Salartash a "substantial danger to public health and safety" warranting summary suspension although the formal notice of hearing and Statement of Allegations do not state any allegations to support this conclusion.

112.    Specifically, the crux of the summary suspension is predicated upon the contention that Dr. Salartash practices specific modalities beyond the scope of her dental license. However, as discussed above and below, this contention is a façade for defendant's attempt at stamping out Dr. Salartash's practice of holistic/biological dentistry which is actually contemplated by VA Code § 54-1-2700.

113.    As set forth above, and below, the Defendants' allegations are nothing more or less that the staging of a bad faith prosecution where the facts and the records of the patients in question are of no consequence to the Defendants.

114.    In addition, this bad faith prosecution was spun off by the complaint of a neurologist, Dr. Glen Cook, who seems to have the firm outdated and baseless belief that the practice of dentistry is relegated to tooth drilling, administration of Novocain and filling of cavities. As discussed above, the practice of dentistry in the Commonwealth of Virginia is what the legislature defines it to be in VA Code § 51.4-2700 and not the misapprehension of Dr. Cook in his complaint.

115.    In an effort to make Dr. Cook's complaint into something that it is not, rather than defending the scope of the practice of dentistry as defined by VA Code § 54.1-2700, the Defendants went out of their way to convert the complaint into an inquiry accompanied by formal discipline focusing on whether Dr. Salartash's diagnostic and treatment modalities regarding her care of Patient A met the medical/neurology standard of care rather than the standard of care used in Plaintiff's field which is dentistry.

116.    In that respect, not only do the Defendants have no expertise, powers, or subject matter jurisdiction to frame merits of the issues raised in Dr. Cook's complaint within the medical/neurology standard of care, but they also have no

training, expertise, or knowledge to sit in judgment over issues related to the standard of care in medicine/neurology.

117.   Yet, the basis for the summary suspension as well as the basis for the formal hearing, as described below is exclusively predicated upon Dr. Salartash's exercise of her Fifth Amendment right under the United States Constitution to practice of the unregulated profession of Naturopathic Medicine in the holistic and biological approach to the treatment of dental conditions.

118.   Nor do any of the expert reports outline issues related to the practice of medicine as part of their reports, but rather they take aim at the practice of Naturopathic Medicine, which the Board of dentistry simply does not regulate.

119.   Taking it from the top, the Plaintiff will now address the expert reports propounded by the Defendants in support of their Summary Suspensionin which they contend that Dr. Salartash practiced modalities outside the scope of dentistry.

   (f)   **The Defendants' statutes and own regulation fail to give
         the Plaintiff fair warning that she cannot practice dentistry
         in Virginia as defined by VA Code § 54.1-2700 and the
         Board's own regulation regarding the scope of practice
         of dentistry 18 VA Admin. Code § 60- 21-50 without
         risking prosecution if a complaint is filed by a physician who
         <u>misunderstands the meaning of the "practice of dentistry</u>."**

120.   As will be seen from the Memorandum of Law in support of a Motion for Preliminary Injunction to be filed shortly ("Memorandum of Law"), no statute or regulation governing the practice of dentistry gives the Plaintiff fair warning that

notwithstanding the provisions of VA Code § 54.1-2700 and 18 VA Admin. Code § 60- 21-50, and that as soon as dentists (i) assess the condition of the human body for the impact that dental conditions may have and vice versa, and (ii) assess the conditions of the human body which may affect dental treatment and recovery time, and (iii) treat the oral cavity for conditions related to dental health, they will be subject to prosecution.

121.   No statute gives any fair warning to Naturopathic Doctors in Virginia that their Fifth and Fourteenth Amendment rights under the United States Constitution to practice Naturopathic Medicine in the Commonwealth where the profession is not regulated, and despite the explicit provisions of VA Code § 54.1-100 discussed above, they will be subject to prosecution by the Virginia Board of Dentistry for practicing "beyond" the scope of their dental license.

122.   Dr. Salartash's patients specifically seek this type of holistic approach as a matter of personal preference or because they want their dental treatment to be a success by using the blend of conventional dentistry and naturopathic assessments.

123.   As set forth below, both the complaint filed by Dr. Glen Cook and the report rendered by Dr. Umar Naseef Bin Alam, DO, reject naturopathy and the practice of the same in combination with holistic dentistry. They assess everything through a standard of care applied to a field other than the on practiced by the

Plaintiff. The Defendants in this action made a legal error to follow suit without reading the very same statutes and regulations which they enforce.

124.   As will be discussed in the upcoming Memorandum of Law in support of a Motion for Preliminary Injunction, the basic due process requirement of fair warning applies to license disciplinary proceedings and civil cases in which constitutional rights are involved.

125.   License disciplinary statutes have to give licensees fair warning of what constitutes unprofessional conduct and what limitations are imposed upon. a dental practitioner in this case in the practice of holistic and biological dentistry.

126.   To further meet the minimum due process requirement of fair notice statutory regulatory schemes have to give dental practitioner such as the Plaintiff notice that they cannot use naturopathic medicine, a branch of healing arts which is not regulated in Virginia by any statutory or regulatory enactments or agency, in the practice of holistic/biological dentistry. The statues and regulations also have to give fair notice to all dentists in the Commonwealth of Virginia that when it comes to the Defendants, VA Code § 54.1-2700 and 18 VA Admin. Code § 60- 21-50 do not mean what they say, and do not say what they mean.

127.   In addition, to meet the due requirement of fair warning in this case, the Defendants have to enact regulations which prohibit the blend and use of Naturopathic Medicine and/or the practice of holistic dentistry for the assessment of

the health conditions of the human body as related to dental illnesses and the treatment of the same.

128.  None of the foregoing basic due process fair warning elements exist anywhere in Virginia law. To the contrary, Naturopathic Medicine is neither regulated not outlawed in the Commonwealth of Virginia, nor is holistic dentistry.

129.  The Virginia legislature enacted VA Code § 54.1-100, which specifically recognizes that where a field of the healing arts is not regulated, the constitutional right to practice the same field prevails. The legislature did not delegate legislative powers to the Defendants aimed at excluding the field of Naturopathic Medicine from being practiced in this Commonwealth.

130.  Consequently, the prosecution brought by the Defendants against the Plaintiff which is predicated upon Dr. Salartash's assessment of Patient A through naturopathic methodology is a bad faith harassment prosecution for several reasons: (a) the Defendants do not regulate the practice of naturopathy in Virginia; (b) the Virginia legislature does not regulate the practice of Naturopathy in Virginia; (c) members of the Virginia Board of Dentistry have neither the statutory authority nor the specialized qualifications nor the authority to hear matters or complaints involving the practice of naturopathic medicine; (d) the Defendants' own regulations found at 18 VA Admin. Code § 62-21-10 through 18 VA Admin. Code § 62-21-108 do not provide for a ban against the practice of holistic or biological dentistry; (e)

the defendant's own regulations found at 18 VA Admin. Code § 62-21-10 through 18 VA Admin. Code § 62-21-108 do not provide for a ban against the use of Naturopathic Medicine by credentialed Naturopathic Doctors such as the Plaintiff and the blending of the result of the same into the assessment of dental patients; (e) no statutory provision pertaining to the regulation and practice of dentistry in Virginia codified in VA Code §§ 54.1-2700 through 54.1-2729.1 prohibits the practice of Naturopathic Medicine in Virginia: (f) no statutory provision pertaining to the regulation and practice of dentistry in Virginia codified in VA Code §§ 54.1-2700 through 54.1-2729.1 prohibits the information obtained on separate assessment made by a Naturopathic physician under modalities of Naturopathic Medicine to be applied to the manner in which conventional dentistry modalities and treatments are applied to a specific patient; (g) no provision in the dental disciplinary statute VA Code § 54.1-2705 authorizes the Virginia Board of Dentistry and the Defendants to assess and discipline a licensee under their jurisdiction for practicing a healing arts form which is neither regulated nor prohibited by either the Virginia legislature or by the Defendants; (f) no statutory provision pertaining to the regulation and practice of dentistry in the Commonwealth of Virginia, codified in VA Code §§ 54.1-2700 through 54.1-2729.1, vests the Defendants with authority and power to assess the merits of Naturopathic Medicine modalities, which are matters outside of their specialized knowledge and expertise.

41

131.   With the foregoing principles in mind, the analysis now turns to what the two allopathic neurologists Dr. Glenn Cook, MD and the Defendants' expert Dr. Umar Naseef Bin Alam, DO, respectively say that the defendant did wrong in the complaint to the Board in the "expert report."

(g)    **The complaint of Dr. Glen A. Cook, MD**.

132.   In the materials sent along with the Summary of Charges (6 bound volumes) the Defendants received a complaint from a Dr. Glen A. Cook MD dated August 8, 2022, which was given case No. 225344 by the Defendants. EX G hereto. The complaint pertains to Dr. Salartash's assessment and examination of Patient A with basic Naturopathic Medicine assessments, which the complainant either rejects or is not familiar with.

133.   Dr. Cook is an allopathic medical doctor/physician who is neurologist at the Walter Reed National Military Medical Center in Bethesda, Maryland. A summary of his CV can be found online at https://thedysautonomiaproject.org/tcp-faculty/.

134.   Dr. Cook is the Director of the Autonomic Disorders Clinic at Walter Reed National Military Medical Center in Bethesda, Maryland, where he helped establish the autonomic lab. Previously, Dr. Cook served as Director of the Clinical Neurophysiology Laboratory and the Autonomic Disorders Clinic at the Naval Medical Center in Portsmouth, Virginia. He also served as an Assistant Professor in

the Department of Neurology at the Uniformed Services University's F. Edward Herbert School of Medicine. Dr. Cook received his doctorate with Distinction in Service from the University of Michigan Medical School. He has furthered his education including completing a fellowship in Autonomic Disorders in the Clinical Neurocardiology Section of the National Institute of Neurologic Disorders and Stroke at the National Institute of Health.

135.   Dr. Cook does not practice neuropathy, dentistry, or biological/holistic dentistry. He is an allopathic neurologist.

136.   Conversely Dr. Salartash does not practice neurology. She does not treat neurologic medical conditions. She has a dental license to practice dentisty. EX A hereto.  She also has accreditations as a Doctor of Naturopathy, a branch of healing arts not regulated by the Virginial legislature or by any other ranch or agency of the Virginia state government.

137.   Dr. Cook's complaint seems to not only misapprehend the fact that Dr. Salartash is neither a competitor, nor a medical doctor, nor a practitioner of neurology. Dr. Cook also seems to be unfamiliar with and rejects any notion of holistic and biological dentistry approaches in Dr. Salartash's practices.

138.   Instead, Dr. Cook's complaint to the Board accuses Dr. Salartash of practicing "outside the scope of practice of a dentist." EX G at Bates Stamp 000012.

43

He also seems to take aim at the complementary naturopathic assessment and language used by Dr. Salartash in her practice of biological dentistry.

139.   The complaint states verbatim as follows:

> Dr. Salartash is claiming to provide nutritional, heavy metal and mineral testing "adrenal testing" and assessment of ANS (autonomic nervous system) functional state. All of these are outside the scope of practice of a dentist. Further the methods she is using are no physiologically based and do not provide an accurate measure of health or disease.
>
> She is performing heart rate variability measurements and diagnosing "Blocked Autonomic system" using protocols that are untested and unproven. The diagnoses she offers is no a term used in medicine and is has no physiologic bases. Her report includes mention of "bigeminiy" and "trigeminy" with no additional comment or recommendation for further evaluation foe what could be a concerning heart rhythm condition (continued on attached page).

EX G at Bates Stamp 000012.

140.   The assessments referenced by Dr. Cook are annexed as part of his complaint. EX G hereto. As discussed above and below, all of the assessments identified in Dr. Cook' complaint are assessments provided within Dr. Salartash's expertise and qualifications as a Naturopathic Doctor, and within the scope of the practice of dentistry as set forth above and in her accompanying Declaration.

**(h)    Dr. Salartash's explanation to Dr. Cook's complaint**.

141.   Although not used specifically by the name "naturopathic assessment," in her response to Dr. Cook's complaint (EX H hereto dated January 26, 2023, Bates Stamp 000029-000033), Dr. Salartash explained in no uncertain terms as follows:

> As part of my practice I offer complementary services including Heart Rate Variability (HRV) testing and Oligo Scan testing for minerals, toxic metals (meant heavy metal body burden - see Plaintiff's Declaration) and oxidative stress. These

44

tests are not used for diagnosis [of] any medical condition.  Rather they are used to obtain data that can provide a better understanding of a patient's overall dental health and assist in formulating as appropriate dental health.

EX H, Bates Stamp 000031.

142.   Dr. Salartash goes on to discuss what type of information related to the patient's dental health each one of the two selected assessments was intended to detect as follows:

> Heart rate variability is a useful method to measure cardiac autonomic modulation in patients undergoing dental procedures. Knowledge of a patient's physiological conditions can provide valuable information in assisting faster healing and recovery in a patient needs to undergo a dental procedure or dental surgery. [Patient A's] overall functioning of her physiological systems was at a low level. That explained her ongoing sleep apnea issue.

 EX H, Bates Stamp 000031.

143.   Dr. Salartash then refers the Defendants to attached peer reviewed scientific articles supporting her explanations.

144.   Dr. Salartash then goes on to explain that the OligoScan test is used to determine the presence of 20 minerals and 14 heavy metals though spectrophotometry, a complementary Naturopathic Medicine assessment. She then explains how the test works and the reason for performing the same. The later explanation reads as follows: "if a patient has mineral imbalance, this can impact the patient's overall dental health, periodontal health dental maintenance, and prognosis for dental work such as full mouth restoration. [Patient A] has issues with some gum

45

pockets as well and need to maintain her full mouth reconstruction and implant at optimal level." EX H, Bates Stamp 000031.

145.    The foregoing assessment falls squarely within the definition of the practice of dentistry which includes assessing and diagnosing the impact dental conditions have upon the body and in this case vice versa, the patient's ability to recover from dental procedures.

146.    Dr. Salartash addresses Dr. Cook's part of the complaint which accuses her of practice beyond the scope of her dental license.

147.    The explanation states clearly that she does not do any such thing and she explains the reasons for her response as follows:

(A)    Patient A's informed consent forms clearly state that the assessments performed by Dr. Salartash are not a medical diagnosis and they are not intended to replace medical assessments by Patient A's own physicians. The explanation further states as follows regarding Patient A: "Patients are informed to seek advice from a medical physician regarding nutritional and supplemental recommendations related to oral health and that Dr. Salartash provided Patient A with a referral to a functional medicine physician and directed her to follow up with her PCP." EX H, Bates Stamp 000032.

(B)    The medical records indicate that the testing was for data interpretation only and it is not a diagnosis. Therefore Dr. Cook's contentions in the complaint that

46

Dr. Salartash makes "diagnoses" are patently incorrect and not reflected from the records. This is significant in the context of a bad faith prosecution where the Defendants make up their own set of allegations that cannot discerned from the medical records or form any other existing source. See Memorandum of Law.

(C)    Finally, Dr. Salartash attached peer reviewed scientific articles supporting the Naturopathic Medicine tests of HRV and OligoScan device for mineral and heavy metal testing which she ran on dental Patient A.

148.   It is very hard to discern how in light of the plain English statutory definition of the term "dentistry" which encompasses "conditions of the oral cavity and the maxillofacial, adjacent, and associated structures **and their impact on the human body**," and in light of the Board's own regulation 18 VA Admin. Code § 60-21-50(a), that Dr. Cook's complaint is even a consideration for the Defendants within any confines of ANY of the provisions of the disciplinary statute VA Code § 54.1-2706.

149.   There is no explanation for even allowing Dr. Cook's complaint to proceed beyond a preliminary assessment where a determination of the very same conduct which he expressed in the complaint falls within the definition of the practice of dentistry.

150.   Clearly, assessing the impact of Patient A's dental conditions on the human body and how the treatment and the recovery is affected by her human body

condition is not only something that is within the scope of the practice of dentistry as defined by VA Code § 54.1-2700, but failure to address these human body conditions may be considered under the disciplinary statute as practicing dentistry with gross negligence.

151.  For example if the dental issues which Patient A had as addressed in Plaintiff's response (EX H, Bates Stamp 000030-000033) would have been addressed without considering the condition of the entire human body before the treatment was imparted and the healing was problematic due to the issues identified during the assessment as explained by Dr. Salartash in her response, then the Defendants would have charged the Plaintiff with practicing dentistry negligently and incompetently pursuant to VA Code § 54.1-2706(5) ("Intentional or negligent conduct in the practice of dentistry or dental hygiene which causes or is likely to cause injury to a patient or patients"); VA Code § 54.1-2706(9) ("Violating, assisting, or inducing others to violate any provision of this chapter or any Board regulation") (namely in this case would have been VA Code § 54.1-2700 defining the practice of "Dentistry"; VA Code § 54.1-2706(11) ("Practicing or causing others to practice in a manner as to be a danger to the health and welfare of his patients or to the public") (In this case failure to assess the condition of the human body and the impact of Patient A's dental conditions on the same as provided by VA Code § 54.1-2700; the Board's regulation, 18 VA Admin. Code § 60-21-60(A)(2) (" Consulting

with or referring patients to other practitioners with specialized knowledge, skills, and experience when needed to safeguard and advance the health of the patient"), which is cited clearly in error because a sleep study was performed on Patient A by a sleep physician specialist.

152.    Defendant's election (i) not only to summarily suspend Dr. Salartash's license and to prosecute the Plaintiff for doing that which the practice of Dentistry statute in Virginia enjoin upon her to do (which is to diagnose and treat "diseases and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures" and the impact on the human body), and (ii) the next step of actually staging such prosecution through the employment and use of the report of Dr. Bin Alam, amounts to a text book harassment prosecution and to the targeting of the Plaintiff for her practice of holistic and biological dentistry, which includes the assessment of the condition of the human body as provided by VA Code § 54.1-2700.

**(j)    The expert report of Umar Naseef Bin Alam, DO states matters which are beyond the defendant's authority <u>and expertise to consider</u>.**

153. Rather than considering if the Defendants had subject matter jurisdiction to adjudicate matters of naturopathic medicine, reject holistic and biological dentistry practice and look at the face value of the complaint and the definition of the practice of dentistry and its scope contained in VA Code § 54.1-

2700 and the Board's own regulation 18 VA Admin. Code § 21-50, the Defendants actually hired a physician neurology expert to opine to the standard of care of allopathic medicine and neurology applicable to the assessments used by Dr. Salartash on Patient A in the context of the specialty of neurology.

154.   The CV and the report of Dr. Bin Alam, DO, is annexed hereto as EX I at Bates 000001-000003.

155.   There are several constitutional due process problems with this approach of the staging of a bad faith prosecution, which in turn calls into question several issues relevant to this action: (a) the bad faith prosecution motive; (b) the deliberate refusal of the Board to retain an expert with familiarity of the practice of holistic/biological dentistry and the documented scientific publications shown the relevancy of the Naturopathic Medicine testing in the context of dental treatment; (c) the Defendants' lack the authority and the expertise to decide matters of the general practice of medicine; (d) the irrelevancy of Dr. Bin Alam's report on the medical standard of care related to the procedures used by Dr. Salartash to the relationship between the data obtained and interpreted by Dr. Salartash with respect to Patient A in the context of dental healthcare; (e) Dr. Bin Alam's alarming lack of qualifications to address the specific relationship between the assessment results and assessment data used by Dr. Salartash in Patient A to determine the relationship between the patient's dental conditions and the human body and (g) the general

fabrication and purposeful staging of a bad faith prosecution through the manipulation and marshaling of questions and queries posed to the expert, all of which are aimed at morphing Dr. Cook's complaint into Dr. Salartash's practice of medicine beyond the scope of her license, instead of addressing the actual complaint, the issues raised in the actual dental record and in Plaintiff's response to Dr. Cook in relation to the definition of the practice of dentistry of VA Code § 54.1-2700 and the Board's regulation 18 VA Admin. Code § 60-21(A)(2).

156.   As will be seen in the upcoming Memorandum of Law to be filed in support of Plaintiff's Motion for Preminimary Injunction, a bad faith prosecution is one that is based upon fabricated reports, and fiction which have no relevancy to the issues before the Virginia Board of Dentistry and which the Board has no authority to adjudicate, namely the meaning of the Naturopathic Medicine tests used by Dr. Salartash in her practice of dentistry and not within the practice of medicine.

157.   It is hard to imagine why, other than staging a bad faith prosecution against Dr. Salartash and targeting her because she practices biological/holistic dentistry which is actually mandated by VA Code § 54.1-2700 and by the Board's own regulation n 18 VA Admin. Code § 60-21-50(a) , the Defendants would select an allopathic neurologist physician like Dr. Bin Alam to write a report about the meaning of the use of testing use by Dr. Salartash within the specialty of medical neurology when this is not a case which calls for such opinions and expertise.

158.  The Virginia relevant expert witness statue VA Code § 8.01-581.20 governs the expert witness standard in cases involving professional discipline against a dentist. The statute provides verbatim in relevant part as follows:

§ 8.01-581.20. Standard of care in proceeding before medical malpractice review panel; expert testimony; determination of standard in action for damages.

A.  In any proceeding before a medical malpractice review panel **or in any action against a** physician, clinical psychologist, clinical social worker, licensed professional counselor, podiatrist, **dentist,** nurse, hospital, or other health care provider to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in this Commonwealth, **the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner <u>in the field of practice or specialty in this Commonwealth</u> and the testimony of an expert witness, otherwise qualified, as to such standard of care, shall be admitted;** provided, however, that the standard of care in the locality or in similar localities in which the alleged act or omission occurred shall be applied if any party shall prove by a preponderance of the evidence that the health care services and health care facilities available in the locality and the customary practices in such locality or similar localities give rise to a standard of care which is more appropriate than a statewide standard. Any health care provider who is licensed to practice in Virginia shall be presumed to know the statewide standard of care in the specialty or field of practice in which he is qualified and certified. This presumption shall also apply to any person who, but for the lack of a Virginia license, would be defined as a health care provider under this chapter, provided that such person is licensed in some other state of the United States and meets the educational and examination requirements for licensure in Virginia. An expert witness who is familiar with the statewide standard of care shall not have his testimony excluded on the ground that he does not practice in this Commonwealth. **A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge *<u>of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.</u>***

VA Code § 8.01-581.20 (emphasis supplied).

159.  For starters, Dr. Bin Alam's credentials are not anywhere close to Dr. Salartash's specialty of either Dentistry or Naturopathic Medicine.

160.   Specifically, Dr. Bin Alam's CV reveals that he is a Osteopathic Doctor licensed in Virginia by the Virginia Board of Medicine. His field of specialty is Neurology and not Dentistry. He is a staff neurologist at the Richmond Veteran affairs Medical center and provides consulting services to HCA Neurological Associates.

161.   Dr. Bin Alam's admitted focus of interest are neuroimmunology, neuropsychology, and hospital neurology. Dr. Bin Alam is proficient in the following medical neurological procedures: chemo denervation for migraines, cervicalgia, hemifacial spasms, spasticity of the extremities, myofascial pain injections, peripheral nerve blocks, ultrasound guided pain injections for lower back pain, NCS/EMG studies and EEGs including prolonged studies. See EX I at Bates Stamp 000004.

162.   The additional credentials show that Dr. Bin Alam was licensed in Virginia as a Doctor of Osteopathic Medicine on March 5, 2019. His training has been exclusively in the field of neurology, as was his employment history detailed in his CV.  See EX I, annexed hereto.

163.   Nothing in the disclosed credentials of Dr. Alam suggests that he has any training or qualifications in dentistry and dental medicine or that he has even any peripheral experience with the diagnosis and treatment of dental patients. Nothing in his disclosed qualification reveal that he is either has: (a) knowledge of

53

the standards of the defendant's specialty; (b) any experience or knowledge of what conduct conforms or fails to conform to those standards or that (c) he has had active clinical practice in either the defendant's specialty or a related field of medicine, in this case dentistry, within one year of the date of the alleged act or omission forming the basis of the action. See VA Code § 8.01-581.20.

164.    Consequently based upon the face of Dr. Bin Alam's own disclosed credentials he is a neurologist physician who does not possess any clinical experience in diagnosis of dentistry and related impact which the dentistry condition of Patient A has on the human body.

165.    In short, the Defendants purposely selected an expert in neurology to render opinions on the standard of care in neurology and to assess what Dr. Salartash did or did not do with respect to Patient A while applying the standard of care of medical neurology for the purposes of staging a bad faith retaliatory prosecution.

166.    Yet Dr. Bin Alam has no statutory qualifications to render any opinion with respect to Dr. Salartash's selection of testing modalities and interpretation in the context of the practice of dentistry as specifically defined by VA Code § 54.1-2700 and 18 VA Admin. Code § 60-21-50.

167.    Dr. Bin Alam's report similarly does not offer opinions within the parameters of the statutory provisions of VA Code § 8.01-581.20.

168.    Specifically at Bates Stamp 000004 of the report (EX I) Dr. Bin Alam admits that his report and opinions do not meet the statutory standard of VA Code § 8.01-581.20 as follows:

> In my review of the evidence/documentation and based upon **my education and training in the field of neurology with subspecialized training in neurophysiology and focus on neuroimmunology** it is in my opinion to a reasonable degree of certainty that Dr. Salartash offered diagnostic testing that **is not the standard of care in medicine** to evaluate mineral/vitamin deficiencies and autonomic nervous system abnormalities with regards to the treatment of [Patient A].

EX I at Bates Stamp 000004.

169.    That statement made by Dr. Bin Alam in this paragraph supports Plaintiff's contention that the charges relating to the diagnosis and care of Patient A are brought in bad faith and are not even based on the alleged breach of a stated standard of care in Plaintiff's specialty which is Dentistry or Naturopathic Medicine.

170.    Dr. Bin Alam specifically states that he used his expertise and education and training is in "the field of neurology with subspecialized training in neurophysiology and focus on neuroimmunology." He also opines as to the testing she performed within the "standard of care of medicine." EX I at Bates Stamp 000004.

171.    These assessments and admissions present ample support for Dr. Salartash's claims of Defendants' fabrication of bad faith prosecuting claims which are not based upon opinions related to dentistry or rendered by an expert with expertise in Dr. Salartash's field of practice, namely dentistry.

172.   The following are the questions answers appearing in Dr. Bin Alam's report followed by relevant allegations pertaining to the present claims of bad faith prosecution:

> (1)    **Is the Oligoscan <u>a credible medical test used in the practice of medicine</u> to diagnose diseases, syndromes, pathologies, etc. If so, what specifically is it used to diagnose?**

<u>EX I</u> at Bates Stamp 000004 (emphasis added).

173.   Administrative agencies are creatures of the legislation of limited subject matter jurisdiction. The General Assembly creates administrative agencies and defines their powers. <u>See</u> Va. Const. Art. III, § 1.

174.   The Board of Dentistry is a creature of statute and derives its powers from statute. The Board of Dentistry cannot vest itself with powers beyond those granted to it by the legislature unless such powers can be implied from the language used in the statute to be implied as a necessary power to enable the Board to exercise the powers expressly granted. Judging and adjudicating issues of medical neurology is not within the powers or subject matter jurisdiction of the Defendants.

175.   The legislature created the Board of Dentistry under VA Code § 54.1-2702 which provides as follows:

> The Board of Dentistry shall consist of ten members as follows: seven dentists, one citizen member and two dental hygienists. The professional members of the Board shall be licensed practitioners of dentistry or dental hygiene, of acknowledged ability in the profession, and must have practiced dentistry or dental hygiene in this Commonwealth for at least three years.  The terms of office of the members shall be four years.

VA Code § 54.1-2702.

176.    Notably, the Virginia Board of Dentistry does not include any members of the medical profession on the Board who are equipped with specialized training and expertise to decide whether "Oligoscan is a credible medical test used in the practice of medicine to diagnose diseases, syndromes, pathologies, etc.," likely due to the fact that the Board of Dentistry neither adjudicates matter of medical practice, nor does it have the subject matter and powers to do so.

177.    The statutory powers of the Board are specifically set forth in several statutory provisions throughout VA Code §§ 54.1-2707 through § 54.1-2729.01. Nowhere in the same statutes is there either an express or an implied power which authorizes the Board to determine tests used by dental licensee within the context or the standard of care of the practice of medicine and/or neurology, as they propose to do in this case. EX I hereto.

178.    Therefore Question No. 1, in Dr. Bin Alam's report as well as the follow up answer responding the propriety of the test within paradigms and in the context of the medical practice of neurology, is not only "beyond the scope" of the powers and subject matter jurisdiction and intellectual professional specialized training of the Board members to adjudicate and consider, but it is irrelevant to the determination of any issues related to Dr. Salartash's practice of dentistry.

179.    Dr. Bin Alam's response is similarly irrelevant to the issues of the practice of dentistry. He states "the Oligoscan is NOT a standard of care diagnostic tool to evaluate heavy metals and vitamins **in the medical field**." <u>EX I</u> Bates Stamp 000004 (emphasis added). Clearly, Dr. Salartash does not use Oligascan in the medical field for neurology purposes, because she is not a license physician. She uses this test as a date gathering tool in the practice of Dentistry, an issue which was not and cannot be opined to by Dr. Bin Alam, a physician neurologist.

180.    Question 2 reads as follows:

> 2)    If not, what test or tests are considered **the standard of care in the practice of medicine** to determine levels of minerals and/or heavy metals in the body?

<u>EX I</u> at Bates Stamp 000004 (emphasis added).

181.    Again, for all of the foregoing reasons, the Board's Members neither have the expertise nor the specialized training to hear and resolve questions of the **standard of care in the practice of medicine and neurology.** This is not a medical case; the Board is not empowered to determine the propriety of tests used within the practice of medicine or any questions or issues regarding the practice of medicine. When the Defendants act beyond their powers and subject matter jurisdiction the Board's action are null and void as a matter of law and the Board's prosecution of the Plaintiff is brought in bad faith.

182.    For all of the above referenced reasons neither Question No. 2 nor Dr. Bin Alam's response are relevant to the Board's bad faith prosecution of Dr. Salartash.

183.    Question 3 reads as follows:

> 3)    What diseases, syndromes, pathologies, etc. can be diagnosed by evaluating a patient's mineral and/or heavy metal levels?

Dr. Bin Alam's response to that question is:

> There are numerous disease processes that can be, associated with abnormal levels of heavy metals and minerals. Cognitive function, memory difficulties, gastrointestinal function, renal function, skin and bone disorders, **dental disorders, immune system abnormalities**, blood dyscrasias, liver function and cardiac systems can all be affected by abnormal levels of heavy metals and minerals.

EX I  Bates Stamp 000004-000005 (emphasis added).

184.    The question is not posed by the Board in the context of the practice of medicine or dentistry. However Dr. Bin Alam's answer clearly identifies **dental disorders, immune system abnormalities**, as some of the diseases that can be identified through "evaluating a patient's mineral and/or heavy metal levels." EX I at Bates Stamp 000004. Clearly evaluating dental disorders is squarely within the practice of dentistry as specified by VA Code § 54.1-2700 and the Board's own regulation, 18 VA Admin. Code § 60-21-50.

185.    In addition, evaluating immune system abnormalities is clearly within the scope of Dr. Salartash's explanation regarding the impact of dental disease on the human body as well as the patient's ability to heal from dental interventions. EX

59

H, Bates Stamp 000031. That is clearly within the scope of the practice of medicine as defined by VA Code § 54.1-2700 and the Board's own regulation, 18 VA Admin. Code § 60-21-50.

186.   Question 4 reads as follows:

4)   Is the Nervexpress a credible medical test **used in the practice of medicine to diagnose autonomic nervous system disorders**?

EX I at Bates Stamp 000005 (emphasis added).

187.   Dr. Bin Alam's answer states as follows:

The Nervexpress assesses heart rate variability and analysis the R-R interval during an allocated time period as well as during various maneuvers such as with valsalva, deep breathing and activity **to suggest physical fitness      level and the <u>overall health of the autonomic nervous system via sympathetic and parasympathetic compensatory functions.</u>** At the current      time, the Nervexpress and heart rate variability studies overall are NOT **<u>the diagnostic standard of care diagnostic school to evaluate abnormalities of the autonomic nervous system</u> though they can be suggestive of underlying pathology.**

EX I Bates Stamp 000005 (emphasis added).

188.   Again neither Q4 nor the answer to the same have any relevance to the Defendants' summary suspension and formal disciplinary action against the Plaintiff which accuses her of various violations of VA Code § 54.1-2706 and the Board's own regulations 18 VA Admin. Code § 60-21-50 and 18 VA Admin. Code § 60-21-60(A)(2). The Bord does not accuse Dr. Salartash of violating the standard of care in the practice of medicine. To be relevant, Dr. Bin Alam's must provide opinions in his expertise. That expertise admittedly does not include dentistry.

189.   Asking Dr. Bin Alam whether "Nervexpress [is] a credible medical test **used in the practice of medicine to diagnose autonomic nervous system disorders**" neither amounts to anything relevant to the practice of dentistry nor does in amount to an exercise of the powers and subject matter jurisdiction of the Board members to hear and adjudicate matters of the practice of dentistry. The Defendants neither have the powers not the authority to adjudicate the credibility of a medical test in the context of the practice of medicine simply because they lack any specialized medical training and experience and the statutory powers to do so.

190.   Interestingly, Dr. Bin Alam does acknowledge that even within the practice of medicine the test is used to assess Heart Rate Variability, an indicator and benchmark for the determination of **autonomic nervous system disorders.** While he states that the test is not the standard of care in the practice of medicine to "diagnose nervous system disorders," the results can be "**suggestive of underlying pathology."** EX I at Bates Stamp 000005 (emphasis added).

191.   That is exactly what Dr. Salartash said in her response to Dr. Cook's complaint. She said she does not use the HRV test to diagnose anything but to collect data suggestive of underlying pathology affecting the human body in the context of the diagnosis and treatment of Patient A's medical conditions. The credibility of the test within the practice of medicine standard of care is not and can never be an issue in a disciplinary action for the violation of VA Code § 54.1-2706 which exclusively

61

addresses unprofessional conduct within the practice of medicine. In addition whether any medical test used within the practice of medicine is a credible test or not, that is not something within the powers and subject matter jurisdiction and expertise of any dental board staffed by dentist and lay people to decide.

192.    Question 5 is set forth as follows:

> 5)    If not, what diagnostic tools or tests **are considered the standard of care *in the practice of medicine* for diagnosing autonomic nervous system disorders**?

EX I at Bates Stamp 000005 (emphasis added).

193.    Again and again the Board members are seeking expert answers from Dr. Bin Alim within the standard of care in the practice of medicine, one which is inapplicable to the standard of care of Plaintiff's specialty which is dentistry. See VA Code §8.01-581.20.

194.    Consequently both question #5 and Dr. Bin Alam's answer regarding the same framed within the standard of care of the practice of medicine are irrelevant and a framing of a bad faith prosecution predicated on Defendants actions taken in bad faith and in excess of their powers and authority and expertise, none of which empower them to consider and adjudicate the propriety of medical testing within the standard of care of the practice of medicine.

195.    Question 6 asked the following:

> 6)    What ls the purpose, generally accepted i*n the practice of medicine,* of testing heart rate variability? What ls the standard of care for testing heart rate variability?

EX I at Bates Stamp 000005 (emphasis added).

196.   Again the purpose, generally accepted "***in the practice of medicine,***" of testing heart rate variability and the standard of care for testing heart rate variability in the practice of medicine is beyond the scope of then powers and subject matter jurisdiction, training and expertise of the Defendants, members of the Virginia Board of Dentistry.

197.   Couching alleged violation of the practice of medicine within the definitions of VA Code § 54.1-2706, 17 VA Code § 6021-50 and 18 VA Admin. Code § 60-21-60(A)(2) within questions and opinions rendered by Dr. Bin Alam within the standard of care of the practice of medicine is irrelevant to the issues appearing in the Statement of Allegations related to the Board's accusation of Plaintiff's violations of the dental practice disciplinary statute.

198.   The Defendants neither have the powers nor the jurisdiction nor the training or expertise to adjudicate the "generally accepted i***n the practice of medicine,*** of testing heart rate variability and the standard of care for testing heart rate variability in the practice of medicine." This type of question and reliance upon Dr. Bin Alam's answer regarding the proper testing for heart rate variability within the context of the practice of medicine is textbook staging of a bad faith harassment prosecution based upon a standard of care which is not applicable to Plaintiff's field of practice.

199.   Both the question and Dr. Bin Alam's answer are irrelevant to supporting the use of HRV testing in the context of dental Patient Assessment. On this subject matter within the context of the practice of dentistry, Dr. Salartash offered a multitude of peer reviewed scientific articles supporting HRV assessment of dental patients (<u>EX H</u> hereto), which the Board neither addressed with any expert nor with Dr. Salartash during any communications and chose to simply ignore and replace the same with a practice of medicine standard of care.

200.   Question 7 asked as follows:

> 7) Is "neural therapy"', as defined by Dr. Salartash on her practice website, a credible therapy for the detection and treatment of autonomic nervous system disorders?

<u>EX I</u> at Bates Stamp 000005. Dr. Bin Alam answers:

> Neural Therapy or more commonly referred to as trigger point injections and myofascial pain injections is used primarily to treat pain stemming from a musculoskeletal etiology. Neural Therapy, as defined by Dr. Salartash's practice website, is NOT a standard of care that is currently used for the treatment of autonomic nervous system disorders ***in the field of Neurology*** in the United States **though there naturopathic medical fields that suggest it can regulate abnormalities within the autonomic nervous system.**

EX I at Bates Stamp 000005 (emphasis added).

201.   Both the questions and the answer epitomize the nature of the attempted staging of the bad faith prosecution.

202.   In the first place, the Defendants are asking Dr. Bin Alam, a neurologist physician to opine on a dentist's advertisement on her web site of neural therapy and what the meaning of that is.

203.   Not surprisingly, Dr. Bin Alam applies the neurology standard of care and not that of dentists to answer that Neural Therapy, as defined by Dr. Salartash's practice website, is NOT a standard of care that is currently used....***in the field of Neurology.***

204.   Again, such elicited opinions have zero bearing on the standard of care regarding Dr. Salartash's practice of biological/holistic dentistry which blends in naturopathic methodology in her capacity as a naturopathic doctor, whole body assessment and conventional dentistry, none of which have any relevancy to or connection with the practice of medicine and in particular the practice of neurology.

205.   Dr. Salartash does not practice neurology and she does not use and did not use Neural therapy as part of her dental treatment, but rather as an instrument for data gathering to be used in the assessment of the patient's overall body condition as it related to the impact that her dental conditions have on the human body.

206.   Moreover, Dr. Bin Alam's admission that the therapy is used by naturopathic physicians, in this case Dr. Salartash, takes the case and this therapy in total out of the subject matter jurisdiction and scrutiny of the Virginia Board of Dentistry. The Defendants do not regulate the practice of Naturopathic Medicine and neither does the Virginia legislature.

207.   Question 8 asked the following:

8)    What treatment methods or modalities are considered the standard of care for treatment of autonomic nervous system disorders ***by a physician?***

EX I at Bates Stamp 000005 (emphasis added).

208.    This question in and onto itself epitomizes the bad faith staging of this prosecution. Again, Dr. Salartash is not a physician. She does not treat autonomic nervous system disorders. Nonetheless the Defendants are bent in fabricating a charge that she does. Her explanation of the testing used by her in Patient A, namely Heart Rate Variability and Oligo Scan Testing in order to gather information about the impact of her body condition on the dental conditions which she came to treat with Dr. Salartash. That is the textbook practice of dentistry as defined by VA Code § 54.1-2700 and the Board's regulation in 18 VA Admin. Code § 60-21-50.

209.    The Defendants' attempted staging of a bad faith prosecution through the setting of the standard of care inquiring into what treatment methods or modalities are considered the standard of care with respect to the treatment of autonomic nervous system disorders *by a physician* is not only irrelevant for the purposes of these proceedings and the summary suspension order but it is a matter which is outside the scope of the subject matter, training and expertise of the Defendants.

210.    Dr. Bin Alam's response to this question is similarly irrelevant because the same does not even come close to comporting with the statutory conditions of expert testimony set forth by VA Code § § 8.01-581.20. He testifies to the standard

of care in medicine which is irrelevant and inapplicable to the allegations of the Statement of Charges and to Dr. Salartash's practice of dentistry.

211.   The treatment methods used by physicians to treat autonomic nervous system disorders and the physician standard of care regarding the same have no relevancy to the practice of dentistry and to the staged bad faith prosecution which the Defendants are attempting to disguise as a "practice of medicine" by Dr. Salartash outside the scope of her license. Dr. Salartash does not treat autonomic nervous systems and does not use modalities in the treatment of the same.

212.   Question 9 asked as follows:

> 9)   What specialty practice physicians are most commonly engaged in the treatment of patients for autonomic nervous system disorders? What Is the generally accepted education and training required to practice that specialty or specialties?

EX I at Bates Stamp 000006.

213.   Clearly this question posed to the neurology expert is irrelevant to the charges brought against the Plaintiff and set in the final Statement of Allegations. The answer is equally irrelevant because Dr. Salartash does not treat patients for autonomic nervous system disorders, nor do the Statement of Allegations state any such accusations.

214.   Question 10 inquired as follows:

> 10)   Is there **a medically necessary purpose** to obtain diagnostic testing regarding minerals, heavy metals, autonomic nervous system function, and heart rate variability for a patient prior to referring them for dental treatment? Elaborate If necessary.

EX I at Bates Stamp 000006 (emphasis added).

215.   This question and any accusations pertaining to the same is outside the scope of the powers and subject matter jurisdiction of the Defendants. The Defendants do not regulate medical necessity or medical purposes regarding anything. They regulate the practice of medicine. Dr. Bin Alam is not a dentist. His response to this question predictably is couched within his expertise and education as a neurologist, neuropsychology an autoimmune neurology. His opinion that there is no medical necessity for the examinations listed in the questions are expressed within his expertise as a neurologist not as a dentist who practices holistic/biological dentistry within the definition of 18 VA Admin. Code § 60-21-50.

216.   Question 11 reads as follows:

> 11)    Please provide any additional opinion you may have regarding the credibility and/or efficacy of the diagnostic tests offered, ordered, or performed by Or. Salartash, Including Oligoscan and Nerveexpress, and any others referenced in the case materials.

Dr. Bin Alam responds as follows:

> In my review of the evidence/documentation it is my opinion that the Oligoscan and Nervexpress are testing modalities that may suggest underlying abnormalities pertaining to minerals and vitamins and the autonomic nervous system **though they are not the standard diagnostic evaluations utilized in the medical and neurologic fields to diagnose and manage associated pathologies.**

EX I at Bates Stamp 000006 (emphasis added).

217.   Through its question to Dr. Bin Alam and by virtue of the expert's own answer, the Defendants are marshaling a bad faith prosecution. Specifically, Dr. Bin

Alam recognizes that "it is my opinion that the Oligoscan and Nervexpress are testing modalities that may suggest underlying abnormalities pertaining to minerals and vitamins and the autonomic nervous system." He then opines that these are not "standard diagnostic evaluations utilized in the medical and neurologic fields to diagnose and manage associated pathologies."

218.   Upon this answer the Defendants should have stopped their bad faith pursuit of the Plaintiff based upon Dr. Bin Alam's own answer. The Defendants do not have the power, authority, and subject matter jurisdiction to either discipline, prosecute, or take any action against the Plaintiff, a dentist, based upon the propriety of the use of the tests of Oligoscan and Nervexpress in medical and neurological fields.

219.   The Defendants are lay people and dentists. Their assessment of Oligoscan and Nervexpress within the paradigms of medicine and neurologic fields is "outside the scope" of their statutory powers to regulate the practice of dentistry and further support Plaintiff's claim of a bad faith prosecution.

220.   Finally, Question 12 stated as follows:

   12)    Please provide any additional opinion you may have regarding the credibility and/or efficacy of "neural therapy" as referenced in the case materials.

Dr. Bin Alam's response is:

   Neural Therapy is efficacious in the management of pain associated with musculoskeletal etiologies. However, its use for treatment of autonomic nervous system disorders **is not something that is currently accepted and practiced**

**regularly in the field of neurology and subspecialty of neurophysiology**, neuromuscular medicine and autonomic disorders in the United States.

<u>EX I</u> at Bates Stamp 000006 (emphasis added).

221.   For all of the above articulated reasons both the questions and the answer are beyond the scope do Defendants' subject matter jurisdiction. They have no authority to discipline a dentist based upon the standard of care **in the field of neurology and subspecialty of neurophysiology**, neuromuscular medicine and autonomic disorders in the United States.

222.   In short all of the questions posed to Dr. Bin Alam and his answers given in are in the context of a medical and neurological evaluation opinion and not in the context of the practice of dentistry as set forth in VA Code § 54.1-2700 and 18 VA Admin. Code § 60-21-50.

223.   Defendants' prosecution of the Plaintiff in reliance upon Dr. Bin Alam's report amounts to a bad faith persecution because the same report does not state any violation of the dentistry disciplinary statute VA Code § 54.1-2706.

**(k)    Allegations of failure to refer Patients B, C and D to orthodontists and performing orthodontics without training**.

224.   The Defendants accuse the Plaintiff of failure to refer Patients B, C, and D for orthodontist work when the Plaintiff does not have proper training and credentials to perform the same.

70

225.   These allegations are knowingly false and are aimed at harassing the Plaintiff for practicing holistic/biological dentistry.

226.   Plaintiff's CV, which the Defendants had in their possession and which is annexed hereto as <u>EX A</u>, demonstrates that she has extensive training and certifications in orthodontic procedures and that the above accusations are knowingly false and part of the bad faith prosecution.

## FIRST CAUSE OF ACTION – PRELIMINARY
## <u>INJUNCTION PURSUANT TO FED. RULE CIV. PROC. 65</u>.

227.   Plaintiff repeats reiterates and realleges each and every allegation set forth above with the same force and effect as if fully set forth at length herein.

228.   Plaintiff is seeking a preliminary injunction pursuant to Fed. Rule Civ. Proc 65 enjoining the Defendants from maintaining a bad faith prosecution pursuant to the Amended Notice of Hearing and the Statement of Allegations. <u>EX J</u> hereto. Plaintiff is also seeking a mandatory injunction directing the defnedants to remove of record the summary suspension order (<u>EX C</u> hereto) because the same violates Plaintiff's Fourteenth and Fifth Amednment constitutional rights as set forth above in this complaint.

229.   In general, the *Younger* abstention bars federal courts from interfering with ongoing state proceedings and deprives the court of applying subject matter jurisdiction to adjudicate federal claims related to state actions. Because the posture

71

of the present case is pending before a state administrative tribunal, unless there are applicable exceptions, the *Younger* abstention would apply.

230.    There are three exceptions to *Younger* abstention doctrine for cases in which 1) "there is a showing of bad faith or harassment by state officials," 2) "the state law to be applied . . . is flagrantly and patently violative of express constitutional prohibitions," or 3) "other extraordinary circumstances exist that present a threat of immediate and irreparable injury." *Kugler v. Helfant,* 421 U.S. 117, 124 (1975).

231.    The first exception of bad faith prosecution applies for all of the reasons articulate above. Together with the violation of Plaintiff's due process right to be free from bad faith prosecution and her constitutional right under the Fifth and Fourteenth Amendment to practice her profession free of unreasonable government interference, as recognized by VA Code § 54.1-100, they form the basis for irreparable harm and the request for a preliminary injunction.

232.    Federal Courts do not abstain and intervene and enjoin bad faith prosecutions through the issuance of federal injunctions.

   **(i)    The nature of bad faith prosecution – irreparable
            <u>harm for the purposes of injunctive relief</u>**.

233.    The factors considered by the Federal Courts in issuing injunctive relief regarding bad faith prosecutions are: (a) whether the prosecution is frivolous or undertaken with no reasonably objective hope of success; (b) whether it was

motivated by the defendant's suspect class **or in retaliation for the defendant's exercise of constitutional rights,** or (c) whether it was conducted **in such a way as to constitute harassment and an abuse of prosecutorial discretion**.

297.    Federal Courts in general enjoin bad faith prosecutions because the Plaintiff has a constitutional due process right to be free from bad faith prosecutions.

234.    In the present case the Plaintiff contends that the proposed prosecution is brought in bad faith because: (i) in the specified instances it is frivolous because the dental records on their face contain the information which the Defendants have purposely disregarded, especially in the context of the allegations regarding Patient A and which contradict substantive allegations sought to be made in the formal administrative action (ii) it is conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion because all of the issues related to Patient A are either nonexistent or are part of the specific definition of the practice of dentistry; (iii) the accusations of the Statement of Allegations  do not state any violation of the disciplinary statute VA Code §54.1-2706; (iv) the prosecution is brought without authority and it is aimed at regulating Naturopathic Medicine, a medical field which neither the Virginia Board of Dentistry nor the state of Virginia regulate; (v) the prosecution is brought based upon the guidelines of the AMA, a private dental association with no regulatory making powers, which reject complementary medicine approaches in dentistry; (vi) the Defendants are bringing charges against

the Plaintiff based upon an inapplicable standard of care of neurology and medicine, none of which the Defendants, dentists, and lay persons have any authority or expertise to determine.

235.   The Plaintiff also incorporates by reference herein all of the allegations made above under the heading dubbed "Relevant Factual Background – bad faith prosecution."

236.   Allegations of bad faith prosecution are sufficient to satisfy the element of irreparable harm in the context of injunctive relief.

237.   Under federal constitutional jurisprudence the Plaintiff is a constitutional right to be free of "bad faith prosecution."

238.   While prosecutors enjoy absolute immunity for acts taken to initiate prosecution, bad faith prosecution, however, has been held repeatedly to cause sufficient irreparable harm to support federal injunction of a state prosecution.

239.   Bad faith prosecution is also the exception to the *Younger* abstention doctrine.

240.   Under federal law bad faith prosecution has been held sufficient to support a damage judgment against state law enforcement officials under 42 U.S.C. §1983, despite the immunity of the federal prosecutor and/or the officials performing the prosecutorial and quasi-judicial functions.

241.   Courts do not immunize any state officials against federal injunctions regarding bad faith prosecutions. State officials cannot hide behind any type of immunity when bad faith prosecution is sought to be enjoined.

242.   Federal courts recognize two types of bad faith prosecutions: (1) a prosecution brought to deter the exercise of constitutionally protected rights and (2) a prosecution brought to harass the Plaintiff.

243.   The facts of this case as stated above indicate that the bad faith prosecution in this case meets the two requirements; (1) the prosecution is brought for the purposes of violating Plaintiff's Fifth and Fourteenth Amendments to practice Naturopathic Medicine and holistic/biological dentistry which blends dentistry with Naturopathic Medicine principles; (2) the prosecution is brought to harass the plaintiff for all of the reasons articulated above.

244.   A showing of bad faith or harassment is equivalent to a showing of irreparable injury, and irreparable injury independent of the bad faith prosecution need not be established.

245.   If the state official prosecutes with knowledge that there is no lawful basis for the prosecution, then the prosecution is in bad faith. In this case the Plaintiff has shown how the Defendants are seeing to prosecute the Plaintiff in bad faith based upon bad faith allegations regarding her care of Patient A and further regarding the allegations of lack of qualification to treat orthodontic conditions.

246.  In the present case, the state officials are seeking to prosecute the Plaintiff in bad faith as more particularly alleged above in this Verified Complaint.

247.  This prosecution is sought to be maintained for the purposes of harassing the Plaintiff for her practice of biological/holistic dentistry.

**(ii)    Paradigms of bad faith prosecution apply
to license disciplinary proceedings**.

248.  While initially the bad faith exception addressed criminal prosecutions, the federal courts extended that principle along with the *abstention* principles to apply to both criminal and administrative prosecutions.

249.  While Virginia Board of Dentistry prosecutions are deemed civil in nature under for the purposes of the application of evidentiary rules, due process protections of the Federal and Virginia constitutions apply to agency proceedings.

250.  Due process is not limited to notice and opportunity to be heard in the context of bad faith prosecutions. The due process clause of the Fourteenth Amendment extends to protect the Plaintiff against bad faith prosecutions. Federal jurisprudence dictates that the Plaintiff has a constitutionally protected due process right to be free from bad faith and harassment prosecutions.

251.  The right to be free from bad faith prosecutions has been held to apply to professional license disciplinary prosecutions.

252.  The administrative process in license disciplinary proceedings has been held to be inadequate as a matter of law to address bad faith prosecutions.

76

253.    Although Virginia disciplinary proceedings are capable of deciding constitutional challenges to specific procedures, recourse in those proceedings is not a sufficient avenue to remedy the constitutional injury done by bad faith proceedings themselves. Federal jurisprudence states that the license disciplinary process is not a sufficient avenue to remedy the constitutional injury done by bad faith proceedings themselves. The right under federal jurisprudence law is to be free of bad faith charges and proceedings, not to endure them until their speciousness is eventually recognized.

254.    Federal courts held that the right under the law is to be free of bad faith charges and proceedings, not to endure them until their speciousness is eventually recognized. Therefore, injunctive relief based upon bad faith prosecution is not foreclosed as a remedy afforded to the Plaintiff under the law.

255.    Where Plaintiff states that the Virginia Board of Dentistry's prosecution is taken "in bad faith and for an improper motive," as a matter of law such allegations are sufficient to state a claim for injunctive relief.

256.    In this case the Plaintiff has stated that the Defendants are about to prosecute her in bad faith and that they staged a bad faith prosecution for all of the detailed reasons articulated above in this Verified Complaint.

257.    In addition, stating and alleging a claim of bad faith prosecution is sufficient to withstand a motion to dismiss the claim for injunctive relief under 42

U.S.C. § 1983 for violation of civil right because there is a constitutional right to be free from bad faith prosecution.

258.   The Plaintiff is seeking a temporary and a permanent injunction under Fed. Rule Civ. Proc. 65 and 42 U.S.C. § 1983 of the bad faith prosecution.

259.   In short, the Plaintiff contends that the underlying pending disciplinary prosecution is a bad faith harassment prosecution which is based upon fabricated and knowingly false allegations which are contradicted by the actual dental records, are in contravention of the Board's own regulations and in violation of the plain language of VA 54.1-2700 which defines the practice of dentistry.

260.   In support of the application for injunctive relief pursuant to, Plaintiff will be submitting a Motion for provisional relief in the form of a Motion for Preliminary Injunction and an accompanying Memorandum of Law.

**(iii)    The elements of a preliminary injunctions have been met**.

326. To be successful on a preliminary injunction motion, the Plintiff must show; (1) that she suffered and is about to suffer irreparable harm; (2) that the Plaintiff is likely to succeed on the merits of the underlyg claims; (3) that the balance of equities militate in favor of the preliminary injunction; and (4) that the public interest is served by the issuance of an injunction.

**(a)** **Violation of constitutional rights amounts to irreparable harm**.

261.   In addition to the fact that a bad faith prosecution amounts to immediate irreparable harm which triggers the need for an injunction, a violation of constitutional rights has been shown in the Fourth Circuit to cause irreparable harm.

262.   In this case, as discussed above, Defendants' attempt at regulating Naturopathic Medicine and further Defendants staging of this prosecution based upon the report of Dr. Bin Alam which deals with issues of medicine and neurology amounts to an unreasonable interference with Plaintiff's Fifth Am,ednment and Fourteenth Amedment constitutionally protected rights to practice her profession without unreasonable government in interference.

263.   In short, the Plaintiff satisfied the irreparable harm element by showing violation of constitutional rights.

264.   In order for an injunction to issue the violation has to be prospective and not retroactive.

265.   In this case, while the summary suspension (<u>EX C</u>) took place in the past, the same is continuous in the present and future unless removed or enjoined pursuant to this Verified Complaint and the accompanying motion for a preliminary injumnction.

266.   In addition the actual hearing on the instant prosecution is now scheduled to take place in March 2024, which is prospective.

**(b)    Likelihood of success on the merits**.

267.    The likelihood of success factor, "is a threshold inquiry and is the most important factor" in any motion for a preliminary injunction. That holds especially true for cases where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation.

268.    If a plaintiff bringing such a claim shows she is likely to prevail on the merits, that showing will almost always demonstrate she is suffering irreparable harm as well. The deprivation of constitutional rights 'unquestionably constitutes irreparable injury. A finding of irreparable harm "follows inexorably" from a "conclusion that the government's current policies are likely unconstitutional." Accordingly, when an alleged deprivation of a constitutional right is involved, most federal courts hold that no further showing of irreparable injury is necessary and the likelihood of success element is satisfied.

269.    In this case, Dr. Salartash has shown that her constitutional rights protected by the Fifth and Fourteenth Amendments of the United States Constitution have been violated and continue to be violated by the Defendants for all of the reasons articulated hereinabove.

270.    Accordingly, the element of likelihood of success on the merits has been satisfied.

### (c)    The balance of equities and the public interest elements have been satisfied.

271.    A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor. Because "public interest concerns are implicated when a constitutional right has been violated, ... all citizens have a stake in upholding the Constitution, meaning "it is always in the public interest to prevent the violation of a party's constitutional rights.""

272.    The 4th Circuit of the United States Court of Appeals has consistently recognized the significant public interest in upholding constitutional principles and has repeatedly held that upholding constitutional rights is in the public interest.

273.    The public interest element has therefore been satisfied as well.

274.    Finally, the government also "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." The government "cannot suffer harm from an injunction that merely ends an unlawful practice" implicating "constitutional concerns."

275.    Accordingly, federal courts have held that plaintiffs who are able to "establish a likelihood that [a] policy violates the U.S. Constitution ... have also established that both the public interest and the balance of the equities favor a preliminary injunction."

276.    For all of the above referenced reasons Dr. Salartash has shown that all of the elements necessary for the grant of a preliminary injunction have been met.

277.   For all of the above referenced reasons Plaintiff's application for a preliminary injunction pursuant to Fed. R. Civ. Proc 65 in the form and substance set forth in this Verified Complaint should be granted in its entirety.

### SECOND CAUSE OF ACTION FOR RELIEF INJUNCTION PURSUANT TO 42 U.S.C. § 1983 AGAINST THE INDIVIDUAL DEFENDANTS

278.   Plaintiff repeats realleges and reiterates each and every allegation set forth above with the same force and effect as if the same are set forth at length herein.

279.   Congress enacted 42 U.S.C. § 1983 to inter alia enable the federal courts to enjoin prospective violation of an individual's constitutional rights.

280.   Allegations of bad faith prosecution are sufficient to satisfy allegations for relief under 42 U.S.C. § 1983 because the Plaintiff has a constitutional right to be free from bad faith prosecutions.

281.   Bad faith prosecutions brought for the purposes of harassing and intimidating Plaintiff for practicing biological dentistry, and using the particular dental procedure which were already scrutinized by the Virginia Board of Dentistry and found to be compliant with the Dental Practice Act, violate Plaintiff's constitutional right to be free of such frivolous official conduct and therefore violates due process.

282.   Plaintiff's constitutional due process rights are about to and continue to be violated by Defendants' present and continued conduct under the form of a bad

faith prosecution taken against him for no apparent purpose other than to harass Plaintiff as set forth above.

283. Defendants do not have qualified immunity for the purposes of injunctive relief under 42 U.S.C. § 1983 because the illegal bad faith prosecution threatened to be performed by Defendants in this action are not quasi-judicial acts. Neither absolute nor qualified immunity applies to Section 1983 actions where plaintiffs seek equitable relief.

284. To state a cause of action for injunctive relief under 42 U.S.C. § 1983 Plaintiff has to allege that Defendants, under color of state law, are about to deprive the Plaintiff of a right secured by the Constitution and laws of the United States of America.

285. In the present case, Plaintiff contends that Defendants are acting under the color of Virginia's disciplinary statute VS Code § 54.1-2760 to maintain a bad faith prosecution as articulated above in this Verified Complaint. The Plaintiff has a constitutional right to be free from bad faith prosecutions.

286. For all of the foregoing reasons, Plaintiff requests that his prayer for injunctive relief pursuant to 42 U.S.C. § 1983 be granted in its entirety, enjoining the individual Defendants, their agents, servants and assigns from depriving Plaintiff of his due process rights protected by the Fourteenth Amendment of the US constitution to be free from frivolous and harassing state government conduct such

as the present bad faith prosecution. The Plaintiff is further seeking a permanent injunction pursuant to 42 U.S.C. § 1983 enjoining the Defendants from unreasonably interfering with her constitutionally protected right to engage in the practice of her profession, and of Naturopathic Medicine without unreasonable interference from the Defendants.

## THIRD CAUSE OF ACTION FOR RELIEF
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201
## AND FED RULE CIV PROC. 57.

287.    Plaintiff repeats, realleges, and reiterates each and every allegation set forth above with the same force and effect as if the same were set forth at length herein.

288.    Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. Sec 2201 et.seq. Fed. Rule Civ. Proc 57 and declaring the acts and actions of Defendants as set forth above in this Verified Complaint as illegal, unconstitutional, and in excess of the powers and subject matter jurisdiction conferred upon Defendants by the legislature under the applicable Virginia statutes.

289.    Plaintiff seeks a declaratory judgment declaring the acts and actions of the Defendants as a articulated above in this Verified Complaint as a bad faith prosecution.

290.    In awarding the remedy of declaratory judgment the trial court applies a three-part test. First, there must be an actual, justiciable controversy, not the mere

possibility of a future controversy. Second, the declaratory judgment must fully and finally resolve the uncertainty and controversy as to all parties to the dispute. Third, the declaratory action must be independent of and separable from the underlying action.

291.    A justiciable controversy is a controversy which is ripe for adjudication and it is based upon facts and circumstances which exist at the time of the application for a declaratory judgment and is not contingent upon future events.

292.    In the present case a justiciable controversy ripe for adjudication through a declaratory judgment exists for all of the reasons articulated above in this Verified Complaint.

293.    Succinctly stated, Defendants are subjecting or are about to subject Plaintiff to a bad faith prosecution and refuse to discontinue the same all while acting without subject matter jurisdiction or in excess thereof.

294.    The declaratory judgment remedy in the form and substance set forth above would fully and finally resolve the uncertainty and controversy as to all parties to the dispute because Defendants would not be able to continue to act without subject matter jurisdiction or in excess of their subject matter jurisdiction by bringing and continuing to bring the bad faith prosecution against the Plaintiff.

295.    Declaratory judgment is separable from the remainder of the relief sought and can be pursued separate from all of the claims in the Verified Complaint.

296.   For all of the above referenced reasons Plaintiff requests that her prayer for declaratory judgment relief pursuant to 28 U.S.C. Sec 2201 et seq., Fed. Rule Civ. Proc 57 will fully and finally resolve the uncertainty and controversy as to all parties to the dispute.

## CONCLUSION

**WHERFORE**, for all of the above referenced reasons Plaintiff prays the Court enter and Order granting her the relief articulated in this Verified Complaint.

Respectfully submitted,

Attorneys for the plaintiff.

By: _____

Dan J. Alpert, Esq.
The Law Office of Dan J. Alpert
VSB #22116
2120 21st Rd. N
Arlington VA 22201
Phone: 703-243-8690
Fax: 703-539-5418
Email: dja@commlaw.tv

Subject to admission pro hac vice

JACQUES G. SIMON, Esq.
200 Garden City Plaza
Suite # 301
Garden City, NY 11530
      Phone: 516-378-8400
Fax:    516-559-7009
Email: jgs@jacquesimon.com

Dated: January 2, 2025

86

### DECLARARTION OF SHARZHAD SALARTASH D.D.S. PURSUANT TO 28 U.S.C. § 1746 REGARDING COMPLAINT VERIFICATION

SHAHRZHAD SALARTASH declares the following:

1.    I am the Plaintiff in these proceedings and as such I am fully familiar with all the facts and circumstances pertaining to this litigation.

2.    I have read the above Verified Complaint and the attached exhibits know all the facts and allegations therein to be true to the best of my knowledge except for those stated upon information and belief and as to those I believe to be true based upon my review of the documents in the case file.

4.    I declare the forgoing under the penalties of perjury and know if any statement herein are knowingly false, I will be subject to punishment.

Dated: December 30, 2024

SHARHZAD SALARTASH D.D.S.