**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

----------------------------------------------------------X
SHAHRZAD SALARTASH, D.D.S.

                                                Case No. 3:25-cv-00004-RCY

                *Plaintiff*

      -against-

Sultan E. Chaudhry, D.D.S., in his official
capacity as President - Virginia Board
of Dentistry; ET.AL.

                  Defendants.
----------------------------------------------------------X


===================================================================
**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. PROC. 12(b)(1)
AND 12(b)(6)**
===================================================================

# TABLE OF CONTENTS

**CONTENT**                                                                              **PAGE**

INTRODUCTION.............................................................................................. 1

FACTUAL BACKGROUND AND  PROCEDURAL STATEMENT............................. 1

ARGUMENT...................................................................................................... 1

POINT I -DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT
TO FED. R. CIV. PROC. 12(b)(1) SHOULD BE DENIED IN ITS ENTIRETY................. 1

(i)  Standard of review of a motion to dismiss pursuant to Rule 12(b)(1)................ 1

(ii)  A cursory review of defendants' motion to dismiss for lack
of subject matter jurisdiction pursuant to Rule 12(b)(1) reveals
that the motion must be denied as a matter of law........................................... 3

    A.      Defendants' Motion to Dismiss pursuant to rule 12(b)(1)
which is predicated upon the straight application of Eleventh
Amendment immunity regarding the Virginia Dental Board
and its members must be denied as a matter of law.................................... 3

    B.      Defendants' motion to dismiss pursuant to rule 12(b)(1)
which is predicated upon the straight application the *Younger*
abstention doctrine must be denied as a matter of law................................ 5

    C.      Defendants' Motion to Dismiss pursuant to Rule 12(b)(1)
which is predicated upon the remainder of the arguments
contained in Point III(C) at pp. 9 through 14 of the
memorandum should be denied in its entirety as a matter
of law........................................................................................... 9

POINT II - DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
FOR ALLEGED FAILURE TO STATE A CLAIM BASED UPON WHICH
RELIEF CAN BE GRANTED PURSUANT TO RULE 12(b)(6) MUST
BE DENIED AS A MATTER OF LAW.

    (i)      Standard of judicial review of a motion to dismiss
pursuant to Fed. R. Civ. Proc. 12(b)(6)............................................. 10

    (ii)     Defendants' recitations at pp. 10-13 of the memorandum in
Point III(1) do not state any viable grounds for a motion to
dismiss the complaint pursuant to Rule 12(b)(6)...............................12

i

(a)     The contention that the complaint does not address the
¶¶ 7 and 8 of the statement of charges in the
complaint and therefore it should be implied that the
Plaintiff made an "implicit admission that the allegations
may be successfully proven against her" fails as a matter
of law to state any grounds for dismissal under Rule 12(b)(6)..................12

(b)     Defendants' bizarre spin on the statutory interpretation
of Va Code § 54.1-2700 and Sec. 54.1-2900 to
prohibit Plaintiff's assessment of the body condition
of Patient A within the context of the practice of dentistry
fails to state any viable grounds for dismissal under
Rule 12(b)(6)...........................................................................13

(c)     Defendants' contention that only physicians can order sleep
studies and dispense equipment to perform such study fails
as a matter of law to state a claim for dismissal under
Rule 12(b)(6)...........................................................................20

(d)     Defendants' contentions claiming that prosecuting the
Plaintiff for failure to refer Patients B, C and D to an
orthodontist because she neither has the expertise nor
the specialized training to treat them for orthodontic
conditions fails to state a claim for dismissal pursuant
to Rule 12(b)(6).......................................................................23

(e)     The defendants' contention that the use of Dr. Bin Alam's opinions
in this case do not amount to bad faith prosecution do not
and cannot form the basis for defendants' motion to dismiss
pursuant to Rule 12(b)(6)....................................................25

CONCLUSION.....................................................................................................30

## **TABLE OF AUTHORITIES**

**CASES**                                                                                 **PAGE(S)**

*ACA Fin. Guar. Corp. v. City of Buena Vista,*
   917 F.3d 206(4th Cir., 2019) ..........................................................................10, 16

*Allen v. Cooper,*
   895 F.3d 337 (4th Cir. 2018), aff'd, 589 U.S. 248, 140 S. Ct. 994, 206 L. Ed.
   2d 291 (2020)......................................................................................................4

*Alliance to Save the Mattaponi v. Commonwealth,*
   270 Va. 423, 621 S.E.2d 78 (2005)......................................................................17

*Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.,*
   367 F.3d 212 (4th Cir. 2004) .........................................................................11, 13

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)..........................10, 11, 16

*Biggs v. N.C. Dep't of Public Safety,*
   953 F.3d 236 (4th Cir. 2020) ................................................................................4

*Bishop v. State Bar,*
   736 F.2d 292 (5th Cir. 1984) ..................................................................... *passim*

*Bittner v. United States,*
   598 U.S. 85, 143 S. Ct. 713, 215 L. Ed. 2d 1 (2023)............................................20

*Blenheim Cap. Holdings Ltd. v. Lockheed Martin Corp.,*
   53 F.4th 286 (4th Cir. 2022), cert. denied, 144 S. Ct. 2656, 219 L. Ed. 2d 1283
   (June 17, 2024)..................................................................................................2, 5

*Chesapeake & Ohio R.R. v. Hewin,*
   152 Va. 649, 148 S.E. 794 (1929).......................................................................18

*Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC,*
   794 F. Supp. 2d 602 (D. Md. 2011) .....................................................................11

*Cohen v. Kurtzman,*
   45 F. Supp. 2d 423 (D.N.J. 1999) .........................................................................2

*Dunne v. Commonwealth,*
   66 Va. App. 24 (Va. App. 2016)..........................................................................18

*Eller v. Prince George's Cnty. Pub. Schs.,*
   580 F. Supp. 3d 154 (D. Md. 2022) ......................................................................4

*Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*,
166 F.3d 642 (4th Cir. 1999) .................................................................2

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239, 132 S. Ct. 2307, 183 L. Ed. 2d 234 (2012).......................20

*Feminist Majority Found. v. Hurley*,
911 F.3d 674(4th Cir., 2019) ...............................................................11

*Ferdinand-Davenport v. Children's Guild*,
742 F. Supp. 2d 772 (D. Md. 2010).........................................................2

*Flowers v. Seki*,
45 F. Supp. 2d 794 (D. Hawaii, 1998)..................................................22

*Goad v. Va. Bd. of Med.*,
40 Va. App. 621, 580 S.E.2d 494 (Va App 2003) .............................26, 27

*Grayned, v. City of Rockford*,
408 U.S. 104 (1972)............................................................................20

*Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Env't*,
317 F.3d 357 (4th Cir. 2002) ...............................................................20

*Hayth v. Veterans Care Ctr.*,
2024 U.S. Dist. LEXIS 164449 (W.D.Va 2024) ......................................3

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
926 F.2d 1406 (3d Cir. 1991)............................................................2, 9

*King v. Youngkin*,
122 F.4th 539 (4th Cir 2024) ................................................................3

*Lewellen v. Raff*,
843 F.2d 1103 (8th Cir. 1988) ...............................................................7

*Lewis v. D.C. Com. on Licensure to Practice Healing Art*,
385 A.2d 1148 (D.C. 1978) ..................................................................24

*May v. R.A. Yancey Lumber Corp.*,
297 Va. 1 (2019) ................................................................................18

*Moret v. Garrett*,
2017 U.S. Dist. LEXIS 221832, 2017 WL 11606730 (D. Ore. 2017)...................22

*Netflix, Inc. v. Babin*,
88 F.4th 1080 (5th Cir. 2023) ................................................................7

*Nobby Lobby, Inc. v. City of Dallas*,
  970 F.2d 82 (5th Cir. 1992) ...................................................................22, 28

*Phillips v. LCI Int'l Inc.*,
  190 F.3d 609 (4th Cir. 1999) ................................................................11, 13

*Privitera v. Cal. Bd. of Med. Quality Assurance*,
  926 F.2d 890 (9th Cir. 1991) .......................................................................8

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991), cert. denied, 503 U.S. 984, 112 S. Ct. 1667, 118
  L. Ed. 2d 388 (1992) ....................................................................................8

*Robinson v. Dalton*,
  107 F.3d 1018 (3d Cir. 1997)....................................................................2, 9

*Shaw v. Garrison*,
  467 F.2d 113 (5th Cir.1972) .....................................................................6, 7

*Sherman v. Comm'n on Licensure to Practice Healing Arts*,
  407 A.2d 595 (D.C. 1979) ..........................................................................24

*Singer v. Reali*,
  883 F.3d 425 (4th Cir. 2018) ...................................................................11, 12

*Spainhour v. B. Aubrey Huffman and Assocs., Ltd.*,
  237 Va. 340, 377 S.E.2d 615 (1989).......................................................25, 27

*Spencer v. Casavilla*,
  903 F.2d 171 (2d Cir. 1990)..........................................................................2

*Taylor v. Commonwealth*,
  298 Va. 336 ...........................................................................................18, 21

*Va. Bd. of Med. v. Zackrison*,
  67 Va. App. 461, 796 S.E.2d 866 (Va App. 2017) ..................................26, 27

*Va. Dep't of Health v. NRV Real Estate, LLC*,
  278 Va. 181 (Va., 2009)..............................................................................17

*Walker v. S.W.I.F.T. SCRL*,
  517 F. Supp. 2d 801 (E.D. Va. 2007) .........................................................11

*Wilson v. Thompson*,
  593 F.2d 1375 (5th Cir. 1979) ..............................................................6, 7, 28

*Ex parte Young*,
  209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)......................................4

*Zeigler v. Eastman Chemical Co.*,
    54 F.4th 187 (4th Cir. 2022) ........................................................................2, 7

**Statutes**

28 USC Sec. 1331 ........................................................................................5

Code § 18.2-461(i) ....................................................................................19

VA Code 54.1-2900 ............................................................................ *passim*

VA Code Sec. 8.01-581.20 ................................................................26, 27, 28

VA Code Sec. 54-2900 ..........................................................................20, 28

VA Code § 54.1-100 ...................................................................................29

Va Code Sec. 54.1-2700 ..................................................................... *passim*


**Other Authorities**

18 VAC 60-21-50 .......................................................................13, 15, 19, 20

18 VAC 60-21-310 .....................................................................................23

18 VAC 60-21-370 .....................................................................................23

18 VAC 60-21-380 .....................................................................................23

18 VAC 60-21-430 .....................................................................................23

Eleventh Amendment ...............................................................................3, 5

Fourteenth Amendment ...............................................................................5

Fed. R. Civ. Proc. 12(b) ..................................................................... *passim*

## INTRODUCTION

This memorandum of law is submitted in opposition to Defendants' Motion to Dismiss the complaint filed by plaintiff and Memorandum thereto for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(1) and for failure to state a claim based upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6).

## FACTUAL BACKGROUND AND PROCEDURAL STATEMENT

All of the facts and procedural background regarding this action are set forth in the complaint (Doc. 1) and in Plaintiff's Declaration in support of Motion for a Preliminary Injunction (Doc 22-1) and Exhibits annexed thereto (Docs. 22-2 through 22-19). The Court is respectfully directed thereto for a full and true accounting thereof.

## ARGUMENT

### POINT I
### DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. PROC. 12(b)(1) SHOULD BE DENIED IN ITS ENTIRETY.

### (i)  Standard of review of a motion to dismiss pursuant to Rule 12(b)(1).

In deciding a motion made pursuant to Federal Rule of Civil Procedure 12(b)(1), the court must ascertain whether "plaintiff's allegations standing alone and taken as true plead jurisdiction and a meritorious cause of action." *Allianz Insurance Co. of Canada v. Cho Yang Shipping Co.*, Ltd., 131 F.Supp.2d 787, 789 (E.D. Va. 2000) (quoting *Dickey v. Greene*, 729 F.2d 957, 958 (4th Cir. 1984)). The burden of establishing subject-matter jurisdiction rests upon the party which seeks to invoke the court's authority. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991), cert. denied, 503 U.S. 984, 112 S. Ct. 1667, 118 L. Ed. 2d 388 (1992).

"When a defendant files a Rule 12(b)(1) motion challenging subject-matter jurisdiction and relying simply on the allegations of the complaint, the court must take the jurisdictional facts alleged

1

as true—as in the case of a motion filed under Rule 12(b)(6) -- and determine, as a matter of law, whether the court has jurisdiction." *Blenheim Cap. Holdings Ltd. v. Lockheed Martin Corp.,* 53 F.4th 286, 292 (4th Cir. 2022), *cert. denied*, 144 S. Ct. 2656 (June 17, 2024).

"In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id* and *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

"A Rule 12(b)(1) motion to dismiss should be granted **only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law**.'" *Zeigler v. Eastman Chemical Co.*, 54 F.4th 187, 194 (4th Cir. 2022) (quoting *Evans v. B.F. Perkins Co.,* a Div. of Standex Int'l Corp., 166 F.3d 642, 647 (4th Cir. 1999); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (emphasis supplied).

A motion challenging a federal court's subject-matter jurisdiction pursuant to Rule 12(b) differs from a challenge made pursuant to Rule 12(b)(6) in that it does not afford a plaintiff the benefit of all of the same procedural safeguards. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997); *Cohen v. Kurtzman*, 45 F.Supp.2d 423, 428 (D.N.J. 1999).

Instead, Rule 12(b)(1) attacks the right of a plaintiff to even be heard in federal court. *Id.* That is, a court cannot dismiss a claim under 12(b)(6) without first assuming subject-matter jurisdiction; thus, a claim can be dismissed for lack of subject-matter jurisdiction or failure to state a claim, but not both. See *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (holding court must assume jurisdiction over a case before deciding legal issues on the merits); see also *Spencer v. Casavilla*, 903 F.2d 171, 173 (2d Cir. 1990) (holding "even if court believes that it would dismiss the complaint in response to a motion under [12(b)(6)], that is not reason to dismiss for lack of jurisdiction"). Accordingly, the motion to dismiss for lack of subject matter jurisdiction must be considered first.

2

Accordingly, the District Court looks at the motion to dismiss for lack of subject matter jurisdiction first. Accordingly, the first question to be looked at is the question of subject-matter jurisdiction. *Hayth v. Veterans Care Ctr.*, 2024 U.S. Dist. LEXIS 164449, *5 (W.D. Va 2024).

### (ii)    A cursory review of defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) reveals <u>that the motion must be denied as a matter of law</u>.

A point-by-point review of Plaintiff's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on all of the issues raised at pp. 5 though 14 in points "A" through "C" and the respective sub arguments made therein, which encompass this motion reveals that the motion should be denied as a matter of law.

### A.    Defendants' Motion to Dismiss pursuant to rule 12(b)(1) which is predicated upon the straight application of Eleventh Amendment immunity regarding the Virginia Dental Board <u>and its members must be denied as a matter of law</u>.

On its face, defendants' argument at point III(A) of the Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) ("Defendants' Memorandum") fails to state any viable or legal grounds for dismissal pursuant the Fed. R. Civ. proc. 12(b)(1).

Specifically, in this point the defendants argue that because the Virginia Board of Dentistry is an agency of the state, a straight application of the Eleventh Amendment immunity paradigms applies to bar subject matter jurisdiction. <u>See</u> Defendants' Memorandum at pp. 5-7 Point III(A).

This argument can be quickly disposed of by simply reading the caption of the case. The Virginia Board of Dentistry is not now and never was a party defendant to tis action. Instead, its members in their official capacity are.

The Eleventh Amendment and the broader principles of federalism it reflects generally prevent private parties from suing a State without its consent. *King v. Youngkin*, 122 F.4th 539, 543 (4th Cir 2024) <u>citing</u> *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In addition, "[s]uits against state officials in their official capacity" are "treated as suits against the State" and are barred by sovereign immunity **to the**

3

**extent they seek monetary relief**. *Id.* <u>citing</u> *Hans v. Louisiana*, 134 U.S. 1, 10, 10 S. Ct. 504, 33 L. Ed. 842 (1890).

"But there is also a well-settled corollary associated with *Ex parte Young*—that allows suits for declaratory or injunctive relief against state officers in their official capacities." *Youngkin*, 122 F.4th 539, 543 <u>citing</u> *Gibbons v. Gibbs,* 99 F.4th 211, 214 (4th Cir. 2024).

Under *Ex parte Young*, 209 U.S. 123 (1908), "suits that would otherwise be barred by a State's sovereign immunity may proceed when a plaintiff seeks forward-looking relief to halt an ongoing violation of federal law." *Fishbourne v. Murdaugh*, 2025 U.S. Dist. LEXIS 25394, \*8-9 (D.SC 2025) <u>citing</u> *Youngkin*, 122 F.4th 539, 542, *supra*.

"[S]uits for 'prospective injunctive relief against state officials acting in violation of federal law' are permitted" pursuant to the *Ex parte Young* exception. *Eller v. Prince George's Cnty. Pub. Schs.*, 580 F. Supp. 3d 154, 168 (D. Md. 2022) (<u>citing</u> *Ex parte Young*, 209 U.S. 123 (1908)). "Under this limited exception, a federal court may issue prospective, injunctive relief against a state official to prevent ongoing violations of federal law, such as when the state officer is enforcing, or threatening to enforce, an allegedly unconstitutional state law." *Id.*

This exception, is based on the notion that a state official who acts in violation of the Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex parte Young*, 209 U.S. at 160. This exception applies only to state officials, not to the state or its agencies. See *Biggs v. N.C. Dep't of Public Safety,* 953 F.3d 236, 242 (4th Cir. 2020).

"To invoke the exception, the plaintiff must identify and seek prospective equitable relief from an ongoing violation of federal law." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018), aff'd, 589 U.S. 248, 140 S. Ct. 994, 206 L. Ed. 2d 291 (2020) (emphasis in original).

In the present case the complaint specifically pleads ongoing and continuous and prospective bad faith prosecution as both the exception to the *Younger* abstention and the great prospective injury based upon which injunctive and declaratory relief is sought.

A cursory review of the face of the complaint itself reveals that the Plaintiff is seeking injunctive and declaratory relief against individual state officials for prospective violation of constitutional rights in the form of a bad faith prosecution.

In short, defendants motion based upon the claim of Eleventh Amendment immunity which applies to the dental Board itself, which is not a party to this action must be denied as a matter of law.

B.    **Defendants' motion to dismiss pursuant to rule 12(b)(1) which is predicated upon the straight application the *Younger* <u>abstention doctrine must be denied as a matter of law</u>**.

In Point III(B) at pp. 7 through 9 inclusive of Defendants' Memorandum, the defendants rely on a straight application of the *Younger* abstention doctrine to make their bid for dismissal for lack of subject matter jurisdiction pursuant to Fed R. Civ. Proc. 12(b)(1) while disregarding the allegations of the complaint in their entirety. That is not the standard of judicial review of a motion to dismiss for lack of subject matter jurisdiction.

When a defendant files a Rule 12(b)(1) motion challenging subject-matter jurisdiction and relying simply on the allegations of the complaint, the court must take the jurisdictional facts alleged as true—as in the case of a motion filed under Rule 12(b)(6)—and determine, as a matter of law, whether the court has jurisdiction." *Blenheim Lockheed Martin Corp.,* 53 F.4th 286, 292, supra.

The nature and application of the *Younger* abstention doctrine and the bad faith prosecution exception to the same are clearly recited in the complaint at ¶¶20-25; 225-260. The basis of the subject matter jurisdiction is recited in the federal complaint as 28 USC Sec. 1331 - federal question based upon violation of Plaintiff's fourteenth Amendment due process right to be free from bad faith prosecution.

For starters, as stated in Plaintiff's memorandum of law in support of the motion for a preliminary injunction, bad faith prosecution which has been thoroughly pleaded in the complaint is the exception to the *Younger* abstention doctrine.

Both plaintiff's Memorandum of Law in support of the motion for a preliminary injunction Doc 22 and the Complaint (Doc 1) state that federal courts may intervene in ongoing state proceedings, either by way of declaratory relief or by injunction, when there has been a "showing of bad faith, harassment [prosecution], or any other unusual circumstance that would call for equitable relief." *Younger* v. Harris 401 U.S. 37, at 54 (1977), <u>citing</u> *Kugler v. Helfant*, 421 U.S. 117, 123 (1975).

Because the Complaint on its face is seeking injunctive and declaratory relief to stop a bad faith prosecution. Complaint at ¶¶227-296 and Plaintiff's Memorandum of Law in support of preliminary injunction (Doc. 22) states the same grounds for relief, the straight application of the *Younger* abstention doctrine to this case by the defendants is unavailing to defeat subject matter jurisdiction.

Moreover, on its face the Complaint alleges at ¶¶251-254 that as a matter of law the state administrative process is an inadequate forum to raise and resolve issues of bad faith prosecution as a matter of law.

The Fifth Circuit Court of Appeals specifically dealt with this issue in *Bishop v. State Bar*, 736 F.2d 292, 294 (5th Cir. 1984):

> Although .... disciplinary proceedings are capable of deciding constitutional challenges to specific procedures, recourse in those proceedings is not a sufficient avenue to remedy the constitutional injury done by bad faith proceedings themselves. **The right under *Shaw [v. Garrison]* 467 F.2d 113, at 122 n. 11 (5th Cir.1972)] is to be free of bad faith charges and proceedings, not to endure them until their speciousness is eventually recognized**. *Id*. <u>Citing</u> [*Shaw v. Garrison,* 467 F.2d 113, at 122 n. 11 (5th Cir.1972) and *Younger,* 401 U.S. at 46, 91 S. Ct. at 751; Wilson [v. Thompson], 593 F.2d at 1375, 1382-83 [(5th Cir. 1979)]. Thus, *Younge*r forbade the district court from interfering with Bishop's disciplinary proceedings on the ground of specific constitutional flaws in the      procedure followed in the state system. **It did not foreclose injunctive relief based on Bishop's allegations of bad faith.** (Emphasis supplied). *Id.*

6

A state has no legitimate interest, however, in a prosecution brought in bad faith or to harass. Nor, for that matter, does a defendant have an adequate opportunity to assert constitutional violations in the state proceeding when the prosecution itself is the constitutional violation. *Netflix, Inc. v. Babin*, 88 F.4th 1080, 1085 (5th Cir. 2023).   Thus, in cases in which a state prosecutor is credibly accused of bad faith and has no reasonable hope of obtaining a valid conviction against the defendant, comity-infused deference gives way, and a federal court may exercise its equitable power to enjoin the prosecution. *Id.*

A prosecution where the state prosecuting machinery is used for the purposes of bringing a bad faith prosecution to harass will be enjoined. *Lewellen v. Raff*, 843 F.2d 1103, 1112 (8th Cir. 1988), citing *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981); see also *Bishop v. State Bar*, 736 F.2d 292, 294 (5th Cir. 1984); *Wilson v. Thompson,* 593 F.2d 1375, 1383 (5th Cir. 1979) and in and onto itself mandates injunctive relief. The courts shall not abstain to exercise sublet matter jurisdiction to scrutinize and issue relief against such prosecution. *Shaw v. Garrison*, 467 F.2d 113, 122 n.11 (5th Cir.1972) (the plaintiff has a right to be free of bad faith charges and proceedings, and not to endure them until their speciousness is eventually recognized); Bishop v. State Bar of Texas, 736 F.2d 292, 294 (5th Cir. Tex. 1984) (license administrative process is not adequate in addressing and enjoining bad faith prosecutions); *Wilson v. Thompson*, 593 F.2d at 1375, 1382-83 and *Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir. 1988) (plaintiff has a constitutional right to be free from bad faith prosecutions).

In short, defendants' Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(1) based upon the straight application of the *Younger* abstention doctrine without regard for the allegations of the complaint should be denied in its entirety.

A Rule 12(b)(1) motion to dismiss should be granted **only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law**. *Zeigler v* 54 F.4th 187, 194, *supra*; *Evans* 166 F.3d 642, 647, *supra*; *Children's Guild*, 742 F. Supp. 2d 772, 777, *supra*.

As it can be seen from the remainder of Defendants' Memorandum at Point III(C) pp. 9 through 14, that is not the case. The defendants go onto a lengthy dissertation of their arguments which dispute the material jurisdictional allegations of the complaint as well as the plain meaning of the statutes cited in the complaint is support of the facts amounting to the bad faith prosecution.

A showing of bad faith or harassment prosecution is equivalent to a showing of irreparable injury under *Younger*, and irreparable injury independent of the bad faith prosecution need not be established in the context of a preliminary injunction." *Privitera v. Cal. Bd. of Med. Quality Assurance*, 926 F.2d 890, 898 n.7 (9th Cir. 1991) citing *Fitzgerald v. Peek*, 636 F.2d 943, 944 (5th Cir.), *cert. denied*, 452 U.S. 916 (1981). In that case, the court affirmed an injunction against a state court prosecution, holding that "[a] bad faith showing of [harassment] will justify an injunction." *Id.* at 945; see also *Bishop v. State Bar of Texas*, 736 F.2d 292, 294 (5th Cir. 1984) (holding that "irreparable injury under *Younger* is established by a sufficient showing of retaliatory or bad faith prosecution, and a federal injunction may issue" against a state bar association's disciplinary proceeding).

"A bad faith showing of [retaliatory prosecution] will justify an injunction *regardless* of whether valid convictions conceivably could be obtained." *Raff*, 843 F.2d 1103, 1112, *supra*, citing *Fitzgerald*, 636 F.2d at 945 (emphasis added); see also *Bishop v. State Bar*, 736 F.2d 292, 294 *supra*.

The state does not have any legitimate interest in pursuing such a bad faith prosecution; "perhaps the most important comity rationale of *Younger* deference -- that of respect for the State's legitimate pursuit of its substantive interests -- is therefore inapplicable." *Raff*, 843 F.2d 1103, 1112, *supra*, citing *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979). A showing of a bad faith prosecution mandates the issuance of an injunction against such prosecution. *Bishop v. State Bar of Tex.*, 736 F.2d 292, 295.In short, the right to obtain injunctive relief in cases involving bad faith prosecution is clear and unequivocal. *Schrier* 427 F.3d 1253, 1258, *supra*.

**C.    Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) which is predicated upon the remainder of the arguments contained in Point III(C) at pp. 9 through 14 of the memorandum should be denied in its entirety as a matter of law.**

Because the remaining part of Defendants' Memorandum is predicated upon the contest of the facts stating the claim for bad faith prosecution, those arguments are directed to the motion to dismiss pursuant to Fed. R. of Civ. Proc. 12(b)(6) and not to the motion to dismiss for lack of subject matter jurisdiction pursuant to Fed, R. Civ Proc. 12(b)(1).

As set forth above, the defendants as a matter of law cannot move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(1) because the Plaintiff failed to state a claim based upon which relief can be granted, which is the basis for a motion to dismiss pursuant to Rule 12(b)(6). A motion challenging a federal court's subject-matter jurisdiction pursuant to Rule 12(b)(1) differs from a challenge made pursuant to Rule 12(b)(6) (or Rule 56) in that it does not afford a plaintiff the benefit of all of the same procedural safeguards. *Robinson* 107 F.3d 1018, 1021, *supra*; *Cohen*, 45 F.Supp.2d 423, 428, *supra.*

Instead, Rule 12(b)(1) attacks the right of a plaintiff to even be heard in federal court. *Id.* That is, a court cannot dismiss a claim under 12(b)(6) without first assuming subject-matter jurisdiction; thus, a claim can be dismissed for lack of subject-matter jurisdiction or failure to state a claim, but not both. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (holding court must assume jurisdiction over a case before deciding legal issues on the merits); see also *Spencer* 903 F.2d 171, 173, *supra* (holding "even if court believes that it would dismiss the complaint in response to a motion under [12(b)(6)], that is not reason to dismiss for lack of jurisdiction").

In Defendants' Memorandum at pp. 9 through 14, the defendants seem to erroneously rely on arguments which belong with their motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) in support of the motion to dismiss for lack of subject matter jurisdiction.

The same arguments cannot be considered by the Court in the context of the motion to dismiss for lack of subject matter jurisdiction. See citations hereinabove.

For all of the foregoing reasons, defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) should be denied in its entirety as a matter of law.

**POINT II**

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT<br>FOR ALLEGED FAILURE TO STATE A CLAIM BASED<br>UPON WHICH RELIEF CAN BE GRANTED PURSUANT<br>TO RULE 12(b)(6) MUST BE DENIED AS A MATTER OF LAW.**

**(i)      Standard of judicial review of a motion to dismiss<br>pursuant to Fed. R. Civ. Proc. 12(b)(6).**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint. To sufficiently plead a claim, the Federal Rules of Civil Procedure require that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." *ACA Fin. Guar. Corp. v. City of Buena Vista,* 917 F.3d 206, 211-212(4th Cir. 2019) citing Fed. R. Civ. P. 8(a).

This pleading standard does not require detailed factual allegations. *Id* citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). However, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard. *Id.*

To meet the Rule 8 standard and survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To contain sufficient factual matter to make a claim plausible, the factual content must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

10

The 4th Circuit Court of Appeals reviews de novo a district court's decision to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Feminist Majority Found. v. Hurley,* 911 F.3d 674, 685(4th Cir., 2019) quoting *Rockville Cars, LLC v. City of Rockville, Md.,* 891 F.3d 141, 145 (4th Cir. 2018). In conducting such a review, the Court of Appeals is obliged to accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiffs. *See Singer v. Reali,* 883 F.3d 425, 437 (4th Cir. 2018). A district court can properly grant a Rule 12(b)(6) dismissal only if the complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly, 550* U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

On ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the document **is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity."** *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.,* 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d. 602, 611 (D. Md. 2011) quoting *Walker v. S.W.I.F.T. SCRL,* 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).

In this case Plaintiff's declaration in support of the motion for a preliminary injunction Doc 22-1 and the exhibits annexed thereto Docs 22-3 through 22-19 are an integral part of the Complaint. Specifically, Plaintiff's declaration in support of the motion for preliminary injunction is mentioned in the Complaint at ¶¶51, 82, 86, 89, 91, 93, 104 and 141. The Plaintiff relies on her declaration which "gives rise to the legal rights asserted". *Walker* 517 F. Supp. 2d 801, 806, *supra.*

11

In a case alleging bad faith prosecution, the standard of pleading to survive a motion to dismiss pursuant to Rule 12(b)(6) is minimal. Where the Plaintiff alleges that the Dental Board's efforts to discipline her had had been taken "in bad faith and for an improper motive", such allegations are sufficient to state a claim for injunctive relief. *Bishop v. State Bar of Texas,* 736 F.2d 292, 295, *supra*.

**(ii)    Defendants' recitations at pp. 10-13 of the memorandum in Point III(1) do not state any viable grounds for a motion to <u>dismiss the complaint pursuant to Rule 12(b)(6)</u>.**

All of defendants' substantive contentions that the complaint fails to state a bad faith prosecution and therefore it should be dismissed pursuant to Rule fail as a matter of law.

**(a)    The contention that the complaint does not address the ¶¶ 7 and 8 of the statement of charges in the complaint and therefore it should be implied that the Plaintiff made an "implicit admission that the allegations may be successfully proven against her" fails as a matter of law <u>to state any grounds for dismissal under Rule 12(b)(6)</u>.**

At p. 10 of Defendants' Memorandum, the defendants contend that because the Complaint does not address the allegations of ¶¶ 7 and 8 of the Statement of Charges, it is an implicit admission that these allegations may be successfully proven against her.

To start with, on a motion to dismiss pursuant to Rule 12(b)(6) inferences are drawn in favor of the non-moving party and not against the plaintiff. *Singer v. Reali,* 883 F.3d 425, 437, *supra*.

Defendants' statement also references the Plaintiff's Memorandum of Law ECF 22 at page 16, while conveniently ignoring Plaintiff's Declaration annexed to the Memorandum of Law Doc 22-1 which does address ¶¶7 and 8 of the Statement of Charges. <u>See</u> Doc 22-1 at ¶¶143-145. In sum the Declaration states that the allegations in ¶ 7 of the statement of allegations are fabricated because of the reasons articulated therein.

Paragraph 8 of the statement of allegations is in fact addressed in Plaintiff's Declaration. Doc 22-1 at ¶¶146-148. That discussion is accompanied by annexed medical records which

demonstrate that the allegations of this ¶ are fabricated because the Plaintiff did document everything which the bad faith prosecution accuses her in ¶ 8 of not having documented.

The Declaration is an integral part of the Complaint for all of the reasons articulated and the statements therein must be considered by this Court within the context of the motion to dismiss pursuant to Rule 12(b)(6). *Am. Chiropractic Ass'n, Inc.* 367 F.3d 212, 234; *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618, *supra.*

> **(b)    Defendants' bizarre spin on the statutory interpretation**
> **of Va Code § 54.1-2700 and Sec. 54.1-2900 to**
> **prohibit Plaintiff's assessment of the body condition**
> **of Patient A within the context of the practice of dentistry**
> **fails to state any viable grounds for dismissal under**
> **Rule 12(b)(6).**

At pp. 10-11 of Defendants' Memorandum, the defendants struggle with the argument that Va Code § 54.1-2700 which defines the scope of practice of dentistry does not say what it means and does not mean what it says when it comes to defining the scope of practice of dentistry in Virginia. Rather, the defendants argue that the Court should read into the statute words and meaning that the legislature did not provide and which were never interpreted by defendants' own regulation to exclude the evaluation of the human body within the context of the practice of dentistry.

In effect the defendants argue that because the Board Members are experts in their field they should be permitted to: (a) commence and maintain a bad faith prosecution and invent standards of practice that do not exist while under their own regulation 18 VAC 60-21-50(A)  they adopted the definition of the practice of dentistry of Va Code § 54.1-2700 as the scope of practice of dentistry; (b) act against every possible statue and Virginia case law that sets forth the expert standard in defining and interpreting the tests alleged to have been performed by Dr. Salartash as articulated in the Statement of Charges of ¶ 1(a); (c)support their contention of practicing outside the scope of the license of dentistry with a neurologist's report and so called expert opinion that neither speaks with respect to the use of the specified tests used by the Plaintiff in the practice of dentistry nor does it speak with

13

respect to the standard of care in dentistry when it comes to the assessment of the human body as it is impacted by dental conditions as defined by Va Code § 54.1-2700; and (d) spin off the plain meaning of the practice of dentistry defined in Va Code § 54.1-2700 to re write the statute in order to befit the bad faith prosecution.

The arguments outlined at pp 10-11 of Defendants' Memorandum regarding their spin on the definition and scope of the practice of dentistry is at the core for the action of bad faith prosecution.

The foregoing arguments made by the defendants are not only contrary to any known basic concepts of statutory interpretation and legal concepts but amount to  a doubling down on the justification of their bad faith prosecution.

The defendants conclude that the Plaintiff cannot assess the impact of dental conditions on the human body by conducting testing on the body to collect information as to what dental conditions she should be checking the patient for (See Plaintiff's Declaration Doc 22-1 at ¶¶ 6-30 and relevant exhibits annexed thereto) because such testing is relegated exclusively to the practice of medicine as specified in Va Code § 54.1-2900.

However, neither Va Code § 54.1-2700 nor Va Code § 54.1-2900 prohibit the testing conducted by the Plaintiff on Patient A as stated in Plaintiff's declaration at ¶ 6 through 30 for the purposes of determining the impact of Patient A's oral conditions on the human body. Nor does the Board's own regulation 18 VAC 60-21-50 support defendants' contention that the tests performed by Dr. Salartash on Patient A within the context of assessment of dental conditions can only be performed by physicians.

Va Code § 54.1-2900 which is cited for defendants' proposition that the tests performed by Dr. Salartash on patient A are exclusively relegated to licensed physicians and osteopathic physicians (Defendants' memorandum at p. 10) states that:

> "Practice of medicine or osteopathic medicine means the prevention, diagnosis, and treatment of human physical or mental ailments, conditions, diseases, pain, or infirmities by any means or method."

14

The statute says nothing about any specific or general testing of the human body being restricted to licensed physicians osteopathic physicians. The defendants know that Plaintiff did not do anything with respect to her testing of patient A that Va Code § 54.1-2900 contemplates. See Complaint Doc 1 at ¶¶202 through 214 and EX H annexed thereto.

By contrast, as discussed below Va Code § 54.1-2700 which defines the practice of dentistry and which was adopted as the scope of practice of dentistry by defendants' own regulation 18 VAC 60-21-50 provides in plain English that the practice of dentistry does :

> "Dentistry" means ***the evaluation, diagnosis, prevention, and treatment***, *through* **surgical, nonsurgical**, or ***related procedures***, of diseases, disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures **and their impact on the human body.**

This statute does specifically speak of the evaluation of the impact which diseases, disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures have on the human body. The complaint specifically states that Dr Salartash did just that.

Most importantly, Dr. Bin Alam, defendants' own and only expert whom the Board is calling to testify regarding the validity of the use of tests in the field of medicine and neurology never stated nor does he state that the testing used by Dr. Salartash in the practice of dentistry can only be performed by physicians and that the use of such testing in the field of dentistry constitutes to the practice of dentistry beyond the scope of dental license. Nor can he testify to anything like that simply because he is not an expert in dentistry. See Complaint at ¶¶156-223; Plaintiff's memorandum of law in support of motion for preliminary and Plaintiff's declaration Doc 22-2 in its entirety.

To be clear, in the context of this bad faith prosecution action for injunctive and declaratory relief, the plaintiff is not calling on the Court to resolve issues of dental expertise and consider anything substantive regarding the tests used by the Plaintiff. The Plaintiff is calling upon this Court the to pass upon the merits of Plaintiff's case of bad faith prosecution strictly within a legal context.

15

Apparently, the defendants forgot that on a motion to dismiss the court does not assess the strength and merits of Plaintiff's case, but it only assesses if there are sufficient allegations to support the cause of action for bad faith prosecution. *ACA Fin. Guar. Corp.* 917 F.3d 206, 211-212 citing Fed. R. Civ. P. 8(a) and *Ashcroft* 556 U.S. 662, 678, *supra*.

The strength of the merits of Plaintiff's case for bad faith prosecution (likelihood of success on the merits) can only be determined solely within the context of the motion for a preliminary injunction. See Plaintiff's Memorandum of Law (Doc 22).

We begin with the plain language of Va Code § 54.1-2700 which is cited hereinabove. As stated in the complaint at ¶¶80-81 and in Plaintiff's declaration at ¶¶ 6-30, within the plain meaning of Va Code § 54.1-2700, in order to know what impact Patient A's dental conditions have on the human body an evaluation of the conditions of human body relevant to dental condition are. Dr. Salartash' approach to the evaluation of the body conditions, as explained by her in response to the complaint that prompted these allegations is authorized by Va Code § 54.1-2700. This is not a matter of the Board's expertise but a matter of law and reading Va Code § 54.1-2700.

Everything described in ¶ 1(a) of the Statement of Allegations amounts to the "***the evaluation, diagnosis, prevention of the impact of*** diseases, disorders, and conditions of the oral cavity and the maxillofacial, adjacent, and associated structures on the human body" within the definition of the scope of the practice of dentistry defined by VA Code § 54.1-2700 (emphasis added). See Plaintiff's declaration Doc 22-1 at ¶¶ 6-30.

As set forth below, Defendants' blunt declaration that the statute does not authorize such evaluation and that deference to their expertise is necessary in this case to determine if the specific tests performed by Dr. Salartash on Patient A are within the scope of the practice of dentistry is a red herring because: (a) the defendants bluntly contend that no evaluation***, diagnosis, prevention of the impact of*** diseases, disorders, and conditions of the oral cavity and the maxillofacial,

16

adjacent, and associated structures on the human body should be conducted by a dentist notwithstanding the plain English provision VA Code § 54.1-2700 to the contrary - see defendants' memorandum Doc. pp. 10-11; (b) the defendants never produced an expert at any time to support their contention that the tests performed by the Plaintiff on Patient A were outside the scope of the practice of dentistry. See Plaintiff's Memorandum of Law in support of preliminary injunction (Doc. 22) at pp. 13-15; (c) in this case Dr. Bin Alam never provided an opinion that the tests provided by the Plaintiff were outside the scope of practice of dentistry or that the same tests were not used in the practice of dentistry or were not the standard of care in the practice of dentistry. Dr. Bin Alam's opinions are strictly relegated to discussing some of the tests used by the Plaintiff within the practice of medicine and neurology. See Complaint at ¶¶156-223.

Although decisions by administrative agencies are given deference when they fall within an area of the agency's specialized competence, issues of statutory interpretation fall outside those areas and are not entitled to deference on judicial review. *Va. Dep't of Health v. NRV Real Estate, LLC*, 278 Va. 181, 185 (VA, 2009) <u>citing</u> *Commonwealth v. Barker*, 275 Va. 529, 536 (2008) "(when an issue involves a pure question of statutory interpretation, that issue does not invoke the agency's specialized competence but is a question of law to be decided by the courts)" also see *Alliance to Save the Mattaponi v. Commonwealth,* 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005).

In short, the defendants' statutory interpretation of Va Code § 54.1-2700 and their spin upon the same and on Va Code § 54.1-2900 for the purposes of giving credence to the bad faith prosecution based upon the bad faith allegations which conclude that the Plaintiff is practicing dentistry beyond the scope of her license because she assesses the human body for conditions related to dental health (Defendants' memorandum at pp. 10-11. and  Plaintiff's Declaration (Doc

22-1) at ¶¶6-30) does not enjoy deference simply because the defendants are experts in their field. *Id.*

An issue of statutory interpretation is a pure question of law which the appellate courts review de novo." *Taylor v. Commonwealth*, 298 Va. 336, 341(2020) citing *Conyers v. Martial Arts World of Richmond, Inc.,* 273 Va. 96, 104, 639 S.E.2d 174 (2007). "When the language of a statute is unambiguous, [courts] are bound by its plain meaning." *Id.* "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" Id. citing *Baker v. Commonwealth,* 284 Va. 572, 576, 733 S.E.2d 642 (2012) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227, 623 S.E.2d 922 (2006)).

To ascertain its plain meaning of a statute the Virginia Supreme Court evaluates the statute in its entirety "to place its terms in context" in order to "interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal." *May v. R.A. Yancey Lumber Corp.,* 297 Va. 1, 14 (2019); see also *Chesapeake & Ohio R.R. v. Hewin*, 152 Va. 649, 653-54, 148 S.E. 794 (1929) ("It is one of the fundamental rules of construction of statutes that the intention of the legislature is to be gathered from a view of the whole and every part of the statute taken and compared together, giving to every word and every part of the statute, if possible, its due effect and meaning." (citation and internal quotation marks omitted)). The Virginia Supreme Court "presume[s] that every part of a statute has some effect, and will not consider any portion meaningless unless absolutely necessary." *May* 297 Va. 1, 14, *supra* citing *Logan v. City Council,* 275 Va. 483, 493, 659 S.E.2d 296 (2008).

Furthermore, Virginia Courts must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." *Dunne v. Commonwealth*, 66 Va. App. 24, 29-30 (Va. App. 2016) citing *Bd. of*

*Supervisors of James City Cty. v. Windmill Meadows*, LLC, 287 Va. 170, 179-80, 752 S.E.2d 837, 842 (2014) (quoting Commonwealth v. Leone, 286 Va. 147, 150, 747 S.E.2d 809, 811 (2013)). Code § 18.2-461(i) is unambiguous, so we apply the plain meaning of the statute's words.

"When bound by the plain meaning of the language used, **appellate courts are not permitted 'to add or subtract from the words used in the statute.'**" *Dunne* 66 Va. App. 24, 29-30, *supra* <u>citing</u> *Nicholson v. Commonwealth*, 56 Va. App. 491, 503, 694 S.E.2d 788, 794 (2010) (quoting *Posey v. Commonwealth*, 123 Va. 551, 553, 96 S.E. 771, 771 (1918)).

Defendants' argument that this court should read into Va Code § 54.1-2700 and Va Code § 54.1-2900 words stating that "only a person licensed to practice medicine or osteopathic medicine has authority to perform any test on the human body in order to asses dental illnesses and conditions as they relate to their impact on the human body" – (Defendants' Memorandum at p. 10), and to further read into Va Code § 54.1-2900 words which prohibit a dentist from assessing a patient's condition in accordance with the plain language of the statute defining the scope of the practice of dentistry Va Code § 54.1-2700, is contrary to elementary principles of statutory interpretation set forth above.

Moreover, even defendants' own regulation 18 VAC 60-21-50(A) adopts the scope of the practice of dentistry as defined in Va Code § 54.1-2700. It does not modify or contradict it, nor does it prohibit the assessment of the condition of the human body as impacted by dental conditions. In short, the defendants  never forewarned the plaintiff nor any other dentist that assessment of the impact of dental conditions of the human body is not permitted in Virginia as codified in Va Sec. 54.1-2700.

The Due Process Clause requires that "a fair warning . . . be given to the world in language that the common world would understand, of what the law intends to do if a certain line is passed."

*Bittner v. United States*, 598 U.S. 85, 102 (2023) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931)). While the Constitution does not require "mathematical certainty from our language," it does prohibit statutory language so unclear about prohibited conduct that it "may trap the innocent by not providing fair warning" or so standardless that it allows "arbitrary and discriminatory enforcement." *Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Env't*, 317 F.3d 357, 366 (4th Cir. 2002) (quoting *Grayned*, 408 U.S. at 108, 110).

In evaluating a vagueness challenge, courts assess whether regulated parties "know what is required of them so they may act accordingly" and whether a statute is sufficiently precise "so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Television Stations, Inc*., 567 U.S. 239, 253, 132 S. Ct. 2307, 183 L. Ed. 2d 234 (2012); *Grayned, v. City of Rockford*, 408 U.S. 104 at 108 (1972).

In this case, not only that defendants' proposed reading of Va Code § 54.1-2700 and Va Code § 54.1-2900 impermissibly and purposely re writes the statutes to befit their bad faith prosecution, but also their proposed interpretation of Va Code § 54.1-2700 violates the fair warning doctrine. It fails to give the Plaintiff notice that the practice of dentistry as specified and defined by Va Code § 54.1-2700 and Board's own regulation 18 VAC 60-21-50 is not acceptable to the defendants and that the defendants only allow physicians to perform tests assessing the human body in the context of assessing dental conditions notwithstanding the plain reading of Va Code § 54.1-2700 to the contrary.

(c)     **Defendants' contention that only physicians can order sleep studies and dispense equipment to perform such study fails as a matter of law to state a claim for dismissal under Rule 12(b)(6)**.

The defendants cite Va Code § 54.1-2900 for the proposition that their prosecution is not brought in bad faith because only physicians are authorized to prescribe sleep studies and dispense

equipment to perform such studies. See p. 11 of Doc 30. They further state that "there is no law that authorizes a physician to delegate this authority to a dentist."

Conversely, the defendants did not cite any law which prohibits the delegation of dispensation of equipment to perform sleep studies by a physician to a dentist and the prescription of sleep studies by a dentist. As it has been shown in plaintiff's declaration Doc 22, the practice of sleep dentistry which includes the prescription of sleep study and the diagnosis of dental and oral cavity conditions which affect sleep is widely accepted and practiced in this Commonwealth with the knowledge and blessing of the defendants.

Again, unlike defendants' unsubstantiated contention, Va Code §54.1-2900 does not prohibit the delegation of dispensation of sleep equipment for the conduct of an at home sleep study by a physician to a dentist, nor does it relegate the prescription of a sleep study by a license physician or osteopathic physician only. Nor does Va Code §54.1-2700 prohibit any such conduct nor does any existing regulation of the defendants prohibit the prescription of a sleep study by a dentist nor does it proscribe the dispensation of equipment by a dentist.

In short nothing that the defendants allege that the Plaintiff is prohibited from doing under the general definition of practice of medicine of Va Code § 54-2900 is in fact so.

The defendants are asking the court to read into Va Code § 54.1-2900 and to interpret the definition statute by writing terms into it to befit defendants' bad faith prosecution. That the Court and the defendants cannot do without avoiding the charge of bad faith prosecution. *Taylor* 298 Va. 336, 341 *supra*, citing *Conyers*, 273 Va. 96, 104, *supra*. "When the language of a statute is unambiguous, [courts] are bound by its plain meaning." *Id.* "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead

to an absurd result.'" Id. citing *Baker* 284 Va. 572, 576, 733 S.E.2d 642 (2012) (quoting *Boynton* 271 Va. 220, 227, *supra*.

The defendants contend at that the Plaintiff failed to state a claim for bad faith prosecution because she prescribed sleep studies for Patients C and D and dispensed sleep devices for the conduct of a sleep study. Memorandum at p. 11.    This contention in and on its face amounts to bad faith. The allegations regarding dispensation of sleep devices to Patients C and D are contained in ¶¶ 6(a) and 6(d) of the statement of allegations and are addressed with specificity in Plaintiff's Declaration at ¶¶ 141 and 142 (Doc 22-1). As it can be seen from the same and from the medical records annexed thereto as EX 15 (Doc 22-16) for the specific dates appearing in the accusations there is no entry anywhere to be seen regarding the dispensation of sleep devices to Patients C and D at the specified dates or for prescription of sleep studies by the Plaintiff. Those allegations are knowingly false and concocting the same for the purposes of prosecuting the Plaintiff amounts to a bad faith prosecution for all of the reasons articluated in plaintiff's memorandum of law in support of motion for preliminary injunction.

The defendants' argument that their prosecution of the Plaintiff based upon the contention that either the prescription of sleep tests or the dispensation of sleep equipment for the completion of the test because Va Code § 54.1-2900 prohibits such conduct and it limits the same to licensed physicians and osteopathic physicians as a matter of law is text book bad faith prosecution for the reasons articulated above. Where the prosecutor knows that the law does not support the prosecution and yet forces the prosecution to take place, the prosecution is in bad faith. *Nobby Lobby, Inc. v. City of Dallas,* 970 F.2d 82, 88 (5th Cir. 1992); *Flowers v. Seki*, 45 F. Supp. 2d 794, 805 (D. Hawaii, 1998); *Moret v. Garrett*, 2017 U.S. Dist. LEXIS 221832, *2, 2017 WL 11606730 (D. Ore. 2017).

     **(d)**     **Defendants' contentions claiming that prosecuting the Plaintiff for failure to refer Patients B, C and D to an orthodontist because she neither has the expertise nor the specialized training to treat them for orthodontic conditions fails to state a claim for dismissal pursuant to Rule 12(b)(6).**

At page 11-12 of Defendants' Memorandum (Doc 30) the defendants contend that their prosecution of the Plaintiff for failure to refer orthodontic patients to orthodontists because she allegedly neither has the expertise nor the specialized training of an orthodontist is not in bad faith and should be allowed to proceed to a hearing where the defendants will determine if Plaintiff's credentials are sufficient to qualify her to practice as an orthodontist.

This is a classic textbook example of both bad faith prosecution and violation of due process for failure to give fair warning as to what the qualifications of an orthodontist should be.

The "failure to refer to an orthodontist" allegations are discussed in the context of the bad faith prosecution paradigms both in plaintiff's declaration at ¶¶96 through 109 - document 22-1 and in Plaintiff's Memorandum of Law (Doc 22) at pp. 20-21. The defendants couch the bad faith allegations as a factual dispute which has to be settled at the administrative hearing through defendants' considering Plaintiff's orthodontics training while compared to the services given to Patients B, C and D. Defendants' Memorandum at pp. 11-12. That is flatly incorrect because there are no factual issues to be resolved.

Succinctly stated, unlike the specialty of dental surgery which was created by the defendants in 18 VAC 60-21-310 through 18 VAC 60-21-430 complete with education and training mandates 18 VAC 60-21-370 and certification registration requirements 18 VAC 60-21-380, there is no such specialty called orthodontics established by the Virginia Board of dentistry.

The Plaintiff has documented to the defendants in her responses during the investigation that she has a whopping 1226 hours of orthodontic training and she treated over 400 patients for orthodontic conditions. See Plaintiff's declaration Doc 22-1at ¶¶75-90.

Because the "specialty of orthodontics" was not formally created by the defendants by regulation, the same is really created by various private dental associations with no regulatory making powers in Virginia which set their own training, certifications and practice requirements. One of them is in fact the International Associations of Orthodontists of which the Plaintiff is a member and which trained the Plaintiff in orthodontics. EX 13 to plaintiff's declaration.

The defendants did not adopt by regulation the training and credentialing requirements of either one private orthodontic association or another nor could it. The adoption of specialty guidelines and requirements of one private orthodontic organization over another by a state healthcare regulatory board amounts to an improper delegation of regulatory power by a state agency to a private organization and raises antitrust and constitutional issues all at the same time. See e.g. *Lewis v. D.C. Com. on Licensure to Practice Healing Art*, 385 A.2d 1148, 1152-53 (D.C. 1978) and *Sherman v. Comm'n on Licensure to Practice Healing Arts*, 407 A.2d 595, 602 (D.C. 1979).

Similar private orthodontic associations which trained Dr. Shroff (Shroff CV EX 12 to Plaintiff's declaration) also exist with their own curriculum and certification requirements.

In short, the bad faith prosecution is evidenced by the nature of the allegations of ¶¶2 through 5 of the statement of allegations - EX B to the complaint Doc 1-2 alleging "failure to refer out to a specialist orthodontist Patients A, B, C, and D for the performance of orthodontic care because the Plaintiff allegedly lacked either the specialty, advanced education training and experience in orthodontics to provide orthodontic assessment and treatment for the Patients A, B, C, and D" as alleged in ¶¶2 through 5 of the statement of allegations."

The defendants contend that this is not bad faith prosecution but rather an issue of a disputed fact that has to be settled in the context of an administrative hearing. However, there is no law or barometer by which this "disputed issue of fact" is to be settled by the defendants' expertise simply because no regulations or guidelines exist to define what the education requirements are and what the defendants deem as qualifications to be an orthodontist in Virginia. In fact the defendants' prosecution of the Plaintiff for failure to refer to an orthodontist without even defining what an orthodontist is and what education requirements are necessary to qualify as an orthodontist in Virginia while suspending Plaintiff's license and subjecting her to prosecution under non existing regulatory paradigms is nothing short than a bad faith prosecution.

The expertise of the Board is not involved where no definition of the specialty of orthodontist or any other educational or expertise qualification to be an orthodontist in Virginia exists. <u>See</u> Plaintiff's Memorandum of Law (Doc 22) at pp. 19-21.

**(e)     The defendants' contention that the use of Dr. Bin Alam's opinions in this case do not amount to bad faith prosecution do not and cannot form the basis for defendants' motion to dismiss pursuant <u>to Rule 12(b)(6)</u>.**

The standard of care regarding the use of all of the tests specified in ¶1(a) of the statement of charges - Complaint EX B Doc 1-2 has to be established through expert testimony. Normally, expert testimony is required to establish the standard of care for a profession and whether or not that standard of care was met is a question of fact. <u>See</u> *Spainhour v. B. Aubrey Huffman and Assocs., Ltd.*, 237 Va. 340, 346, 377 S.E.2d 615, 619 (1989). There are, however, exceptions to this general proposition. If the standard of care has risen to the level of becoming a rule of law, then the standard is "not subject to expert opinions expounding local practices." *Spainhour,* 237 Va. at 346, 377 S.E.2d at 619, *supra.*

Because in the present case no regulation speaks of the standard of care applicable to Dr. Salartash's use of the tests stated in ¶ 1(a) of the Statement of Charges Doc 1-2, the standard of care

25

supporting defendants' bad faith allegation that the tests used by Dr. Salartash are outside the scope of the practice of dentistry must be established by expert testimony. *Id.* Instead of following the law, the defendants did not do any such thing. Instead, they inexplicably hired a physician neurologist who rendered opinions in the context of the standard of care applicable to neurology and medicine on some issues expressed in ¶ 1(a) and other tangential issues which were never prosecuted by the defendants. See Complaint at ¶¶ 153-223.

There are mandatory statutory requirements in Virginia when it comes to the use of an expert in prosecuting the allegations of the use of the tests stated in ¶ 1(a) within the practice of dentistry. In order to avoid this legal challenge to defendants' bad faith prosecution brought with knowledge that the same is not supported by Virginia law, the defendants are mandated by Va Code § 8.01-581.20 which applies to administrative proceedings as well as by Virginia Jurisprudence. See e.g. *Goad v. Va. Bd. of Med.*, 40 Va. App. 621, 635, 580 S.E.2d 494, 501 (Va App 2003) to base their prosecution on expert testimony and standards which are applicable to the branch of the healing arts by which Dr. Salartash's conduct is to be judged and adjudicated, **in this case dentistry**. See *Goad v. Va. Bd. of Med.*, 40 Va. App. 621, 623, 580 S.E.2d 494, 495 (Va App. 2003).

VA Code § 8.01-581.20 provides in relevant part as follows:

A. In any proceeding...**or in any action against a**...**dentist,** where the acts or omissions so complained of are alleged to have occurred in this Commonwealth **the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner <u>in the field of practice or specialty in this Commonwealth</u> and the testimony of an expert witness, otherwise qualified, as to such standard of care, shall be admitted.... A witness shall be qualified to testify as an expert on the standard of care if he demonstrates expert knowledge <u>*of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action*</u> (emphasis added).

The provisions of Va Code § 8.01-581.20 apply to experts used in the context of license administrative proceedings. *Va. Bd. of Med. v. Zackrison*, 67 Va. App. 461, 479, 796 S.E.2d 866, 874 (Va App. 2017).

It is beyond comprehension how, in light of mandatory applicable law paradigms set forth above the defendants can even fathom to credibly argue that their use of Dr. Bin Alam, a neurologist physician to prove that the tests used by Dr. Salartash in the practice of dentistry is beyond the scope of her practice of dentistry is anything else but bad faith prosecution.

Defendants' flat-out statement that they could not hire a dentist to testify that the tests performed by the Plaintiff are beyond the scope of the practice of dentistry is because the same tests are not used in the practice of dentistry is nothing less than an admission of the bad faith prosecution brought in this case. That is because the defendants are mandated to establish **by expert testimony** *Spainhour,* 237 Va. at 346, *supra*, and not by their oven foregone conclusions and conclusory statements that the testing specified in ¶ 1(a) are not used in the practice of dentistry.

To do that, they have to hire a dentist who is an expert in Plaintiff's area of practice which is dentistry and addresses the specific tests and opine that they have no place in the practice of dentistry and that using the same transcends the scope of practice of this profession. VA Code § 8.01-581.20 and *Goad v. Va. Bd. of Med.*, 40 Va. App. 621, 623, *supra*.

They have not done so here. Dr Bin Alam's opinions and the lack of legal support for defendants' use of this so-called expert in dental disciplinary proceedings are discussed in the Complaint (Doc 1) at ¶¶153 through 223, in Plaintiff's Declaration at ¶¶169-174 and in Plaintiff's Memorandum of Law in support of Motion for Preliminary Injunction.

In this case, not only that the defendants purposely selected an expert in neurology and medicine to provide credence to their bad faith prosecution of the Plaintiff under the allegations of ¶1(a) but they purposely fashioned their questions to the said expert within the standard of care of medicine and neurology in order to fabricate the bad faith prosecution and concoct various issues of Dr. Salartash's evaluation of Patient A within the practice of medicine and neurology rather than within the standard of care of the practice of dentistry (Plaintiff's own branch of practiced healing arts). See Dr. Bin Alam's CV and report EX I to the Verified Complaint Doc 1-10 and discussion of each question

and answer posed by Dr. Bin Alam within the context and standard of care of medicine and neurology at ¶¶ 153- 223 of the Verified Complaint Doc 1.

In order to be able to maintain a bona fide prosecution under the allegations of ¶ 1(a) the defendants would have had to hire an expert dentist who is familiar with the practice of dentistry and the specific tests performed by Dr. Salartash. VA Code § 8.01-581.20; *Zackrison*, 67 Va. App. 461, 479 and *Goad* 40 Va. App. 621, 623, *supra*.

Such case evaluation by the defendants prior to their decision to summarily suspend Plaintiff's license and to institute disciplinary proceedings against the Plaintiff is not within the discretion of the defendants or within their application of their expertise as dentists. It is mandated by law. Failure to adhere to the mandates of the law and commencing a prosecution with the knowledge that it cannot be sustained by Virginia law amounts to a text book bad faith prosecution as a matter of law. See *Nobby Lobby, Inc.*, 970 F.2d 82, 88 and *Bove*, 888 F.3d 606, 609 *Raff*, 843 F.2d 1103, 1112, *supra*, citing *Fitzgerald*, 636 F.2d at 945 (emphasis added); See also *Bishop v. State Bar*, 736 F.2d 292, 294 (5th Cir. 1984).

There is no set of facts under which the defendants can prosecute the Plaintiff under the allegations of ¶ 1(a) in good faith for the reasons articulated hereinabove. For all of the foregoing reasons the prosecution based upon the allegations of ¶1(a) is also a prosecution brought for harassment purposes with disregard for the facts while using the state prosecutorial machinery to harass the Plaintiff. *Wilson*, 593 F.2d 1375, 1383, *supra*; *Raff*, 843 F.2d 1103, 1112, *supra*, citing *Fitzgerald*, 636 F.2d at 945 (emphasis added); see also *Bishop v. State Bar*, 736 F.2d 292, 294.

Most importantly, Dr. Bin Alam did not and cannot testify with respect to the use of the tests specified in ¶ 1(a) in the practice of dentistry and how these tests can be only used within the practice of medicine simply because he does not practice dentistry, a requirement mandated by statute in Virginia.  The defendants flatly reject that Plaintiff's use of the tests specified in ¶1(a) are and can be

used in the practice of dentistry and they hired the wrong type of an expert to sustain the bad faith prosecution. VA Code § 8.01-581.20.

In this case, the defendants doubled down in beefing up their bad faith prosecution by denying Plaintiff's motion to exclude Dr. Bin Alam and his report from the hearing in this case maintaining that their bad faith prosecution is properly predicated on a so called expert who admittedly is not practicing within the branch of healing arts of dentistry. See Plaintiff's Counsel's updated Declaration in support of a preliminary injunction.

Finally, the defendants state that even where the Plaintiff used naturopathic medicine methodology in conjunction with the practice of dentistry, they have the authority to prohibit such practices where the same is not regulated. This is similarly a red herring because despite the complaint allegations Dr. Salartash's own declaration (Doc 22) focuses on the application of dentistry standards and her not being judged by dentistry practice standards and not by naturopathic standards.

There is however an issue brought in Dr. Bin Alam's own report regarding Dr. Salartash's use as a modality which is commonplace in the practice of naturopathic medicine. The defendants contend that the plaintiff cannot practice naturopathic medicine because the same is not regulated in Virginia and that they somehow have the authority to bar her from doing the same. See Defendants' Memorandum at pp. 12-13.

That is simply not the case. The Virginia legislature enacted VA Code § 54.1-100, which recognizes that the right to practice a profession is a constitutional right only subject to regulation when "it is clearly found that such abridgment is necessary for the protection or preservation of the health, safety, and welfare of the public and (ii) any such abridgment is no greater than necessary to protect or preserve the public health, safety, and welfare." Because the Virginia legislature never enacted a law which regulates the practice of Naturopathic Medicine, Plaintiff

29

has constitutional right to practice that branch of the healing arts without defendants' interference with the same under the guise of enforcement and regulation of the practice of dentistry.

## **CONCLUSION**

For all of the foregoing reasons, defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. Proc 12(b)(1) and 12(b)(6) should be denied in its entirety.

Dated: February 27, 2025

Respectfully submitted,
Attorneys for the plaintiff:

/s/ Dan J Alpert Esq.
Dan J. Alpert, Esq.
The Law Office of Dan J. Alpert
VSB #22116
2120 21st Rd. N
Arlington VA 22201
Phone: 703-243-8690
Fax: 703-539-5418
Email: dja@commlaw.tv

Attorney admitted pro hac vice

/s/Jacques G. Simon Esq.
JACQUES G. SIMON, Esq.
200 Garden City Plaza
Suite # 301
Garden City, NY 11530
Phone: 516-378-8400
Fax:     516-559-7009
Email: jgs@jacquesimon.com

## CERTIFICATE OF SERVICE

I hereby certify under the penalties of perjury that I caused a copy of the within document to be served today, February 27, 2025 on the undersigned attorneys of record for the defendants by filing the same document with the ecf system of this Court which in turn served the document via email upon the attorneys of record for the defendants set forth below. I emailed an additional electronic copy to the same attorneys at the email designated by them for service:

James E. Rutkowski | Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
JRutkowski@oag.state.va.us

Dated: February 27, 2025.

*/s/ Jacques G. Simon*

31