IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| SHAHRZAD SALARTASH, D.D.S., | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25CV4 (RCY) |
| | ) | |
| SULTAN E. CHAUDHRY, D.D.S., *et al.*, | ) | |
|     Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Shahrzad Salartash, D.D.S., brought this suit seeking declaratory and injunctive relief against Defendants Sultan E. Chaudhry, Sidra Butt, Jamiah Dawson, Margaret F. Lemaster, Emelia H. McLennan, Alf Hendricksen, William C. Bigelow, Surya Dhakar, J. Michael Martinez de Andino, and Jennifer Szakaly for their alleged violations of 42 U.S.C. § 1983, consisting of Defendants' purported bad-faith prosecution of Plaintiff. The matter is before the Court on Plaintiff's Amended Motion for Issuance of a Preliminary Injunction Pursuant to Fed. R. Civ. Proc. 65 ("Amended Motion for Preliminary Injunction"), ECF No. 21. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J); *S.C. Progressive Network Educ. Fund v. Andino*, 493 F. Supp. 460, 466–67 (D.S.C. 2020) (noting Federal Rule of Civil Procedure 65 does not require an evidentiary hearing so long as the opposing party has a fair opportunity to oppose the application); *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 869 (S.D. W.Va. 2014) (same). For the reasons set forth below, the Court finds that the requested relief is not available, as the Court must abstain under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971).

## I. PROCEDURAL HISTORY

Plaintiff filed her Complaint on January 2, 2025, ECF No. 1, and filed her Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 on January 31, 2025. Mot. Prelim. Inj., ECF No. 17. On February 3, 2025, the Court ordered Plaintiff to correct certain deficiencies in her filing and advised Plaintiff that it would not take up her Motion for Preliminary Injunction until Defendants were served, pursuant to Fed. R. Civ. P. 65(a)(1). ECF Nos. 18, 19. Accordingly, Plaintiff filed her Amended Motion for Preliminary Injunction, Memorandum in Support, and proof of service on February 4, 2025. ECF Nos. 21, 22, 24. Plaintiff filed an affidavit on February 7, 2025, in further support of her Amended Motion for Preliminary Injunction and to request an expedited hearing regarding the preliminary injunction. ECF No. 26. Defendants responded to Plaintiff's Amended Motion for Preliminary Injunction on February 21, 2025.[1] Resp., ECF No. 31.[2]

---

[1] Also on February 21, 2025, Defendants filed a Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction, ECF No. 29, accompanied by a Memorandum in Support, ECF No. 30. Although distinct from Defendants' Response in Opposition to the Amended Motion for Preliminary Injunction, ECF No. 31, Defendants raise many overlapping arguments in the two briefs. As such, the Court may, on occasion, cite to the Memorandum in Support of the Motion to Dismiss ("Defs.' Mem. Supp.") in the analysis, below.

[2] On February 27, 2028, Plaintiff filed Plaintiff's Counsel's Declaration in Further Support of Motion for Preliminary Injunction and Request for Expedited Hearing or Decision ("Pl.'s Counsel's Decl."), ECF No. 33. Despite representing that "all necessary filings regarding all outstanding motions are completed and the motions for preliminary injunction and the motion to dismiss are ready for adjudication," Pl.'s Counsel's Decl. ¶ 11, and further that "[P]laintiff will not be submitting a reply" in further support of the Amended Motion for Preliminary Injunction, *id.* ¶ 12, Plaintiff's counsel attempts to introduce new facts for consideration relevant to the pending Motion (specifically with respect to the issue of bad faith) and to advance legal arguments in support of the same. Counsel further requests the specific relief of an expedited hearing or decision in advance of the upcoming Board of Dentistry hearing of March 6 and 7, 2025. *Id.* ¶ 11. The Court declines to consider the facts and arguments contained in this Declaration, for two reasons.

First, it is an improper filing. Although couched as a declaration premised on counsel's personal knowledge, the filing advances legal arguments, *see id.* ¶¶ 15–22, and, given that the Declaration represents that no Reply will be forthcoming, more truly constitutes a "brief[] or other written communication[]" that, per the Local Rules, should not have been filed "without first obtaining leave of court," E.D. Va. Loc. Civ. R. 7(F)(1). Moreover, to the extent the filing seeks specific relief by way of court action, such relief should have been requested by way of a motion. Fed. R. Civ. P. 7(b)(1). Second, the Declaration itself asserts (as stated previously) that "all necessary filings regarding all outstanding motions are completed and the motions for preliminary injunction and the motion to dismiss are ready for adjudication, Pl.'s Counsel's Decl. ¶ 11, and specifically that, "[w]ith respect to the preliminary injunction motion . . . . [Plaintiff] relies on all of the filings [previously] made . . . in Docs. 21, 22 and 22-1 through 22-25," *id.* (cont.)

## II. FACTUAL BACKGROUND

Plaintiff is a licensed dentist and licensed naturopathic physician who practices "biological/holistic dentistry." Compl. ¶¶ 45–51. On December 8, 2022, the Defendants, who make up the Virginia Board of Dentistry, received a complaint from Dr. Cook, who is an allopathic medical doctor. Compl. ¶¶ 132–134; Compl. Ex. G, ECF No. 1-7. Dr. Cook alleged that Plaintiff practiced outside of scope of her dental license by administering nutritional, heavy metal, mineral, and adrenal testing and "diagnosing" Patient A with a "Blocked Autonomic system." *Id.* Based on Dr. Cook's complaint, Defendants began investigating Plaintiff. Compl. Ex. H, ECF No 1-8; *see* Compl ¶¶ 114–116. Defendants' investigation included the collection of expert reports from a Doctor of Osteopathic Medicine, Dr. Umar Naseef Bin Alam, and a "dental expert," Dr. Bhavna Shroff, as well documents that Plaintiff submitted. *See* Compl. ¶ 134; Am. Mot. Prelim. Inj., Ex. 11[hereinafter Dr. Shroff's Expert Op.], ECF No. 22-12; *see, e.g.*, Compl., Ex. D, ECF No. 1-4 (Plaintiff's CV); Compl., Ex. E., ECF No. 1-5 (patient records and peer reviewed articles provided to the board by Plaintiff).

As a result of Defendants' investigation, Plaintiff received an order of summary suspension, which suspended Plaintiff's dental license for violating "certain laws and regulations relating to the practice of dentistry," pursuant to Va. Code Ann. § 54.1-2408.1(A). Compl. 35. Plaintiff's suspension was predicated on Defendants' finding that Plaintiff was a "substantial danger to public health and safety." Compl. 35. Defendants included a statement of allegation with the order of summary suspension, wherein Defendants alleged Plaintiff violated a number of statutes and regulations governing the practice of dentistry. *Id.*; Compl., Ex. B at 5–10 [hereinafter

---

¶ 12. Thus, by Plaintiff's own admission, the Court should cabin its review of filings related to the Amended Motion for Preliminary Injunction to the briefs previously and properly filed, and not to include the contents of the Declaration.

Allegations, ECF No. 1-2.  Specifically, Defendants alleged that Plaintiff violated Va. Code Ann. § 54.1-2706(4), (5), (9), (11), and (12) and a number of regulations governing the practice of dentistry.  Va Code Ann. § 54.1-2706(4) ("Any unprofessional conduct likely to defraud or to deceive the public or patients."); *id.* § 54.1-2706(5) ("Intentional or negligent conduct in the practice of dentistry or dental hygiene which causes or is likely to cause injury to a patient or patients."); *id.* § 54.1-2706(9) ("Violating, assisting, or inducing others to violate any provision of this chapter or any Board regulation."); *id.* § 54.1-2706(11) ("Practicing or causing others to practice in a manner as to be a danger to the health and welfare of his patients or to the public."); *id.* § 54.1-2706(12) ("Practicing outside the scope of the dentist's or dental hygienist's education, training, and experience.").

Defendants allege that Plaintiff acted improperly with respect to four patients:  Patients A, B, C, and D.  Allegations 5–10; *see* Compl. ¶¶ 86–109.  Specifically, Plaintiff ordered certain tests, performed assessments, improperly ordered sleep studies, improperly delivered sleep appliances, and performed a laser surgical procedure, all of which Defendants allege are outside the scope of Plaintiff's dental license.  Allegations 5–10.  Defendants further allege that Plaintiff failed to appropriately refer patients, used improper treatment modalities, performed extractions under minimum sedation, failed to properly document a patient's vitals, and failed to document a diagnosis necessitating the treatment that Plaintiff provided.  *Id.*

As a result of the investigation and subsequent summary suspension, Defendants scheduled a formal administrative hearing for January 9–10, 2025, to "receive and act upon evidence in this matter."  Compl. Ex. C, ECF No. 1-3; Compl. Ex. B at 2–4, ECF No. 1-2.  Plaintiff sought and was granted a continuance until March 6–7, 2025, for her administrative hearing.  Mem. Supp. Ex.

4

B, ECF No. 22-2.  On January 17, 2025, Plaintiff sought a second continuance but was denied. Mem. Supp. Ex. E, ECF No. 22-25.

Plaintiff contends both in her Complaint and Amended Motion for Preliminary Injunction that Defendants instituted their investigation and the resulting suspension in bad faith and in an attempt to stifle her ability to practice as a biology/holistic dentist.  Compl. ¶ 39.  In support of her assertion, Plaintiff discusses her treatment of Patients A, B, C, and D, *see generally* Pl.'s Aff. 3–42, ECF No. 22-1, and addresses the futility of this prosecution based on the Defendants evidence, via expert testimony, and the plain language of the statutes and regulations governing the practice of dentistry in the Commonwealth of Virginia.  *See generally* Compl.

### III. STANDARD OF REVIEW

A plaintiff seeking a preliminary injunction "must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest*.*" *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 102–03 (4th Cir. 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 643 n.6 (D. Md. 2015) (*Younger* abstention may be raised *sua sponte* by district courts); *Huff v. Attorney General of Virginia*, 2008 WL 4065544 *5 (E.D. Va. Aug. 26, 2008) (same);

### IV.  DISCUSSION

Plaintiff seeks, *inter alia*, injunctive relief against Defendants to remove the October 4, 2024 suspension order and to enjoin Defendants from taking any final adverse actions against Plaintiff's dental license.  Am. Mot. Prelim. Inj. 2.  Before the Court can assess whether to grant injunctive relief, it must first determine whether it is appropriate to hear the case under the *Younger* abstention doctrine.  *Younger v. Harris*, 401 U.S. 37 (1971).

### A. *Younger* Abstention Applies in this Case and Precludes Injunctive Relief

The *Younger* abstention doctrine "rests on the fundamental precepts of equity and comity," *Robinson v. Thomas*, 855 F.3d 278, 285 (4th Cir. 2017), and originated as a doctrine prohibiting federal courts from interfering with ongoing criminal proceedings or "noncriminal judicial proceedings when important state interests are involved." *Harper v. Pub. Serv. Comm'n of W. Va.*, 396 F.3d 348, 351–52 (4th Cir. 2005) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "[C]ourts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger*, 401 U.S. at 43–44; *Air Evac EMS*, 37 F.4th at 95 ("'[F]ederal courts must show 'proper respect for state functions' . . . . [And a] proper extension of such respect is taking judicial federalism seriously, and not losing sight of the fact that 'state courts are fully competent to decide issues of federal law.'" (first quoting *Younger*, 401 U.S. at 43–44; and then quoting *Harper*, 396 F.3d at 355)).

Underlying the *Younger* abstention doctrine is the "vitally important rule of comity, inspired by principles of federalism, that directs federal courts to abstain from deciding constitutional challenges to state action however meritorious the complaint may be, whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hill v. Courter*, 344 F. Supp. 2d 484, 490–91 (E.D. Va. 2004) (alterations in original) (quoting *Cinema Blue of Charlotte, Inc. v. Gilchrist, III*, 887 F.2d 49, 53 (4th Cir. 1989)). Put differently, the "purpose of abstention is to ensure that state courts may construe state law in a way that avoids unwarranted determinations of federal constitutional questions and to maintain comity between the state and federal courts." *Laurel Sand & Gravel,*

*Inc. v. Wilson*, 519 F.3d 156, 166 (4th Cir. 2008) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 (1987)).

This also applies to administrative agencies and their decisions; "federal intervention before a state court has had the opportunity to review an agency's decision is no less an aspersion on the capabilities and good-faith of state appellate courts, and no less a disruption of the State's efforts to protect interests which it deems important." *Id.* (quoting *O'Neil v. City of Philadelphia*, 32 F.3d 785, 791 (3d Cir. 1993)); *see also id.* ("[A] defendant to a coercive administrative proceeding[] must exhaust his state administrative and judicial remedies and may not bypass them in favor of [a] federal court proceeding in which he seeks effectively to 'annul the results' of a state administrative body." (quoting *Moore v. City of Asheville*, 396 F.3d 385, 388 (4th Cir. 2004))). An attempt "to short circuit[] [an] agency's ability to interpret its statutes . . . and a state court's ability to correct constitutionally infirm agency decisions," *id.* (quoting *Moore*, 396 F.3d at 396), is precisely what "*Younger* abstention was created to prevent"—a "disruption of state administrative and judicial processes." *See also id.* ("[A] party may not procure federal intervention by terminating the state judicial process prematurely—forgoing the state appeal to attack the trial court's judgment in federal court." (quoting *New Orleans Pub. Serv. v. Council of New Orleans*, 491 U.S. 350, 369 (1987))).

Accordingly, federal courts should not interfere with criminal proceedings or certain noncriminal judicial proceedings, "except in the most narrow and extraordinary of circumstances." *Gilliam v. Foster*, 75 F.3d 881, 903 (4th Cir. 1996).

There are three steps to determine whether *Younger* abstention is appropriate. First, a federal court must determine whether the proceeding is one that might "warrant *Younger* abstention." *Air Evac EMS*, 37 F 4th at 96. If it does, the court must consider the "'additional

factors' provided by *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), commonly known as the *Middlesex* factors." *Id.* (citing *Sprint Commc'ns, Inc., v. Jacobs*, 571 U.S. 69, 81 (2013)). Lastly, the court should consider whether an exception to *Younger* abstention applies. *Id.* at 100.

### 1. The State Action Qualifies as Quasi-Criminal Proceedings under *Sprint*

*Younger* abstention may apply in "(1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings that are akin to a criminal prosecution in important respects (commonly referred to as 'quasi-criminal' proceedings), and (3) pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Air Evac EMS*, 37 F.4th at 96 (quotations omitted) (citing *Sprint*, 571 U.S. at 78–79, 81). The Supreme Court in *Sprint* "assum[ed] without deciding . . . that an administrative adjudication and the subsequent state court's review of it count as a 'unitary process' for *Younger* purposes." *Id.* at 97 (alterations in original) (quoting *Sprint*, 571 U.S. at 78). The *Sprint* Court listed several factors to consider in determining whether a state civil enforcement is "akin to a criminal prosecution": "whether the enforcement is 'initiated to sanction the federal plaintiff,' the 'state actor is routinely a party to the state proceeding and often initiates the action' and '[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges.'" *Id.* (quoting *Sprint*, 571 U.S. at 79–80).

Here we have an administrative adjudication, a formal hearing before the board of dentistry, that qualifies as a "quasi-criminal" proceeding. Mem. Supp., Ex. B [hereinafter Mar. 6-7 Bd. Hr'g], ECF No. 22-22. As seen in Plaintiff's exhibits, this administrative action was initiated to "sanction" Plaintiff and, *inter alia,* included an investigation and filing of a formal complaint,

thereby satisfying the *Sprint* factors. *See, e.g.*, Mem Supp., Ex. 18, ECF No. 22-19 (Investigation); Compl., Ex. C, ECF No. 1-3 (Suspension Order).

### 2. The *Middlesex* Factors Support Abstention

The Court must now consider the *Middlesex* factors: "(1) whether there is 'an ongoing state judicial proceeding'; (2) whether that state proceeding 'implicate[s] important state interests'; and (3) whether that state proceeding provides 'an adequate opportunity . . . to raise constitutional challenges.'" *Air Evac EMS*, 37 F.4th at 96 (quoting *Middlesex*, 457 U.S. at 432). The *Middlesex* Court made clear that these three factors also apply "to noncriminal judicial proceedings when important state interests are involved." *Middlesex*, 457 U.S. at 432.

The Court examines each factor in turn below.

#### a. Ongoing State Judicial Proceedings

There is no question that the first factor is satisfied, as "administrative hearing procedures are clearly coercive and 'judicial in nature'—not legislative." *Laurel Sand & Gravel*, 519 F.3d at 166 (quoting *Harper v. Pub. Serv. Comm'n*, 291 F. Supp. 2d 443, 455 (S.D.W. Va. 2003), *aff'd* 396 F.3d 348 (4th Cir. 2005)). The formal hearing before the dentistry board is "judicial in nature," given the "adversarial, trial-like setting, with discovery, witness testimony and exhibits." *Harper*, 291 F. Supp. at 455; *see* Mar. 6-7. Bd. Hr'g 2–3. For those reasons, this factor weighs in favor of abstention.

#### b. Implicates an Important State Interest

Similar to the first factor, there is little doubt that this case implicates an important State interest. *See Harper*, 396 F.3d at 352 ("Many interests beyond criminal law are core sources of state authority."). The Fourth Circuit has found public health and "the regulation and licensing of health care professionals" to be an important State interest. *See id.* at 353; *see, e.g.*, *Simopoulos v.*

9

*Va. Bd. of Med.*, 644 F.2d 321 (4th Cir. 1981); *Clowdis v. Silverman*, 2016 WL 2621965, at *6 (E.D. Va. May 5, 2016), *aff'd in relevant part*, 666 F. App'x 267, 289 (4th Cir. 2016).  In fact, "[i]t is difficult to imagine a state interest more important than the protection of citizens against the harms of unethical or incompetent practitioners of the healing arts." *Phillips v. Va. Bd. of Med.*, 749 F. Supp. 715, 722–23 (E.D. Va. 1990) (citing *Grosso v. Commonwealth*, 180 Va. 70 (1942); *Pickard v. Commonwealth*, 126 Va. 729 (1920)).  The Virginia Supreme Court "has specifically upheld the state's ability to license physicians and regulate their practice as a valid exercise of the state's police power." *Clowdis*, 2016 WL 2621965, at *6 (citing *Grosso*, 180 Va. at 74).  Moreover, states have traditionally afforded "leeway in adopting procedures to protect public health and safety." *Id.*

It is clear that this factor is satisfied and weighs in favor of abstention because this case involves the "healing arts," namely Plaintiff's dentistry license and her ability to practice naturopathic medicine. *See* Compl. 12.  The Court finds further support for finding that this case implicates an important state interest based on the fact that the Commonwealth of Virginia has not passed any laws specifically regulating naturopathic medicine.  Thus, it would be inappropriate for this Court to opine on how the Commonwealth of Virginia should regulate the conduct of medical professionals and their licenses. *See Air Evac EMS*, 37 F.4th at 95; *Phillips*, 749 F. Supp. at 722–23.

                c.   *State Proceeding Offers an Adequate Opportunity to Raise Constitutional Challenges*

This final *Middlesex* factor fairs no differently than the first two factors.  A "federal court need only determine that a state court forum exists to hear a plaintiff's constitutional claim." *Lesane v. Bell*, 2024 WL 5056259, at *3 (E.D.N.C. Dec. 10, 2024); *Air Evac EMS*, 37 F.4th at 99 ("Any adverse agency decision on preemption could be appealed to the appropriate state court for

10

de novo review, which would have eventually been appealable to the highest court of West Virginia."). The Fourth Circuit has observed, directly and indirectly, that both an older and a current version of Virginia's Administrative Procedures Act provide an "adequate opportunity" for plaintiff to raise constitutional challenges to an agency determination. *Clowdis*, 666 F. App'x at 269 (affirming "substantially for the reasons stated by the district court" with respect to its *Younger* analysis); *Clowdis*, 2016 WL 2621965, at *7 (finding the current version of "Virginia's Administrative Procedures Act, Va. Code Ann.§ 2.2-4000 et seq., provides adequate protections— judicial review); Va. Code Ann. § 2.2-4027 (discussing judicial review of agency actions); *id.* § 2.2-4001 (defining an agency to include a board "of the state government empowered by the basic laws to make regulations or decide cases"); *see, e.g.*, *Simopoulos*, 644 F.2d at 330 n.37; *Phillips*, 749 F. Supp. at 723–24.

Plaintiff argues that the "administrative disciplinary process is inadequate to address bad faith prosecution," relying on a Fifth Circuit case in support of her argument. Mem. Supp. 7. However, the Court is not persuaded to depart from binding Fourth Circuit precedent in order to find for Plaintiff.

Plaintiff has an "adequate opportunity" to raise constitutional challenges of agency determinations because the Virginia Board of Dentistry, like the Virginia Board of Medicine, qualifies as an Agency under Virginia's Administrative Procedures Act. *See* Va. Code Ann. §§ 2.2-4001, 2.2-4027. Thus, this factor weighs in favor of abstention because Plaintiff has an opportunity to appeal the agency determination to a Virginia state court. *Harper*, 396 F.3d at 355 ("[S]tate courts are fully competent to decide issues of federal law." (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993))).

Finding that all factors weigh in favor of abstaining under *Younger* and *Middlesex*, the Court proceeds to its final analysis, whether an exception to the *Younger* applies in this case.

3. No Exception Applies

In "extraordinary circumstances," a federal court has the discretion to disregard "strong federal policy against federal court interference with pending state judicial proceedings." *Nivens v. Gilchrist*, 319 F.3d 151, 154 (4th Cir. 2003). The "path to extraordinary circumstances is exceedingly narrow . . . . [a]nd . . . the availability of other defenses or claims—even constitutional ones [which often arise in criminal and quasi-criminal matters]—will not do." *Air Evac EMS*, 37 F.4th at 100. Consequently, a federal court may only intervene when there has been "(1) 'bad faith or harassment' by state officials responsible for the prosecution; (2) a statute that is 'flagrantly and patently violative of express constitutional prohibitions'; and (3) other 'extraordinary circumstances' or 'unusual situations.'" *Air Evac EMS*, 37 F.4th at 98 (citing *Younger*, 401 U.S. at 51–54).

As a preliminary matter, the Court does not find that either the second or third exception applies, nor does Plaintiff argue that they do. *See generally* Mem. Supp.[3] Instead, Plaintiff's arguments are nestled under the first exception, bad faith. Plaintiff argues this case presents an "extraordinary circumstance" wherein this Court should decline to abstain because this is a prime example of a bad faith prosecution. In doing so, she argues that Defendants brought the

---

[3] With respect to the second exception, "the Supreme Court defined the 'flagrantly and patently' unconstitutional exceptions with greater specificity and more narrowly as requiring invalidity 'in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' a standard so rigorous as to make the exception . . . 'meaningless.'" *Simopoulos*, 644 F.2d at 329. Plaintiff does not clearly identify what statute in this case is "flagrantly or patently" unconstitutional. *See generally* Mem. Supp. As for the third exception, Fourth Circuit precedent "suggest[s] there must be actual impediments to the state's ability to address the federal issues." *Air Evac EMS*, 37 F.4th at 100 (citing *Simpolous*, 644 F.2d at 327–29 for the proposition "that the bad faith and patent unconstitutionality exceptions to *Younger* abstention apply 'if the state procedure fails to provide the federal plaintiff with an adequate opportunity to litigate in the state forum'"). As addressed *supra* Part IV.A.2.c., there is an adequate opportunity for Plaintiff to litigate this issue in the state forum.

prosecution without expectation of success, to stifle Plaintiff's Fifth and Fourteenth Amendment rights to practice her vocation of naturopathy, and for the purpose of harassing Plaintiff.  *See* Mem. Supp. 7–23.  The Court is not persuaded

"'There is no case since *Younger* was decided in which the [Supreme] Court has found' the first *Younger* exception 'was applicable.'"  *Erie Ins. Exch. v. Md. Ins. Admin.*, 105 F.4th 145, 153 n.3 (4th Cir. 2024).  "To prevail under the bad faith exception, the petitioner must show 'a prosecution has been brought without a reasonable expectation of obtaining a valid conviction.'"  *Wood v. Olejasz*, 2021 WL 4450270, at *3 (N.D.W. Va. Aug. 10, 2021) (quoting *Suggs v. Brannon*, 804 F.2d 274, 278 (4th Cir. 1986)).  It is Plaintiff's "heavy burden to overcome the bar" of the *Younger* abstention doctrine by setting forth more than "mere allegations of bad faith or harassment."  *Gilbert v. N. C. State Bar*, 660 F. Supp. 2d 636, 644 (E.D.N.C. 2009) (quoting *Weitzel v. Div. of Occupational & Pro. Licensing*, 240 F.3d 871, 877 (10th Cir. 2001)).

    a. *The Investigation Was Not Frivolous or Undertaken with No Reasonably Objective Hope of Success*

The most common analysis used to determine whether a defendant engaged in bad faith is to assess whether "a prosecution has been brought without a reasonable expectation of obtaining a valid conviction."  *Suggs*, 804 F.2d at 278 (quoting *Kugler v. Helfant*, 421 U.S. 117, 125–36 & 126 n.6 (1975)).  This does not require a prosecutor to necessarily be right, only that the "prosecutor reasonably could have expected . . . to have obtained a valid conviction in state court."  *Colonial First Prop., LLC v. Henrico Cnty.*, 166 F. Supp. 2d 1070, 1086 (E.D. Va. 2001); *see also id.* ("One must deliberately assess what is known to him and deliberately measure those facts and application of the law to them and make a reasoned decision.").  For example, the *Clowdis* court found that a "Board's alleged mistakes of law or fact—or even of internal procedures or due process—[do not] create an issue of 'bad faith,'" noting that *Younger* abstention has a "remarkably

high threshold for tolerating alleged flaws in state court proceedings." *Clowdis*, 2016 WL 2621965, at *8–9; *see also id.* ("[E]ven if defendants' actions involved mistaken findings of fact, mistaken findings of law, lack of evidence, violations of federal law, violation of Constitutional rights, conduct actionable at tort, or any other wrong . . . *Younger* establishes a presumption that state courts are competent to grant the relief requested.").

The underlying question then is whether Defendants "commenced the prosecution in the state court without a reasonable expectation of obtaining a valid conviction." *Id.* Or couches more appropriately in terms relevant to the underlying quasi-criminal proceedings, did Defendants commence the investigation with "no reasonable expectation of obtaining a favorable outcome." *Clowdis*, 2016 WL 2621965, at *8 (quoting *Diamond Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002)); *see also id.* ("In this case, all the pre-appeal Board proceedings ended 'favorably' to the state (e.g., they resulted in suspension). Thus, the most common variant of *Younger* 'bad faith' is not applicable to Clowdis's case.").

The Court does not find that Defendants commenced this action with "no reasonable expectation of obtaining a favorable outcome." *Clowdis*, 2016 WL 2621965, at *8. Indeed, this case is similar to *Clowdis*, in that the "Board proceedings ended 'favorably' to the state (e.g., they resulted in suspension)." *Id.* Defendants do not necessarily need to be "right," only that they brought the action with a reasonable expectation of a conviction. Plaintiff does not convince the Court that Defendants brought this action without any reasonable, objective expectation of succeeding, as demonstrated by the summary suspension issued in October 2024. *See generally* Allegations, ECF No. 1-2 (specifying charges and the basis of the allegations under Va. Code Ann. §§ 54.1-2706(4), (5), (9), (11), and (12) and citing a number of regulations governing the practice of dentistry); *see Clowdis*, 2016 WL 2621965, at *8.

### b. *The Investigation Was Not Motivated by the Plaintiff's Suspect Class or in Retaliation for Plaintiff's Exercise of Constitutional Rights*

On the second possible avenue for establishing bad faith, Plaintiff fails to meet her "heavy burden," in demonstrating that Plaintiff was either retaliated against or that she was targeted based on her "suspect class." *See generally* Mem. Supp. Few courts have address this specific issue; however, in the case of *Timmerman v. Brown*, the Fourth Circuit found that the defendants retaliated against the plaintiffs by conspiring to deprive the plaintiffs of their right to file criminal charges against the defendants, thereby stifling the plaintiffs' First and Fourteenth Amendment rights. 528 F.2d 811, 813, 815 (4th Cir. 1975). Essential to the court's finding was the fact that a State magistrate found that "there was probable cause to prosecute some of the defendants for their part in" battering the plaintiffs. *Id.* at 813, 815. The *Timmerman* court reasoned that, "it is less likely that there is a good case against plaintiffs when a disinterested judicial officer has determined that there is no basis on which to prosecute them[,] but there is a basis on which to prosecute their antagonists." *Id.* at 815.

Here, Plaintiff's allegations fall short of those in *Timmerman*, and otherwise fail to state a claim for retaliation or discriminatory motivation. Plaintiff alleges that "the prosecution takes aim at [her] practice of holistic/biological dentistry which falls squarely within the definition of the practice of dentistry definitions in Virginia." Pl.'s Aff. ¶ 4. To the degree that Plaintiff suggests that she is being retaliated against under Va. Code Ann. § 54.1-100, which establishes that the "right of every person to engage in any lawful profession, trade, or occupation of his choice is clearly protected by both the Constitution of the United States and the Constitution of the Commonwealth of Virginia," this right is not unlimited. *Id.* § 54.1-100. Indeed, the Commonwealth may, "as a reasonable exercise of its police powers," abridge this right when "(i) it is clearly found that such abridgment is necessary for the protection or preservation of the health,

15

safety, and welfare of the public and (ii) any such abridgment is no greater than necessary to protect or preserve the public health, safety, and welfare." *Id.*

As Plaintiff has clearly established, there are no statutes in the Commonwealth of Virginia that regulate naturopathic medicine. During their investigation, Defendants considered the expert opinion of a dentist who opined on Plaintiff's dental practice, and from a medical professional who to opined on the tests Plaintiff used with Patient A. Dr. Shroff's Expert Op.; Compl., Ex. I, ECF No. 1-9 (Dr. Bin Alam's Expert Opinion). Plaintiff argues that Defendants may not hire or consider a medical expert to opine on Plaintiff's naturopathic practice; however, the statute regulating the use of expert testimony in medical malpractice review boards allows expert testimony that is the same "or a related field of medicine." Va. Code Ann. § 8.01-581.20; Compl. ¶ 158. More importantly, Defendants have not suspended Plaintiff's naturopathic license or her ability to practice naturopathic medicine separate from her (now suspended) dental practice, making her suspension a more limited abridgement as to her naturopathic practice. Therefore, based on the reasonable scope of Defendants' investigation and the permissible exercise of "police power," with respect to Va. Code Ann. § 54.1-100, Plaintiff has not met her heavy burden of demonstrating that Defendants acted in retaliation for Plaintiff's exercise of her constitutional rights under Va. Code Ann § 54.1-100.

    c. *The Investigation Was Not Conducted in a Way to Constitute Harassment and an Abuse of Prosecutorial Discretion*

Although bad faith and harassment often "go hand in hand," they must be examined separately. *See Hill v. Courter*, 344 F. Supp. 2d 848, 494 (E.D. Va. 2004) (citing *Younger*, 401 U.S. at 50). When determining whether an action was conducted in a way to harass, courts within the Fourth Circuit have considered whether "a temporal and causative nexus between the acts of harassment and the institution of the prosecution" exists, *Colonial First Properties, LLC*, 166 F.

16

Supp. 2d at 1087, and whether the exhibits indicate "a vindictive or malicious" prosecution as opposed to a "prosecutor pursuing a disciplinary action." *Gilbert*, 660 F. Supp. 2d at 646 ("[T]he exhibits attached to the complaint do not reflect bad faith or harassment. They reflect hotly contested legal issues between Gilbert and the State Bar."); *see Hill*, 344 F. Supp. 2d ("While it is true that the Supreme Court stated in *Younger* that a state prosecution 'brought in bad faith' or as 'only one of a series of repeated prosecutions' might warrant federal intervention, this reference was directed . . . toward 'harassment' that might result from bad faith repetitive prosecutions." (quoting *Younger*, 401 U.S. at 50)).

The allegations in Plaintiff's pleadings fail to demonstrate that Defendants brought their action in a way to constitute harassment and an abuse of prosecutorial discretion. Indeed, Defendants correctly point out that it was not Defendants who initiated the investigation, but that they began their investigation in response to a complaint that they received from Dr. Cook. Defs.' Mem. Supp. 14. Further, Plaintiff does not allege that Defendants have pursued multiple actions against her. *See generally* Compl.; Mem. Supp. Therefore, the Court does not find Plaintiff to have established a causative and temporal nexus. *See generally* Mem. Supp. Moreover, the Court does not find that Plaintiff has satisfied her burden in demonstrating a "vindictive or malicious" prosecution rather than merely a "prosecutor pursuing a disciplinary action," particularly given Dr. Shroff's opinion, upon which Defendants clearly relied in instituting Plaintiff's suspension. *Gilbert*, 660 F. Supp. 2d at 646; *see* Dr. Shroff's Expert Op.

The Court is not convinced that the bad faith exception applies. The Court is guided by its analysis above, the strong presumption of abstention under *Younger*, and by comparing the instant facts to cases where courts have declined to find bad faith, upon which the Court elaborates, below.

The threshold for finding a defendant has acted in bad faith is high. This is exemplified by the Supreme Court's *Kugler v. Helfant* decision, which found there was no bad faith under *Younger* despite the plaintiff's allegations that the New Jersey Supreme Court and deputy attorney general were involved in coercing the plaintiff's grand jury testimony, such that it was impossible for the plaintiff to have a fair hearing in state court. *See Kugler*, 421 U.S. at 117. The high threshold is similarly demonstrated in *Kim-Stan, Inc v. v. Department of Waste Management*, where the district court found no bad faith under *Younger* despite finding that government officials may have acted because of public outcry and out-of-state animus rather than concrete policy reasons. 732 F. Supp. 646, 652 (E.D. Va. 1990).

By comparison, a New York District Court found bad faith under *Younger* after the state made multiple arrests without prosecutions, coupled with an official stating, "despite all constitutional limitations we will stop at nothing when we put these [sexually oriented enterprises] out of business. We undertake activities knowing that they are illegal." *Black Jack Distributors, Inc. v. Beame*, 433 F. Supp. 1297 (S.D.N.Y. 1977). The Supreme Court also found evidence of bad faith in *Dombrowski v. Pfister*, wherein the plaintiffs demonstrated that the defendants repeatedly arrested and threated to prosecute the plaintiffs with no intention of actually prosecuting them but rather to chill their speech and organizing activities. 380 U.S. 479, 487–89 (1965).

Plaintiff's allegations of bad faith "pale in comparison" to both *Black Jack Distributors* and *Dombrowski*. *Gilbert*, 660 F. Supp. 2d at 646. For the reasons stated above, the Court finds that no exception applies, and thus the Court must abstain from taking up the substantive issues based on *Younger*.

### B. Preliminary Injunction

Finding it appropriate to abstain under the *Younger* doctrine, the Court does not reach the merits of the Preliminary Injunction.[4]

### V. CONCLUSION

For the reasons discussed above, the Court denies Plaintiff's Amended Motion for Preliminary Injunction and will dismiss the action without prejudice.[5]  An appropriate order accompanying this Memorandum Opinion shall follow.

/s/ *RCY*
Roderick C. Young
United States District Judge

Date: March 5, 2025
Richmond, Virginia

---

[4] The Court notes that even if it had found that Defendants acted in bad faith, which it does not, the Court would have denied Plaintiff's Amended Motion for Preliminary Injunction on the basis that she failed to demonstrate her likelihood of success given that a "§ 1983 malicious prosecution claim 'is properly understood as a Fourth Amendment claim for unreasonable seizure[,] which incorporates certain elements of the common law tort.'" *Hicks v. Anne Arundel Cnty.*, 110 F.4th 653, 660–661 (4th Cir. 2024) (citing *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)) ("To succeed, a plaintiff must show that the defendant '(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor.'" (citing *Evans*, 703 F.3d at 647)).  Plaintiff has made no such showing.

[5] Because the court engaged with the principles of *Younger* abstention on its own initiative, and on that basis found that abstention and dismissal are appropriate, the Court need not also engage with Defendant's Motion to Dismiss.